## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JAIME H. PIZARRO and CRAIG SMITH, on behalf of themselves and all others similarly situated,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE HOME DEPOT, INC; THE ADMINISTRATIVE COMMITTEE OF THE HOME DEPOT FUTUREBUILDER 401(K) PLAN; THE INVESTMENT COMMITTEE OF THE HOME DEPOT FUTUREBUILDER 401(K) PLAN; FINANCIAL ENGINES ADVISORS, LLC; ALIGHT FINANCIAL ADVISORS, LLC; AND DOES 1-30.**<br>**Defendants.** | **COMPLAINT- CLASS ACTION**<br><br>**No. _____**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

## I.  INTRODUCTION

1. Plaintiffs Jaime H. Pizarro and Craig Smith, individually and as

representatives of a class of participants and beneficiaries of The Home Depot

1

FutureBuilder 401(k) Plan (the "Plan") bring this action under 29 U.S.C. §1132(a)(2) and (3) on behalf of the Plan against Defendants The Home Depot, Inc., the Administrative Committee, the Investment Committee and their members (collectively, "Home Depot" or "Home Depot Defendants") for breach of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA"). Plaintiffs also bring this action under 29 U.S.C. § 1132(a)(3) against Financial Engines Advisors, LLC ("Financial Engines") and Alight Financial Advisors, LLC ("AFA") for knowingly participating in the Home Depot Defendants' ERISA violations.

2. As fiduciaries to the Plan, Home Depot Defendants are obligated to act for the exclusive benefit of the Plan's participants and beneficiaries, to assure that Plan expenses are reasonable, and to ensure Plan's investments are prudent. Home Depot neglected these sacrosanct duties. It allowed participants to pay unreasonable fees to the Plan's "investment advisors," first Financial Engines and later AFA. It also constructed a plan with far too many layers of fees, and turned a blind eye to a kickback scheme between Financial Engines and the Plan recordkeeper Aon Hewitt.

3. Home Depot also retained too many poor-performing investment advisory options on the Plan. A prudent fiduciary would have replaced these poorly

2

performing investments with any of the numerous alternative investment options that are readily available in the marketplace.

4. Home Depot's mismanagement has had a large, tangible impact on its employees' retirement accounts. According to Brightscope[1], the average Home Depot Plan participant earned $100,000 less in retirement savings than employees in top-rated retirement plans of a similar size. The $100,000 disparity translates to an additional 18 years of work per participant. Excessive investment advisory fees, a kickback scheme between Financial Engines and AonHewitt, and the Plan's many poor performing investment portfolios all contributed to this sad statistic and robbed participants of their retirement savings.

5. To remedy these fiduciary breaches, Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Plan, bring this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Home Depot Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty occurring during the class period from April 12, 2012 to the date of judgment. In addition, Plaintiffs seek to hold Financial Engines and AFA responsible for their knowing

---

[1] Brightscope is a leading financial information and technology company that prepares retirement plan ratings and investment analytics to participants, plan sponsors and asset managers in all 50 states. Plaintiffs accessed this data from Brightscope's website on March 14, 2018.

participation in the Home Depot Defendants ERISA violations. Plaintiffs also seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## II.   PARTIES

### A. Plaintiffs

6.   Jaime H. Pizarro was a participant in the Plan at all relevant times, and used Financial Engines managed account services. He suffered harm because of the Plan's excessive fees, including the fees he paid to Financial Engines, and because of poor performing investments he may have made during the Class Period.

7.   Craig Smith was a participant in the Plan at all relevant times.  Mr. Smith suffered harm by investing in the Plan's poorly performing investment options, including the BlackRock 2020 LifePath Portfolio, the BlackRock 2025 LifePath Portfolio, the JPMorgan Stable Value Fund, the TS&W Small Cap Value Fund, the Stephens Small Cap Growth Fund, and other investments he may have made during the Class Period.

### B. Defendants

8.   The Home Depot, Inc., a Delaware corporation headquartered in Atlanta, Georgia, is the world's largest home retailer. The Home Depot, Inc. is the Plan's sponsor and one of the Plan's fiduciaries.

9.  The Administrative Committee administers the Plan and has the authority to make decisions arising in connection with the administration of the Plan. Current and former members of the Administrative Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan.

10. The Investment Committee oversees the selection of all investment options for the Plan. Current and former members of the Investment Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan, and exercised authority or control respecting management or disposition of the Plan's assets.

11. Because Plaintiffs are currently unaware of the identities of the individual members of the Investment Committee, and of the Administrative Committee, those individuals collectively are named as Defendants Does 1-30. Plaintiffs will substitute the real names of the Does when they become known to Plaintiffs. To the extent the Investment Committee or Administrative Committee delegated any of its fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiffs, the person or entity to which the function was

delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A), and also alleged to be Doe Defendant.

12.Because the Home Depot and committee members have acted as alleged herein as the agents of The Home Depot, and/or co-fiduciaries, all Home Depot defendants collectively are referred to hereafter as "Home Depot" or "Home Depot Defendants."

13.Financial Engines Advisors, LLC ("Financial Engines") is a Delaware Corporation with its principal place of business in California. Financial Engines was an investment advisor to the plan from the beginning of the class period until June 30, 2017. As of July 1, 2017, Financial Engines continued providing sub-advisory services to Plan Participants through its relationship with Aon Hewitt Financial Advisors, LLC and its successor Company Alight Financial Advisors, LLC.

14.Alight Financial Advisors, LLC is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Alight, which also operates under the name Aon Hewitt Financial Advisors, LLC, began providing investment advisory services to the Plan beginning July 1, 2017.  Both Alight Financial Advisors, LLC and Aon Hewitt Financial Advisors, LLC are referred to herein as "AFA."

6

15.Each of the Defendants is subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)–(3) because they enabled other fiduciaries to commit breaches of fiduciary duties through their appointment powers, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of their duties, and failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

## III.   JURISDICTION AND VENUE

16.This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(2) and (3).

17.This District and Division are the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because they are the District and Division in which the subject Plan is administered and where at least one of the alleged breaches took place. They are also the District and Division in which Defendant The Home Depot, Inc. resides.

## IV.   ERISA'S FIDUCIARY STANDARDS

### Fiduciary Duties of Prudence and Loyalty

18. ERISA imposes strict fiduciary duties of prudence and loyalty upon the Home Depot Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a). These

duties apply to all fiduciary acts, including the Home Depot Defendants' selection of service providers and investment options for the plan.

19. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B). Accordingly, fiduciaries must vigorously and independently investigate each investment option and service provider with the skill of a prudent investor. They must also continuously monitor plan investments and service providers and promptly dispose of imprudent ones.

20. ERISA's duty of loyalty requires in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> > (A) for the exclusive purpose of
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan; [and]

29 U.S.C. § 1104(a)(1)(A).

21. The duty of loyalty is "'[p]erhaps the most fundamental duty of a [fiduciary]'" and requires fiduciaries to act with an "'eye single'" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 224 & 235 (2000).

8

22. As a corollary to the duty of loyalty, ERISA prohibits certain transactions between the Plan and any party in interest. 29 U.S.C. § 1106. Engaging in any of these prohibited transactions constitutes a *per se* violation of ERISA. Section 1106(a)(1) states:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

23. A party in interest includes, in relevant part, any plan fiduciary, including the plan administrator, trustee, officer or custodian, any plan services provider, the employer, a relative of any of the above, and certain persons with ownership or leadership roles in any of the above. 29 U.S.C. § 1002(14).

**Fiduciary Liability Under ERISA**

24. Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**Co-Fiduciary Liability**

25. ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

> (1) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; [or]

> (2) by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

**Non-Fiduciary Party in Interest Liability**

26.     A non-fiduciary party in interest who knowingly participates in a fiduciary's ERISA violation may also be liable. Plan participants have authority under 29 U.S.C. § 1132(a)(3) to bring a cause of action seeking appropriate equitable relief, such as restitution or disgorgement, to redress violations or enforce any provisions of ERISA against such non-fiduciaries. *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245–46 (2000).

## V.     HOME DEPOT'S BREACH OF FIDUCIARY DUTY

### A. Home Depot Allowed Financial Engines to Charge Unreasonable Investment Advisory Fees to Participants

27. Throughout the class period, Home Depot has allowed Financial Engines to offer investment advisory services to plan participants. Financial Engines provides these services to all Plan participants who opt into the Plan's Professional Management Account Program.[2]

---

[2] From the beginning of the class period through June 30, 2017, Financial Engines offered investment advisory services directly to plan participants who opted into the Professional Management Account Program. Beginning July 1, 2017, AFA technically replaced Financial Engines as the investment advisor; however, AFA hired Financial Engines as a "sub advisor." Under the sub-advisory agreement, Financial Engines continued providing investment advisory services to all participants who opted into the Professional Management Account Program.

28. Financial Engines is registered with the Securities and Exchange Commission as an investment adviser. In the investment advisory industry, Financial Engines is referred to as a "robo adviser," which means that a robot uses mathematical formulas to pick an investment portfolio for the investor.

29. Financial Engines' portfolios are not custom-made for each participant in the Home Depot Plan. Instead, it has developed a handful of standardized portfolios, each carrying a different combination of investment strategy and risk. Financial Engines places each participant into one of these cookie-cutter portfolios based on the participant's age, self-reported investment strategy, and self-reported risk tolerance. Once the participant engages Financial Engines, only the robot can make changes to the participant's portfolio. Typically, there is no human interaction with the participant.

30. At enrollment meetings, Home Depot encouraged its employees to enter into an investment advisory arrangement with Financial Engines. Home Depot representatives suggested to participants that retaining Financial Engines would improve their investment returns. Home Depot representatives described Financial Engines as "experts" and "where you should go." And Home Depot made the enrollment process seamless.

31. Take Plaintiff Pizarro's experience. Home Depot directed Plaintiff Pizarro to Home Depot's benefits internet site and a link called "Financial Wellbeing." By clicking the link, Plaintiff Pizarro was immediately transported to sign-up page for Financial Engines. Aside from personal information, the page merely asked Plaintiff Pizarro to select from a menu of investment strategies that included moderate growth, aggressive growth, and balanced. Omitted from the page were important financial questions pertaining to a Plaintiff Pizarro's net worth or investment experience. Plaintiff Pizarro selected moderate growth, and was enrolled in Financial Engines' service.

32. Financial Engines then assumed discretionary control over Plaintiff Pizarro's investments. The computer program funneled Plaintiff Pizarro into one of its cookie-cutter portfolios (moderate growth). At no time during the process did Plaintiff Pizarro speak to a person. Based on information and belief, each Plan participant who purchased the Financial Engines service followed the same process.

33. Thanks to Home Depot's endorsement, Financial Engines made millions of dollars each year in investment advisory fees. According to Home Depot's Form 5500s, plan participants paid Financial Engines the following total annual investment advisory fees from 2012 through 2016:

| Year | Total Investment Advisory Fee to Financial Engines |
|------|---------------------------------------------------|
| 2012 | $2,329,284 |
| 2013 | $3,570,557 |
| 2014 | $4,384,818 |
| 2015 | $5,638,465 |
| 2016 | $6,269,997 |

### a. The Services Provided Did Not Justify the High Fees

34. Throughout the class period, Home Depot has allowed Financial Engines to charge unreasonable investment advisory fees. Financial Engines currently charges: 0.50% per year for the first $100,000 in participants' accounts; 0.45% per year for the next $150,000 in their accounts; and 0.30% per year for the amount above $250,000 in their accounts.

35. Financial Engines did almost nothing to earn these fees. Since Financial Engine simply offers a robo-advisory service with cookie-cutter portfolios, its costs are minimal.

36. Moreover, Financial Engines' costs are fixed per participant. The size of the participant's account (whether its $1,000, $100,000, or $1,000,000) does not alter Financial Engines' internal costs. But Financial Engines does not charge a flat fee per participant. Rather, it charges participants based on a percentage of their total 401(k) account value (a.k.a. an "asset-based fee"), meaning that the more money a participant invests, the more money Financial Engines makes. Since Financial

Engines' costs are not affect by the size of participants' accounts, Financial Engines' asset-based fee has no reasonable relation to the services rendered and results in participants overpaying for investment advisory services.

37.Further, Financial Engines' fees are exorbitant compared to similar investment products. Financial Engines essentially performs services no more complicated than a standard target date fund, which allocates assets among equity securities (e.g. stocks), fixed income securities (e.g. bonds), and cash based on a person's age. The fees for target date funds typically range from 0.07% for a target date fund managed by Vanguard to 0.10% for a target date fund managed by Fidelity to 0.12% for a target date fund managed by BlackRock. Thus, participants are paying Financial Engines' an initial fee that is between 400% and 700% more than they would for the comparable services of target date funds. Ironically, the Plan already offers a suite target date funds to Plan participants at a lower price than Financial Engines. Accordingly, Home Depot offered participants a service (Financial Engines) that was both expensive and redundant.

38.Financial Engines also fares poorly when compared to a wide array of other comparable investment options. For example, various investment advisors offer "global portfolios" whose asset allocations are similar to the portfolios Financial Engines builds for Plan participants. Yet these global portfolios are much cheaper

15

than Financial Engines. For instance, State Street Global Advisors—an advisor with over $2 trillion under management—constructs different global allocation strategies designed for those who want maximum growth, moderate growth, and conservative growth. State Street's investment advisory fee ranges between 0.22% and 0.30%.  Wilshire Associates, an investment adviser with $195 billion in assets under management, also offers different investment strategies to investors who want conservative growth, moderate growth, moderate-conservative growth, and growth. Wilshire's investment advisory fee is 0.22%. Financial Engines charges more than double.

39. Financial Engines also charges more than non-robotic investment advisory services. Pacific Investment Management Company, LLC (PIMCO), one of the country's largest investment management firms, hires Research Affiliates to make recommendations about the allocation of mutual fund assets within PIMCO's All Assets Fund and All Asset Authority Fund. Much like Financial Engines, the PIMCO Research Affiliates make their recommendations by selecting investments from a defined universe of available funds. PIMCO pays Research Affiliates about .15% of assets under management – significantly less than the asset-based fees that Financial Engines charges Plan participants.

40.Financial Engines even charges more than other robo-advisors. For instance, Betterment, a robo-adviser with $11 billion under management, provides similar services for .25% of account assets. Vanguard's Personal Advisor Services charges .30% for robo-advisory services. Charles Schwab's Intelligent Advisory hybrid service charges .28%. Ironically, the Plan already contracted with Charles Schwab for its Self-Directed Brokerage Window. Thus, Home Depot could have easily subscribed to Schwab's cheaper advisory service instead of Financial Engines.

41.Unfortunately, Financial Engines did not provide a level of advisory services that would justify its exorbitant fees. Instead, it engaged in "reverse churning"— i.e. it charged ongoing advisory fees while doing very little to earn them.[3]   Some common methods of "reverse churning" include providing minimal investment advice to the investor, failing to call the investor to review their investments and their personal circumstances, and failing to return phone calls to the investor.

42.Plaintiff Pizarro experienced such neglect throughout his engagement with Financial Engines. Over a two-year period, Plaintiff's account was largely inactive. It was as if Financial Engines had placed the account on auto pilot, making only limited changes to Plaintiff's portfolio. At one point, Plaintiff wanted to change the

---

[3]  In the Department of Labor's Fiduciary Duty Rule, the DOL indicated "Such conduct [reverse churning] designed to enhance the adviser's compensation at the Retirement Investor's expense would violate the prohibition on self-dealing in ERISA section 406(b)(1) and Code section 4975(c)(1)(E). . . ." 29 CFR 2509, 2510 and 2550, $f$ 55.

asset allocation in his account. Plaintiff tried calling Financial Engines four times to initiate the change, but he never got through to a live representative, and Financial Engines never returned his calls.

### b. By Retaining Financial Engines, Home Depot Introduced an Unnecessary Layer of Fees

43. Although participants pay an investment advisory fee to Financial Engines, each of the funds on the Plan is managed by a separate investment adviser that charges its own investment advisory fees (e.g. Black Rock, J.P Morgan). That means participants pay Financial Engines advisory fees *in addition to* the advisory fees that participants pay indirectly to other investment advisers that manage the funds in the Plan (e.g. BlackRock, J.P. Morgan). These layered advisory services drive up participants' total fees.

44. For example, had Financial Engines allocated a participant's investments to the TS&W Small Cap Value Fund (one of the investment options on the Plan), the participant would have paid Financial Engines .50% directly for their investment advice, and another .90% to TS&W to manage the assets in the Small Cap Value Fund, for total investment advisory fees of 1.40%. These fees are in addition to other Plan recordkeeping and administrative fees.

45. The more a participant pays in fees, the better the participant's investments must perform for the participant to earn money. Thus, given the numerous layers of

fees, if Financial Engines selects the TS&W Small Cap Value Fund for a participant, the Fund must outperform its benchmark every year by about 1.50% just for the participant to break even. Most investment experts would agree this is nearly an insurmountable task.

46. Adding insult to injury, Financial Engines kicked-back a significant portion of its investment advisory fees to the Plan's Recordkeeper Aon-Hewitt—on the order of 25%-35%. This kickback was not paid in exchange for any additional investment services to Plan participants and thereby unreasonably increased the Plan participants' investment advisory fees.

47. Upon information and belief, Home Depot introduced yet another layer of administrative fees on July 1, 2017, when it replaced Financial Engines with a middleman—Aon Hewitt Financial Advisors, LLC (AFA).[4] Although now formally the Plan's "investment advisor," AFA merely subcontracts with Financial Engines to perform the actual investment advisory work. Upon information and belief, Home Depot's introduction of AFA into the Plan only exacerbated an already inefficient and costly fee structure.

### c. Home Depot Failed to Monitor Financial Engines' Compensation and Services

---

[4] Aon Hewitt Financial Advisors, LLC is also known as Alight Financial Advisors, LLC. Both companies are referred to herein as AFA.

48. As a fiduciary to the Plan, Home Depot was required to monitor the activities of Financial Engines. However, at no time did anyone from Home Depot survey Plaintiff Pizarro to determine whether Financial Engines' robotic investment advisory services and minimal trading activity were in his best interest relative to the overall fees being charged. Further, based upon information and belief, Home Depot failed to monitor the level of trading activity of any Financial Engines' advisory accounts to determine that the recommendations of account types and trading levels were in the best interest of participants.

49. Home Depot also allowed Financial Engines to charge fees that were out of line with comparable investment advisory services. Financial Engines charged participants significantly more than other robo-advisors. It also charged more than target date funds, including the BlackRock funds that were already on the Plan, despite providing participants with substantially similar services. A prudent fiduciary would have investigated and provided participant these cheaper alternatives or negotiated with Financial Engines for lower fees.

50. Accordingly, from the beginning of the class period through present, Home Depot failed to properly monitor Financial Engines' compensation in light of the limited services Financial Engines provided. Home Depot thus caused the

participants to pay unreasonable advisory fees, resulting in millions of dollars of damages each year.

51. Moreover, Home Depot imprudently and disloyally developed a plan with too many layers of fees, resulting in unreasonable total fees for investment advisory, recordkeeping, and administrative services combined. For participants who signed up for Financial Engines, the total fees were so high as to make it extremely difficult to break even on their investments.

### d. Home Depot's Breach of Fiduciary Duty Will Have a Profound and Lasting Effect on Participants' Retirement Accounts

52. In defined contribution plans, such as Home Depot's Plan, fees paid by the plan participant negatively impact the total return on the participant's investments. Retirement savings in defined-contribution plans grow and compound over the course of a participant's career, meaning excessive fees can drastically reduce the total amount available to a participant at the time of retirement. Due to the power of compounding over time, what appear to be minor differences in fee amounts yield dramatically different outcomes in the funds available to the participant at the time of retirement.

53. The Department of Labor ("DOL") illustrates this phenomenon:

> Assume that you are an employee with 35 years until retirement and a current 401(k) account balance of $25,000. If returns on investments in your account over the next 35 years average 7 percent and fees and expenses

reduce your average returns by 0.5 percent, your account balance will grow to $227,000 at retirement, even if there are no further contributions to your account. If fees and expenses are 1.5 percent, however, your account balance will grow to only $163,000. The 1 percent difference in fees and expenses would reduce your account balance at retirement by 28 percent.

54. According to a February 15, 2014 report by *The Atlantic*, a 1.25% difference in fees can reduce returns by more than six figures over the course of a participant's career.[5] The study notes the difference results not just from money lost paying a higher fee, but also from money that will never be invested because it went to fees instead.[6]

55. Given the potential impact fees have on plan returns, the DOL has issued guidance to plan fiduciaries clarifying the fiduciary duty of prudence as it relates to fees.

Plan fees and expenses are important consideration for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and

---

[5] *Crushingly Expensive Mistake Killing Your Retirement*, The Atlantic (Feb. 15, 2014), https://www.theatlantic.com/business/archive/2014/02/thecrushinglyexpensive-mistake-killing-your-retirement/283866
[6] *Id.*

expenses to determine whether they continue to be reasonable in light of the services provided.[7]

56. As a result of Home Depot's imprudent and disloyal selection and retention of Financial Engines, plan participants have suffered dramatic losses to their retirement accounts. Unless remedied, these losses will compound over time, adding new injuries on top of those already suffered.

## B. Home Depot Imprudently Selected and Retained Poorly-Performing Investment Options

57. As a Plan fiduciary, Home Depot was responsible for selecting investment options for the Plan and monitoring their performance. Home Depot failed to prudently perform these functions. Home Depot loaded the Plan with several poorly performing investment options including the TS&W Small Cap Value Fund, the Stephens Small Cap Growth Fund, the J.P. Morgan Stable Value Fund, and the suite of BlackRock Life Path funds. Home Depot imprudently selected each of these investment options and failed to remove them despite years of deficient performance.

### a. TS&W Small Cap Value Fund

58. With an investment advisory fee of .904%, the TS&W Small Cap Value Fund is the most expensive option in the Plan. It is also sole option for participants

---

[7] *Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits Security Admin. (Dec. 2011), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf

who wanted to invest in a small cap value strategy. The high fees that TS&W collected to manage the Plan's small cap value portfolio were not justified by superior investment performance.

59. TS&W's Small Cap Value portfolio has performed poorly for years, including from 2012 through the present. The Plan's 2017 Annual Disclosure Statement illustrates that the TS&W Small Cap Value Fund significantly underperformed its benchmark (the Russell 2000 Value Index) for the previous one-year, five-year, and ten-year periods.[8]

|  | One-Year | Five-Year | Ten-Year |
|---|---|---|---|
| TS&W Small Cap Value | 16.20% | 13.46% | 5.48% |
| Russell 2000 Value Index | 31.74% | 15.07% | 6.26% |

60. The investment adviser, Thompson Siegel & Walmsely (TS&W), managed the portfolio through an investment vehicle known as a "separately managed account." As a separately managed account, the TS&W Small Cap Value Fund does not publicly disclose its investment performance and fees. However, the

---

[8] Plaintiffs do not presently have annual investment performance numbers for the Fund for each year.

TS&W Small Cap Value Composite[9] provides a reasonable indication of the performance of the TS&W Small Cap Value Fund.

61. From 2008 through 2011, the TS&W Small Cap Value Composite significantly underperformed its benchmark and other small cap value composites managed by well-known and respected institutional investment advisers. According to TS&W's own independently verified GIPS[10] performance presentations listed on its website and in materials the Plan provided participants, the cumulative total return of the TS&W Small Cap Value Composite from 2008 through 2011 was 3.32% (without accounting for fees). Its benchmark, the Russell 2000 Value, had a significantly greater return of 10.66%—more than 300% better than TS&W. As the chart below illustrates, TS&W's Small Cap Value Composite underperformed the Russell 2000 Value Index three out of the four years leading

---

[9] A composite is an aggregation of one or more portfolios managed by an investment adviser according to a similar investment mandate, objective, or strategy and is the primary vehicle for presenting performance to prospective clients, such as 401(k) plan fiduciaries. For the TS&W Small Cap Value Composite, TS&W must include all actual, fee-paying discretionary portfolios with a similar small cap value mandate. Because the portfolios within the Small Cap Value Composite are similarly managed, each portfolio will experience similar investment performance.

[10] GIPS stands for Global Investment Performance Standards. The purpose of GIPS is to provide a single global standard for calculating and presenting investment performance by investment management firms.

up to the beginning of the class period. Accordingly, by the start of the class period, Home Depot should have removed the TS&W Fund from the Plan.

| Year | TS&W Gross Performance | Russell 2000 Value Performance |
|------|----------------------|-------------------------------|
| 2008 | -31.42% | -28.92% |
| 2009 | 18.60% | 20.58% |
| 2010 | 19.40% | 24.50% |
| 2011 | -3.26% | -5.50% |

62. Indeed, in the four years preceding the class period, many comparable investment options significantly outperformed the TS&W Fund. As the table below illustrates, while the TS&W Fund earned only 2.88% from 2008 through 2011, the Alliance Bernstein Small Cap Value Composite provided a total return of 37.39%; the Fuller & Thaler Small Cap Value Composite grew 39.12%; the Hotchkis & Wiley Small Cap Value Composite grew 33.44%; and the NWQ Small Cap Value Equity Composite grew 26.07%. Each of these comparator funds is managed by a reputable blue-chip investment adviser and was a readily available investment option for Home Depot.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|------|------|------|------|------|------------------------|
| TS&W Small Cap Value | -30.65 | 17.29 | 19.13 | -2.89 | +2.88% |
| Alliance Bernstein Small Cap Value | -36.44 | 47.02 | 33.77 | -6.96 | +37.39% |

| | | | | | |
|---|---|---|---|---|---|
| TSW +/- | 5.79 | -29.73 | -14.64 | 4.07 | |
| +/- Cumulative | | -23.94 | -38.58 | -34.51 | -34.51% |
| | | | | | |
| Fuller & Thaler Small Cap Value | -35.25 | 44.54 | 31.50 | -1.67 | +39.12% |
| TSW +/- | 4.60 | -27.25 | -12.37 | -1.22 | |
| +/- Cumulative | | -22.65 | -35.02 | -36.24 | -36.24% |
| | | | | | |
| Hotchkis & Wiley Small Cap Value | -43.47 | 63.87 | 44.27 | -10.12 | +54.55% |
| TSW +/- | 12.82 | -46.58 | -25.14 | 7.23 | |
| +/- Cumulative | | -33.76 | -58.90 | -51.67 | -51.67% |
| | | | | | |
| NWQ Small Cap Value Equity | -46.29 | 35.44 | 35.58 | 1.34 | +26.07% |
| TSW +/- | 15.64 | -18.15 | -16.45 | -4.23 | |
| +/- Cumulative | | -13.36 | -18.96 | -23.19 | -23.19% |
| | | | | | |
| Russell 2000 Value | -28.92 | 20.58 | 24.50 | -5.50 | +10.66% |
| TSW +/- | -1.73 | -3.29 | -5.37 | 2.61 | |
| +/- Cumulative | | -5.02 | -10.39 | -7.78 | -7.78% |

63. Had Home Depot prudently monitored the TS&W Fund in 2012, it would have identified TS&W's significant underperformance compared to these alternative small cap value investment options. Faced with this evidence of deficient performance, no prudent fiduciary would have retained TS&W to manage the Small Cap Value Fund. But Home Depot did just that.

64. The investment performance of the TS&W Small Cap Value Composite did not improve after 2011. It underperformed its benchmark – the Russell 2000 Value

Index – four out of the next five years.  The TS&W Small Cap Value Composite also underperformed the Hotchkis & Wiley Small Cap Value Composite every single year; the Alliance Bernstein Small Cap Value Composite and the NWQ Small Cap Value Composite for five out of the six years; and the Fuller & Thaler Composite for four out of the six years. Below Plaintiffs compare the performance of the TS&W Small Cap Value Composite to these readily apparent alternative investment options. The ongoing underperformance during the relevant time period raises an inference of imprudence.

| Fund | 2012 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| TS&W Small Cap Value | 17.64 | 47.13 | 7.77 | -9.67 | 17.25 | 3.79 | +83.91% |
| | | | | | | | |
| Alliance Bernstein Small Cap Value | 23.28 | 42.41 | 10.37 | -0.82 | 31.16 | 9.91 | +116.31% |
| TSW +/- | -5.64 | 4.72 | -2.60 | -8.85 | -13.91 | -6.12 | |
| +/- Cumulative | | -0.92 | -3.52 | -12.37 | -26.28 | -32.40 | -32.40% |
| | | | | | | | |
| Fuller & Thaler Small Cap Value | 25.05 | 38.83 | 6.91 | 4.30 | 22.27 | 14.36 | +111.72% |
| TSW +/- | -7.41 | 8.30 | 0.86 | -13.97 | -5.02 | -10.57 | |
| +/- Cumulative | | 0.89 | 1.75 | -12.22 | -17.24 | -27.81 | -27.81% |
| | | | | | | | |
| Hotchkis & Wiley Small Cap Value | 24.37 | 48.33 | 13.16 | -7.45 | 21.51 | 8.69 | +108.61% |
| TSW +/- | -6.73 | -1.20 | -5.39 | -2.22 | -4.26 | -4.90 | |

| +/- Cumulative | | -7.93 | -13.32 | -15.54 | -19.80 | -24.70 | -24.70% |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| NWQ Small Cap Value Equity | 19.43 | 42.73 | 8.53 | -2.69 | 22.75 | 13.65 | +104.40% |
| TSW +/- | -1.79 | 4.40 | -0.76 | -6.98 | -5.50 | -9.86 | |
| +/- Cumulative | | 2.61 | 1.85 | -5.13 | -10.63 | -20.49 | -20.49% |
| | | | | | | | |
| Russell 2000 Value | 18.05 | 34.52 | 4.22 | -7.47 | 31.74 | 7.84 | +88.90% |
| TSW +/- | -0.41 | 12.61 | 3.55 | -2.20 | -14.49 | -4.05 | |
| +/- Cumulative | | 12.20 | 15.75 | 13.55 | -0.94 | -4.99 | -4.99% |

65. The alternative investment options listed in the table above are well known, readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. Nevertheless, Home Depot retained the TS&W Small Cap Value Fund in the Plan when any prudent fiduciary that was monitoring the Plan faithfully and with due care would have replaced it.

66. Home Depot's failure to replace the TS&W Small Cap Value Fund with a better option damaged participants' retirement accounts. For illustration, the below table compares the growth of $100 million invested in the TS&W Fund with the growth of $100 million in each of the funds identified above for the period beginning January 1, 2012 and ending December 31, 2017, rounded to the nearest million. TS&W—the lowest performer of the lot—underperforms the next worst fund by $46 million.

| Fund Name | Compounded | Annualized | Growth of $100 |
|---|---|---|---|

|  | **Performance** | **Performance** | **Million** |
|---|---|---|---|
| TS&W Small Cap Value | 105.05 | 12.71 | $206 million |
| Alliance Bernstein Small Cap Value | 177.03 | 18.51 | $278 million |
| Fuller & Thaler Small Cap Value | 177.03 | 18.05 | $270 million |
| Hotchkis & Wiley Small Cap Value | 155.17 | 16.90 | $256 million |
| NWQ Small Cap Value Equity | 151.16 | 16.59 | $252 million |

67. Home Depot's process for selecting and monitoring the TS&W Small Cap Value Fund was tainted by a failure of effort, competence and/or loyalty. If Home Depot had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the TS&W Fund with one of the many better-performing options available. Home Depot's breach of fiduciary duty caused Plan participants to lose tens of millions of dollars of retirement savings.[11]

**b. Stephens Small Cap Growth**

---

[11] Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of Plan costs and investment performance versus other available alternatives, and information regarding composites and separately managed accounts) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA. Further, Plaintiffs do not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for selecting, monitoring, and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

68. The investment adviser Stephens managed the Plan's Small Cap Growth Fund in a separately managed account. This Fund was the sole option for participants who wanted to invest in a small cap growth strategy. Like TS&W, Stephens was another expensive yet underachieving investment adviser. The .705% investment advisory fee that Stephens collected was not justified by the investment performance of its small cap strategy.

69. According to the Plan's 2017 Annual Fee Disclosure Statement, the Stephens Small Cap Growth Portfolio significantly underperformed its benchmark, the Russell 2000 Growth Index, for the past one-year, five-year, and ten-year periods.[12]

|  | One-Year | Five-Year | Ten-Year |
|---|---|---|---|
| Stephens Small Cap Growth | 10.38% | 7.88% | 3.94% |
| Russell 2000 Growth Index | 11.32% | 13.74% | 7.76% |

70. As a separately managed account, the Stephens Small Cap Growth Portfolio does not publicly disclose its investment performance and fees. Therefore, as with

---

[12] Plaintiffs do not have investment performance numbers for the Fund on an annual basis.

the TS&W fund, Plaintiffs look to the Stephens Composite for a reasonable indication of the performance of Stephens Small Cap Growth Portfolio.[13]

71. In the five-year period from 2008 through 2012, before the Stephens Small Cap Growth Fund became a Plan option, the Stephens Small Cap Growth Fund Composite had an investment return of 46.74%, which was well below the investment returns generated by comparable small cap growth funds managed by respected, larger and more reputable blue-chip investment advisers, such as Alliance Bernstein, Artisan, Voya and Wellington.

72. During this same period, the Alliance Bernstein U.S. Small Cap Growth Composite had an investment return of 58.75%; the Artisan U.S. Small-Cap Growth Composite had an investment return of 52.93%; the Voya Small Cap Growth Composite had an investment return of 50.59%; and the Wellington Small Cap Composite had an investment return of 58.61%.

73. A reasonable investigation would have uncovered these better-performing alternative small cap growth options. In light of the available alternatives, a prudent fiduciary monitoring the Plan would not have selected Stephens to manage

---

[13]While the Stephens Composite exhibits comparable performance to the Plan's Stephens Small Cap Growth Portfolio, the Plan's 2017 Annual Fee Disclosure suggest that the Composite may perform better than the Portfolio on the Plan.

the Small Cap Growth Fund. But Home Depot did just that. It loaded Stephens

onto the plan in 2013, despite its unenviable performance history.

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | Cumulative (2008-2012) |
|---|---|---|---|---|---|---|
| Stephens Small Cap Growth | -39.92 | 38.41 | 27.81 | 3.43 | 17.01 | +46.74% |
| | | | | | | |
| Alliance Bernstein US Small Cap Growth Equity | -44.5 | 43.35 | 38.44 | 5.43 | 16.03 | +58.75% |
| Stephens +/- | 4.58 | -4.94 | -10.63 | -2.00 | 0.98 | |
| +/- Cumulative | | -0.36 | -10.99 | -12.99 | -12.01 | -12.01% |
| | | | | | | |
| Artisan U.S. Small-Cap Growth | -42.83 | 46.20 | 22.01 | 8.22 | 19.33 | +52.93% |
| Stephens +/- | 2.91 | -7.79 | 5.80 | -4.79 | -2.32 | |
| +/- Cumulative | | -4.88 | 0.92 | -3.87 | -6.19 | -6.19% |
| | | | | | | |
| Voya Small Cap Growth | -33.9 | 32.28 | 34.01 | 1.84 | 16.36 | +50.59% |
| Stephens +/- | -6.02 | 6.13 | -6.20 | 1.59 | 0.65 | |
| +/- Cumulative | | 0.11 | -6.09 | -4.50 | -3.85 | -3.85% |
| | | | | | | |
| Wellington Small Cap 2000 | -39.39 | 44.75 | 35.65 | -2.02 | 19.62 | +58.61% |
| Stephens +/- | -0.53 | -6.34 | -7.84 | 5.45 | -2.61 | |
| +/- Cumulative | | -6.87 | -14.71 | -9.26 | -11.87 | -11.87% |
| | | | | | | |

74. Predictably, the performance further deteriorated after Stephens became the

investment adviser for the Plan's small cap growth option. Beginning in 2013,

Stephens underperformed the Artisan, Alliance Bernstein and Wellington options

four out of the next five years; and the Voya option and the Russell 2000 Growth Index three out of the next five years.  The chart below shows the annual and cumulative performance of the Stephens Small Cap Growth Composite relative to the Russell 2000 Growth Index and to the small cap growth options managed by Artisan, Alliance Bernstein, Wellington, and Voya.

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2013-2017) |
|---|---|---|---|---|---|---|
| Stephens Small Cap Growth | 44.65 | -2.31 | -3.61 | 11.40 | 20.29 | +70.42% |
| | | | | | | |
| Alliance Bernstein US Small Cap Growth Equity | 46.84 | -0.64 | 0.12 | 7.70 | 35.94 | +89.96 |
| Stephens +/- | -2.19 | -1.67 | -3.73 | 3.70 | -15.65 | |
| +/- Cumulative | | -3.86 | -7.59 | -3.89 | -19.54 | -19.54% |
| | | | | | | |
| Artisan U.S. Small-Cap Growth | 44.71 | 0.36 | 1.61 | 6.90 | 28.38 | +81.96 |
| Stephens +/- | -0.06 | -2.67 | -5.22 | 4.50 | -8.09 | |
| +/- Cumulative | | -2.73 | -7.95 | -3.45 | | -11.54% |
| | | | | | | |

| Voya Small Cap Growth | 40.07 | 6.46 | -0.11 | 14.17 | 19.74 | +80.33% |
|---|---|---|---|---|---|---|
| Stephens +/- | 4.58 | -8.77 | -3.5 | -2.77 | 0.55 | |
| +/- Cumulative | | -4.19 | -7.69 | -10.46 | -9.91 | -9.91% |
| | | | | | | |
| Wellington Small Cap 2000 | 43.92 | 10.27 | -1.91 | 20.61 | 20.89 | +93.78 |
| Stephens +/- | 0.73 | -12.58 | -1.70 | -9.21 | -0.60 | |
| +/- Cumulative | | -11.85 | -13.55 | -22.76 | -23.36 | -23.36% |
| | | | | | | |
| Russell 2000 Growth | 43.30 | 5.60 | -1.38 | 11.32 | 22.17 | +81.01% |
| Stephens +/- | 1.35 | -7.91 | -2.23 | 0.08 | -1.88 | |
| +/- Cumulative | | -6.56 | -8.79 | -8.71 | -10.59 | -10.59% |

75. Each of the alternative small cap growth options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors.

76. Morningstar, an independent ratings agency, further confirms the deficient performance of the Stephens Small Cap Growth Composite. As of March 4, 2018, 89% of small cap growth options performed better than the Stephens Small Cap Growth Composite over the past five-years; 79% performed better over the past three-years; and 56% performed better over the past year.

77. Nevertheless, Home Depot has kept the Stephens Small Cap Growth option on the Plan when any prudent fiduciary would have weeded it out. A fiduciary

acting in the best interest of the Plan's participants and with due care would never have selected and retained the Stephens Small Cap Growth Fund.

78. Home Depot's decision to select and retain the Stephens Small Cap Growth Portfolio harmed participants' retirement accounts. For illustration, the below table compares the growth of $50 million invested in the Stephens Small Cap Growth Composite with the growth of $50 million in each of the comparator funds identified above for the period beginning January 1, 2012 through December 31, 2017, rounded to the nearest million. Stephens underperforms the next worst fund by $8 million.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $50 Million |
|---|---|---|---|
| Stephens Small Cap Growth | 33.67 | 7.07 | $67 million |
| Alliance Bernstein U.S. Small Cap Growth | 56.63 | 11.47 | $79 million |
| Artisan U.S. Small-Cap Growth | 50.41 | 10.08 | $75 million |
| Voya Small Cap Growth | 56.73 | 10.98 | $78 million |
| Wellington Small Cap 2000 | 73.26 | 13.81 | $86 million |

79.Home Depot breached its fiduciary duties by selecting and retaining the Stephens Small Cap Growth Portfolio despite its years of underperformance. Plan participants lost millions of dollars from their retirement savings as a result of Home Depot's breach of fiduciary duty.

### c. JPM Stable Value:

80.Home Depot offered participants a stable value fund managed by the JPMorgan Chase & Co called the JPM Stable Value Fund. This Fund was the sale Stable Value option on the Plan, and it has been performing poorly since at least 2008. According to performance data included in the Plan's Fund Fact Sheet, in the 2008-2011 period, the JPM Fund significantly underperformed its customary benchmark, the Hueler Stable Value Pooled Index, and other large, well-known "stable value funds" managed by reputable investment advisers, such as Galliard, PIMCO, Standish and T. Rowe Price. The below chart compares the JPM Stable Value Fund's performance with its benchmark and these other well-known stable value funds.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| JPM Stable Value Fund | 4.65 | 1.67 | 1.64 | 2.07 | +10.03% |
| | | | | | |
| Galliard Managed Income Collective Fund | 5.23 | 4.42 | 4.12 | 3.22 | +16.99% |
| JPM +/- | -0.58 | -2.75 | -2.48 | -1.15 | |

| | | | | | |
|---|---|---|---|---|---|
| +/- Cumulative | | -3.33 | -5.81 | -6.96 | -6.96% |
| | | | | | |
| PIMCO Stable Value Composite | 5.58 | 4.33 | 5.13 | 4.63 | +19.67% |
| JPM +/- | -0.93 | -2.66 | -3.49 | -2.56 | |
| +/- Cumulative | | -3.59 | -7.08 | -9.64 | -9.64% |
| | | | | | |
| Standish Stable Value Composite | 4.72 | 3.68 | 3.55 | 3.15 | +15.10% |
| JPM +/- | -0.07 | -2.01 | -1.91 | -1.08 | |
| +/- Cumulative | | -2.08 | -3.99 | -5.07 | -5.07% |
| | | | | | |
| T. Rowe Price Stable Value Common Trust - D | 4.84 | 4.36 | 3.40 | 3.40 | +16.00% |
| JPM +/- | -0.19 | -2.69 | -1.76 | -1.33 | |
| +/- Cumulative | | -2.88 | -4.64 | -5.97 | -5.97% |
| | | | | | |
| Hueler Stable Value Pooled Index | 4.58 | 3.12 | 3.12 | 2.69 | +13.51% |
| JPM +/- | 0.06 | -1.45 | -1.48 | -0.62 | |
| +/- Cumulative | | -1.39 | -2.47 | -3.09 | -3.48% |

81. The problems with the JPM Stable Value funds were notorious. Prior to the Class Period, 401(k) plan participants initiated a class action lawsuit on behalf of thousands of workers against JPMorgan Chase & Co. alleging that JPMorgan had managed their 78 stable value funds imprudently in violation of its fiduciary duties under ERISA. The lawsuit accused JPMorgan Chase & Co. of overinvesting in risky, highly leveraged assets, including, among other things, mortgage-related assets. JPMorgan removed the risky securities from the portfolios, but the lawsuits

persisted well into the Class Period. Any reasonable investigation would have uncovered JPMorgan's legal problems and the corresponding concerns regarding its stable value funds.

82. JPMorgan's legal turmoil together with the abysmal performance of the JPM Stable Value Fund would have compelled any prudent fiduciary to remove the Fund from the Plan by the start of the Class Period. Nevertheless, Home Depot continued offering the JPM Stable Value Fund to Plan participants.

83. The Fund's performance did not improve during Class Period. As the chart below illustrates, the JPM Fund underperformed the Hueler Index and comparable stable value funds every single year. Yet Home Depot continued to retain the Fund.

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2016) |
|---|---|---|---|---|---|---|---|
| JPM Stable Value Fund | 2.10 | 1.71 | 1.45 | 1.61 | 1.57 | Not Available | 8.44 |
| | | | | | | | |
| Galliard Managed Income Collective Fund | 2.60 | 2.32 | 1.97 | 1.99 | 1.91 | 1.97 (not included) | 10.79 |
| JPM +/- | -0.50 | -0.61 | -0.52 | -0.38 | -0.34 | | |
| +/- Cumulative | | -1.11 | -1.63 | -2.01 | -2.35 | | -2.35 |
| | | | | | | | |
| PIMCO Stable Value | 4.33 | 3.77 | 3.2 | 3.1 | 2.96 | 2.98 (not included) | 17.36 |

| Composite | | | | | | | |
|---|---|---|---|---|---|---|---|
| JPM +/- | -2.23 | -2.06 | -1.75 | -1.49 | -1.39 | | |
| +/- Cumulative | | -4.29 | -6.04 | -7.53 | -8.92 | | -8.92 |
| | | | | | | | |
| Standish Stable Value Composite | 2.77 | 2.36 | 2.2 | 2.23 | 2.16 | 2.14 (not included) | 11.72 |
| JPM +/- | -0.67 | -0.65 | -0.75 | -0.62 | -0.59 | | |
| +/- Cumulative | | -1.32 | -2.07 | -2.69 | -3.28 | | -3.28 |
| | | | | | | | |
| T. Rowe Price Stable Value Common Trust - D | 2.52 | 2.26 | 2.15 | 2.08 | 1.94 | 2.01 (not included) | 10.95 |
| JPM +/- | -0.42 | -0.55 | -0.70 | -0.47 | -0.37 | | |
| +/- Cumulative | | -0.97 | -1.67 | -2.14 | -2.51 | | -2.51 |
| | | | | | | | |
| Hueler Stable Value Pooled Index | 2.26 | 1.84 | 1.69 | 1.77 | 1.79 | 1.96 (not included) | 9.35 |
| JPM +/- | -0.16 | -0.13 | -0.24 | -0.16 | -0.2 | | |
| +/- Cumulative | | -0.16 | -0.29 | -0.53 | -0.69 | | -0.91 |

84. Home Depot's process for selecting and maintaining the JPM Stable Value Fund as an investment option was tainted by a failure of effort, competence and/or loyalty. Faced with almost a decade of poor performance, any reasonably prudent fiduciary would have removed the JPM Stable Value Fund from the plan.[14]

---

[14] Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of Plan costs and investment performance versus other available alternatives) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA. Further, Plaintiffs do not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for selecting, monitoring, and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery. For purposes of this

85. Had Home Depot replaced the JPM Stable Value Fund with any of the comparable funds identified above, Plaintiffs would have earned a significantly higher return on their retirement investments.  By selecting and retaining this poorly performing investment option, Home Depot caused Plan participants to lose millions of dollars in retirement savings.

### d. Home Depot Imprudently Selected Poorly-Performing BlackRock Target Date Funds

86. During the Class Period, the Plan offered participants target date retirement portfolios managed by BlackRock.

87. Target date retirement portfolios are designed to achieve certain investment results based on the investor's anticipated retirement date. The portfolios are composed of a mix of stock, bonds and cash. Allocations are based on the target retirement date of the investor. A portfolio of an investor with a 2020 retirement date would be weighted more heavily in bonds and cash to reduce risk, whereas the portfolio for an investor with a 2055 retirement date would be weighted more heavily in stocks. The investment advisor adjusts the portfolios over time as the target date gets closer.

---

Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

88.Home Depot selected BlackRock as the sole investment adviser for the Plan's target date portfolios. Thus, Participants who sought a target retirement date strategy were forced to choose BlackRock. The BlackRock Life Path Funds (or "BlackRock Funds") have target retirement dates ranging from 2020 to 2055, and they are exceedingly popular. Based on information and belief, Plan participants have invested approximately $1 billion in the BlackRock Funds. The Plan's 2017 Annual Fee Disclosure Statement identified the following options:

BlackRock LifePath 2020 Portfolio Fund

BlackRock LifePath 2025 Portfolio Fund

BlackRock LifePath 2030 Portfolio Fund

BlackRock LifePath 2035 Portfolio Fund

BlackRock LifePath 2040 Portfolio Fund

BlackRock LifePath 2045 Portfolio Fund

BlackRock LifePath 2050 Portfolio Fund

BlackRock LifePath 2055 Portfolio Fund

89.These BlackRock Funds were perennial poor performers. As the sections below will demonstrate, each of the BlackRock target date funds underperformed comparable target date funds (e.g. Callan, T. Rowe Price, Vanguard, State Street,

and Voya) in the years leading up to the class period. By 2012, any prudent fiduciary would have removed the BlackRock Funds from the plan.

90. Nevertheless, Home Depot continued offering the Funds, and unsurprisingly, the Funds continued to underperform. For the three-year period from January 1, 2012 through December 31, 2014, Morningstar ranked the BlackRock LifePath Series in the bottom 20% of comparable target date strategies. Up until the present, the BlackRock funds have continued to underperform comparable target date funds.

91. Any prudent fiduciary would have compared the performance of the BlackRock Funds with the performance of the comparable funds offered by Callan, T. Rowe Price, Vanguard, State Street or Voya. Each of these investment advisors is an industry leader and capable of providing target date strategies to large 401(k) plans like the Home Depot Plan. After years of BlackRock's deficient performance, any reasonably prudent fiduciary would have replaced the BlackRock Funds with one of these better performing comparator funds. Home Depot's failure to do so costed participants tens of millions of dollars in retirement savings.[15]

---

[15] Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of Plan costs and investment performance versus other available alternatives, and information regarding collective trusts) necessary to understand that Defendants breached their

92. In the charts below, Plaintiffs illustrate the underperformance of eight BlackRock target date funds compared to readily apparent, superior investment options managed by other investment advisers. Since the Plan's BlackRock Funds are invested in vehicles known as "collective investment trusts," there is little publicly available information about them. Accordingly, the charts below use the performance of the BlackRock LifePath Index F Funds as a proxy for the Plan's BlackRock Funds. Based on information set forth in the Plan's 2017 Annual Fee Disclosure, the BlackRock LifePath Index F Funds perform comparably to the BlackRock Funds in the Plan. In fact, the LifePath Index F Funds are likely a conservative proxy, since the 2017 Fee Disclosure indicates that the LifePath Index F Funds performed better than the Plan's BlackRock target date funds. Thus, the relative underperformance of the BlackRock LifePath Portfolios is likely worse than that illustrated in the charts below.

93. Specifically, the below charts compare the BlackRock Funds to Vanguard and State Street commencing with BlackRock's inception in 2008; to T. Rowe Price commencing with its inception in 2009; to Voya commencing with its

---

fiduciary duties and engaged in other unlawful conduct in violation of ERISA. Further, Plaintiffs do not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for selecting, monitoring, and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

inception in 2010; and to Callan commencing with its inception in 2012. The ongoing underperformance during the relevant time period is striking and raises an inference of imprudence.

### e. 2020 Target Date:

94. The charts below illustrate the performance of the BlackRock LifePath 2020 Index Fund from 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2020 Index Fund's performance for the 2008-2011 period was mediocre compared with other target date funds. The BlackRock Fund then turned very sour in 2012-2013, at the start of the Class Period. Indeed, BlackRock underperformed every single option on a cumulative basis between 2012 and 2017. Moreover, the Callan and Vanguard options outperformed the BlackRock LifePath Index 2020 Fund in every year between 2012 and 2017. Similarly, the State Street, T. Rowe Price and Voya options outperformed BlackRock five out of six years between 2012 and 2017.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2020 F Fund | -25.60 | 22.62 | 13.02 | 1.24 | +11.28% |
| | | | | | |
| State St Target Ret 2020 Cl I | -25.22 | 20.18 | 14.76 | 6.06 | +15.78% |
| BlackRock +/- | -0.38 | 2.44 | -1.74 | -4.82 | |
| +/- Cumulative | | 2.06 | 0.32 | -4.50 | -4.50% |

| | | | | | |
|---|---|---|---|---|---|
| Vanguard Target Retire 2020 Trust 1 | -26.91 | 23.20 | 13.25 | 0.61 | +10.15% |
| BlackRock +/- | 1.31 | -0.58 | -0.23 | 0.63 | |
| +/- Cumulative | | 0.73 | 0.50 | 1.13 | +1.13% |
| | | | | | **Cumulative** (2009-2011) |
| T. Rowe Price Ret Hybrid 2020 Tr-T1 | | 31.17 | 13.77 | -1.11 | +43.83% |
| BlackRock +/- | | -8.55 | -0.75 | 2.35 | |
| +/- Cumulative | | | -9.30 | -6.95 | -6.95% |
| | | | | | Incepted 2010 |
| Voya Target Solution 2020 Trust | | | | | |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |
| Callan Glidepath 2020 Fund Z | | | | | Incepted in 2012 |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| BlackRock LifePath Index 2020 F Fund | 11.15 | 10.31 | 5.70 | -1.19 | 6.71 | 11.85 | +44.53% |
| State St Target | 13.95 | 13.40 | 6.11 | -1.77 | 7.71 | 13.23 | +52.63% |

| Ret 2020 Cl I | | | | | | | |
|---|---|---|---|---|---|---|---|
| BlackRock +/. | -2.80 | -3.09 | -0.41 | 0.58 | -1.00 | -1.38 | |
| +/- Cumulative | | -5.89 | -6.30 | -5.72 | -6.72 | -8.10 | -8.10% |
| | | | | | | | |
| Vanguard Target Retire 2020 Trust 1 | 12.46 | 15.95 | 7.22 | -0.55 | 7.03 | 14.18 | +56.29% |
| BlackRock +/. | -1.31 | -5.64 | -1.52 | -0.64 | -0.32 | -2.33 | |
| +/- Cumulative | | -6.95 | -8.47 | -9.11 | -9.43 | -11.76 | -11.76% |
| | | | | | | | |
| T. Rowe Price Ret Hybrid 2020 Tr-T1 | 14.58 | 18.03 | 5.67 | -0.52 | 7.89 | 15.90 | +61.55% |
| BlackRock +/. | -3.43 | -7.72 | 0.03 | -0.67 | -1.18 | -4.05 | |
| +/- Cumulative | | -11.15 | -11.12 | -11.79 | -12.97 | -17.02 | -17.02% |
| | | | | | | | |
| Voya Target Solution 2020 Trust | 12.79 | 14.20 | 6.29 | 0.22 | 5.71 | 12.61 | +51.82% |
| BlackRock +/. | -1.64 | -3.89 | -0.59 | -1.41 | 1.00 | -0.76 | |
| +/- Cumulative | | -5.53 | -6.12 | -7.53 | -6.53 | -7.29 | -7.29% |
| | | | | | | | |
| Callan Glidepath 2020 Fund Z | 15.35 | 20.66 | 6.98 | 0.20 | 9.32 | 14.35 | +66.86% |
| BlackRock +/. | -4.20 | -10.35 | -1.28 | -1.39 | -2.61 | -2.50 | |
| +/- Cumulative | | -14.55 | -15.83 | -17.22 | -19.83 | -22.33 | -22.33% |

95. The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would likely have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2020 Fund.

96. According to Morningstar, as of February 24, 2018, 63% of funds in the 2020 target date category outperformed the BlackRock LifePath Index 2020 for the past five years, 66% outperformed BlackRock LifePath Index 2020 for the past three years, and 73% outperformed BlackRock LifePath Index 2020 in the past year.

97. Any prudent fiduciary would have investigated the deficient performance of the BlackRock 2020 Fund and compared it with the performance of State Street, Vanguard, T. Rowe Price, Voya, or Callan. Given the data presented above, which was available to Home Depot throughout the class period, no reasonable fiduciary would have kept the BlackRock 2020 Fund on the Plan.

98. The table below shows the hypothetical growth of $100 million invested in the BlackRock 2020 Fund and each of its comparators from January 1, 2012 through December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2020 Fund with a better option resulted in significantly lower returns for Plan participants.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2020 F Fund | 52.87 | 7.33 | $153 million |
| Callan Glidepath 2020 Fund Z | 86.52 | 10.95 | $187 million |
| T. Rowe Price Ret | 77.76 | 10.06 | $177 million |

| Hybrid 2020 Tr-T1 | | | |
|---|---|---|---|
| Vanguard Target Retire 2020 Trust 1 | 69.92 | 9.24 | $170 million |
| Voya Target Solution 2020 Trust | 63.34 | 8.52 | $163 million |

99.Home Depot breached its fiduciary duties by failing to remove the BlackRock 2020 Fund from the Plan and caused the Plan participants to lose millions of dollars in retirement savings.

### f.  2025 Target Date:

100.    The charts below illustrate the BlackRock LifePath 2025 Index Fund's performance for 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2025 Index Fund's performance for the 2008-2011 period was mediocre compared to other target date funds. The Fund then turned very sour at the beginning of the Class Period in 2012-2013. Indeed, the BlackRock 2025 Fund underperformed each of its comparators on a cumulative basis between 2012 and 2017. Moreover, the Callan, T. Rowe Price, and Vanguard options outperformed the BlackRock LifePath Index 2025 Fund every year from 2012 through 2017. Likewise, the State Street and Voya options outperformed the BlackRock LifePath Index 2025 Fund five out of six years between 2012 and 2017.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2025 F Fund | -28.91 | 25.06 | 13.71 | 0.25 | +10.11% |

| State St Target Ret 2025 Cl I | -28.06 | 21.80 | 15.48 | 5.02 | +14.24% |
|---|---|---|---|---|---|
| BlackRock +/- | -0.85 | 3.26 | -1.77 | -4.77 | |
| +/- Cumulative | | 2.41 | 0.64 | -4.13 | -4.13% |

| Vanguard Target Retire 2025 Trust 1 | -29.98 | 25.13 | 13.87 | -0.33 | +8.69% |
|---|---|---|---|---|---|
| BlackRock +/- | 1.07 | -0.07 | -0.16 | 0.58 | |
| +/- Cumulative | | 1.00 | 0.84 | 1.42 | +1.42% |

| | | | | | **Cumulative** (2009-2011) |
|---|---|---|---|---|---|
| T. Rowe Price Ret Hybrid 2025 Tr-T1 | | 32.86 | 14.35 | -1.87 | +45.34% |
| BlackRock +/- | | -7.80 | -0.64 | 2.12 | |
| +/- Cumulative | | | -8.44 | -6.32 | -6.32% |

| | | | | | Incepted 2010 |
|---|---|---|---|---|---|
| Voya Target Solution 2025 Trust | | | | | |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |

| Callan Glidepath 2025 Fund Z | | | | | Incepted 2012 |
|---|---|---|---|---|---|
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | **Cumulative** (2012-2017) |
|---|---|---|---|---|---|---|---|
| BlackRock LifePath Index 2025 F Fund | 12.27 | 12.42 | 5.84 | -1.36 | 7.37 | 13.99 | +50.53% |
| State St Target | 14.49 | 16.16 | 6.53 | -1.91 | 8.40 | 16.38 | +60.05% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ret 2025 Cl I | | | | | | | |
| BlackRock +/- | -2.22 | -3.74 | -0.69 | 0.55 | -1.03 | -2.39 | |
| +/- Cumulative | | -5.96 | -6.65 | -6.10 | -7.13 | -9.52 | -9.52% |
| Vanguard Target Retire 2025 Trust 1 | 13.42 | 18.22 | 7.25 | -0.70 | 7.55 | 16.02 | +61.76% |
| BlackRock +/- | -1.15 | -5.80 | -1.41 | -0.66 | -0.18 | -2.03 | |
| +/- Cumulative | | -6.95 | -8.36 | -9.02 | -9.20 | -11.23 | -11.23% |
| T. Rowe Price Ret Hybrid 2025 Tr-T1 | 15.46 | 20.41 | 6.04 | -0.52 | 8.33 | 17.60 | +67.32% |
| BlackRock +/- | -3.19 | -7.99 | -0.20 | -0.84 | -0.96 | -3.61 | |
| +/- Cumulative | | -11.18 | -11.38 | -12.22 | -13.18 | -16.79 | -16.79% |
| Voya Target Solution 2025 Trust | 13.97 | 16.78 | 6.11 | -0.03 | 6.28 | 15.26 | +58.37% |
| BlackRock +/- | -1.70 | -4.36 | -0.27 | -1.33 | 1.09 | -1.27 | |
| +/- Cumulative | | -6.06 | -6.33 | -7.66 | -6.57 | -7.84 | -7.84% |
| Callan Glidepath 2025 Fund Z | 16.34 | 23.21 | 6.92 | -0.22 | 9.94 | 15.87 | +72.06% |
| BlackRock +/- | -4.07 | -10.79 | -1.08 | -1.14 | -2.57 | -1.88 | |
| +/- Cumulative | | -14.86 | -15.94 | -17.08 | -19.65 | -21.53 | -21.53% |

101.    The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would likely have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2025 Fund.

51

102.     According to Morningstar, as of February 24, 2018, 71% of funds in the 2025 target date category outperformed the BlackRock LifePath Index 2025 Fund over the past five years, 55% outperformed the BlackRock LifePath Index 2025 Fund for the past three years, and 75% outperformed the BlackRock LifePath Index 2025 Fund for the past year.

103.     The table below shows the hypothetical growth of $100 million invested in the BlackRock 2025 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2025 Fund with a better option resulted in significantly lower returns for Plan participants.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2025 F Fund | 61.26 | 8.29 | $161 million |
| Callan Glidepath 2025 Fund Z | 94.79 | 11.75 | $195 million |
| T. Rowe Price Ret Hybrid 2025 Tr-T1 | 86.83 | 10.98 | $187 million |
| Vanguard Target | 78.20 | 10.11 | $178 million |

| | | | |
|---|---|---|---|
| Retire 2025 Trust 1 | | | |
| Voya Target Solution 2025 Trust | 72.95 | 9.56 | $173 million |

104.    Home Depot breached its fiduciary duties by failing to remove the BlackRock 2025 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

**g. 2030 Target Date:**

105.    The charts below illustrate the performance of the BlackRock LifePath 2030 Index Fund from 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2030 Index Fund's performance for the 2008-2011 period was mediocre compared to other target date funds. The Fund then turned very sour at the beginning of the Class Period in 2012-2013. Indeed, BlackRock underperformed every single comparator on a cumulative basis between 2012 and 2017. Moreover, the Callan and T. Rowe Price options outperformed the BlackRock LifePath 2030 Fund every single year between 2012 and 2017. Similarly, the State Street, Vanguard and Voya options outperformed the BlackRock LifePath 2030 Fund five out of six years between 2012 and 2017.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2030 F Fund | -31.62 | 26.83 | 14.49 | -0.79 | +8.91% |

| State St Target Ret 2030 Cl I | -30.93 | 24.29 | 15.94 | 3.69 | +12.99% |
|---|---|---|---|---|---|
| BlackRock +/. | -0.69 | 2.54 | -1.45 | -4.48 | |
| +/- Cumulative | | 1.85 | 0.40 | -4.08 | -4.08% |
| | | | | | |
| | | | | | **Cumulative (2009-2011)** |
| Vanguard Target Retire 2030 Trust 1 | -32.88 | 26.88 | 14.57 | -1.26 | +7.31% |
| BlackRock +/. | 1.26 | -0.05 | -0.08 | 0.47 | |
| +/- Cumulative | | 1.21 | 1.13 | 1.60 | +1.60% |
| | | | | | |
| | | | | | **Cumulative (2009-2011)** |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | | 34.01 | 14.97 | -2.36 | +46.62% |
| BlackRock +/. | | -7.18 | -0.48 | 1.57 | |
| +/- Cumulative | | | -7.66 | -6.09 | -6.09% |
| | | | | | |
| Voya Target Solution 2030 Trust | | | | | Incepted 2010 |
| BlackRock +/. | | | | | |
| +/- Cumulative | | | | | |
| | | | | | |
| Callan Glidepath 2030 Fund Z | | | | | Incepted 2012 |
| BlackRock +/. | | | | | |
| +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|------|------|------|------|------|------|------|------------------------|
| BlackRock LifePath Index 2030 F Fund | 13.39 | 14.20 | 5.98 | -1.53 | 7.95 | 15.91 | +55.90% |
| State St Target Ret 2030 Cl I | 15.13 | 18.35 | 6.60 | -1.92 | 8.53 | 18.11 | +64.80% |
| BlackRock +/₋ | -1.74 | -4.15 | -0.62 | 0.39 | -0.58 | -2.20 | |
| +/- Cumulative | | -5.89 | -6.51 | -6.12 | -6.70 | -8.90 | -8.90% |
| Vanguard Target Retire 2030 Trust 1 | 14.40 | 20.57 | 7.28 | -0.91 | 7.93 | 17.61 | +66.88% |
| BlackRock +/₋ | -1.01 | -6.37 | -1.30 | -0.62 | 0.02 | -1.70 | |
| +/- Cumulative | | -7.38 | -8.68 | -9.30 | -9.28 | -10.98 | -10.98% |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | 16.04 | 22.48 | 6.32 | -0.58 | 8.75 | 19.22 | +72.23% |
| BlackRock +/₋ | -2.65 | -8.28 | -0.34 | -0.95 | -0.80 | -3.31 | |
| +/- Cumulative | | -10.93 | -11.27 | -12.22 | -13.02 | -16.33 | -16.33% |
| Voya Target Solution 2030 Trust | 14.72 | 19.28 | 6.51 | -0.21 | 6.79 | 17.21 | +64.30% |
| BlackRock +/₋ | -1.33 | -5.08 | -0.53 | -1.32 | 1.16 | -1.30 | |
| +/- Cumulative | | -6.41 | -6.94 | -8.26 | -7.10 | -8.40 | -8.40% |
| Callan Glidepath 2030 Fund Z | 17.04 | 25.79 | 6.67 | -0.63 | 10.22 | 17.42 | +76.51% |
| BlackRock +/₋ | -3.65 | -11.59 | -0.69 | -0.90 | -2.27 | -1.51 | |
| +/- Cumulative | | -15.24 | -15.93 | -16.83 | -19.10 | -20.61 | -20.61% |

106.    The options listed in the table above are managed by well-known investment advisers, are readily available, and are easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would likely have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2030 Fund.

107.    According to Morningstar, as of February 24, 2018, 69% of funds in the 2030 target date category performed better than the BlackRock LifePath Index 2030 Fund over the past five years, 60% percent performed better for the past three years, and 75% percent performed better for the past year.

108.    The table below shows the hypothetical growth of $100 million invested in the BlackRock 2030 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2030 Fund with a better option resulted in significantly lower returns for Plan participants.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2030 Fund | 69.09 | 9.15 | $169 million |
| Callan Glidepath 2030 Fund Z | 101.96 | 12.43 | $202 million |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | 94.98 | 11.75 | $195 million |
| Vanguard Target Retire 2030 Trust 1 | 86.12 | 10.91 | $186 million |
| Voya Target Solution 2030 Trust | 82.07 | 10.50 | $182 million |

109.    Home Depot breached its fiduciary duties by failing to remove the BlackRock 2030 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

### h. 2035 Target Date:

110.    The charts below illustrate the performance of the BlackRock LifePath 2035 Index Fund from 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2035 Index Fund's performance for the 2008-2011 period was mediocre compared to other target date funds. But it turned very sour at the start of the Class Period in 2012-2013.  As a result, BlackRock underperformed every single option on a cumulative basis between 2012 and 2017. Moreover, the Callan and T. Rowe Price options outperformed BlackRock LifePath 2035 Fund every single year between 2012 and 2017. Similarly, the State Street, Vanguard

and Voya options outperformed BlackRock LifePath 2035 Fund five out of six years between 2012 and 2017.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2035 Fund | -34.06 | 28.86 | 14.93 | -1.71 | +8.02% |
| | | | | | |
| State St Target Ret 2035 SL Cl I | -33.62 | 26.92 | 16.20 | 1.65 | +11.15% |
|    BlackRock +/- | -0.44 | 1.94 | -1.27 | -3.36 | |
|    +/- Cumulative | | 1.50 | 0.23 | -3.13 | -3.13% |
| | | | | | |
| Vanguard Target Retire 2035 Trust 1 | -34.52 | 28.35 | 15.19 | -2.22 | +6.80% |
|    BlackRock +/- | 0.46 | 0.51 | -0.26 | 0.51 | |
|    +/- Cumulative | | 0.97 | 0.71 | 1.22 | +1.22% |
| | | | | | |
| | | | | | Cumulative (2009-2011) |
| T. Rowe Price Ret Hybrid 2035 Tr-T1 | | 34.81 | 15.32 | -2.94 | +47.19% |
|    BlackRock +/- | | -5.95 | -0.39 | 1.23 | |
|    +/- Cumulative | | | -6.34 | -5.11 | -5.11% |
| | | | | | |
| | | | | | Incepted 2010 |
| Voya Target Solution 2035 Trust | | | | | |
|    BlackRock +/- | | | | | |
|    +/- Cumulative | | | | | |
| | | | | | |
| Callan Glidepath 2035 Fund Z | | | | | Incepted 2012 |
|    BlackRock +/- | | | | | |
|    +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| BlackRock LifePath Index 2035 Fund | 14.35 | 15.98 | 6.08 | -1.72 | 8.50 | 17.77 | +60.96% |
| | | | | | | | |
| State St Target Ret 2035 SL Cl I | 15.70 | 19.93 | 6.55 | -2.02 | 8.79 | 19.50 | +68.45% |
| BlackRock +/- | -1.35 | -3.95 | -0.47 | 0.30 | -0.29 | -1.73 | |
| +/- Cumulative | | -5.30 | -5.77 | -5.47 | -5.76 | -7.49 | -7.49% |
| | | | | | | | |
| Vanguard Target Retire 2035 Trust 1 | 15.33 | 22.96 | 7.26 | -1.09 | 8.35 | 19.22 | +72.03% |
| BlackRock +/- | -0.98 | -6.98 | -1.18 | -0.63 | 0.15 | -1.45 | |
| +/- Cumulative | | -7.96 | -9.14 | -9.77 | -9.62 | -11.07 | -11.07% |
| | | | | | | | |
| T. Rowe Price Ret Hybrid 2035 Tr-T1 | 16.52 | 24.16 | 6.42 | -0.63 | 9.01 | 20.52 | +76.00% |
| BlackRock +/- | -2.17 | -8.18 | -0.34 | -1.09 | -0.51 | -2.75 | |
| +/- Cumulative | | -10.35 | -10.69 | -11.78 | -12.29 | -15.04 | -15.04% |
| | | | | | | | |
| Voya Target Solution 2035 Trust | 15.55 | 20.70 | 6.31 | -0.33 | 7.07 | 19.12 | +68.42% |
| BlackRock +/- | -1.20 | -4.72 | -0.23 | -1.39 | 1.43 | -1.35 | |
| +/- Cumulative | | -5.92 | -6.15 | -7.54 | -6.11 | -7.46 | -7.46% |
| | | | | | | | |
| Callan Glidepath 2035 Fund Z | 17.43 | 27.17 | 6.47 | -0.96 | 10.50 | 18.36 | +78.97% |
| BlackRock +/- | -3.08 | -11.19 | -0.39 | -0.76 | -2.00 | -0.59 | |
| +/- Cumulative | | -14.27 | -14.66 | -15.42 | -17.42 | -18.01 | -18.01% |

111.    The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would likely have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2035 Fund.

112.    According to Morningstar, as of February 24, 2018, 71% of funds in the 2035 target date category outperformed the BlackRock LifePath Index 2035 Fund over the past five years, 55% percent outperformed BlackRock LifePath Index 2035 over the past three years, and 75% outperformed BlackRock LifePath Index 2035 over the past year.

113.    The table below shows the hypothetical growth of $100 million invested in the BlackRock 2035 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2035 Fund with a better option resulted in significantly lower returns for Plan participants.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2035 Fund | 76.68 | 9.95 | $177 million |
| Callan Glidepath 2035 Fund Z | 105.97 | 12.80 | $206 million |
| T. Rowe Price Ret Hybrid 2035 Tr-T1 | 100.98 | 12.34 | $201 million |
| Vanguard Target Retire 2035 Trust 1 | 94.34 | 11.71 | $194 million |
| Voya Target Solution 2035 Trust | 88.51 | 11.14 | $189 million |

114.    Home Depot breached its fiduciary duties by failing to remove the BlackRock 2035 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

### i. 2040 Target Date:

115.    The charts below illustrate the performance of the BlackRock LifePath 2040 Index Fund from 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2040 Index Fund's performance for the 2008-2011 period was mediocre compared to other target date funds. It then turned very sour at the start of the Class Period in 2012-2013. As a result, BlackRock underperformed every single option on a cumulative basis between 2012 and 2017. Moreover, the Callan and T. Rowe Price options outperformed BlackRock LifePath 2040 Fund every single year between 2012 and 2017.  Similarly, the State Street, Vanguard

61

and Voya options outperformed the BlackRock LifePath 2040 Fund five out of six

years between 2012 and 2017.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2040 F Fund | -36.31 | 30.43 | 15.56 | -2.48 | +7.20% |
| State St Target Ret 2040 SL Cl I | -33.69 | 27.43 | 16.38 | 0.23 | +10.35% |
| BlackRock +/- | -2.62 | 3.00 | -0.82 | -2.71 | |
| +/- Cumulative | | 0.38 | -0.44 | -3.15 | -3.15% |
| Vanguard Target Retire 2040 Trust 1 | -34.46 | 28.48 | 15.30 | -2.48 | +6.84% |
| BlackRock +/- | -1.85 | 1.95 | 0.26 | 0.00 | |
| +/- Cumulative | | 0.10 | 0.36 | 0.36 | +0.36% |
| | | | | | Cumulative (2009-2011) |
| T. Rowe Price Ret Hybrid 2040 Tr-T1 | | 35.16 | 15.30 | -3.03 | +47.43% |
| BlackRock +/- | | -4.73 | 0.26 | 0.55 | |
| +/- Cumulative | | | -4.47 | -3.92 | -3.92% |
| | | | | | Incepted 2010 |
| Voya Target Solution 2040 Trust | | | | | |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |
| | | | | | Incepted 2012 |
| Callan Glidepath 2040 Fund Z | | | | | |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| BlackRock LifePath Index 2040 F Fund | 15.12 | 17.46 | 6.20 | -1.92 | 8.95 | 19.45 | +65.26% |
| State St Target Ret 2040 SL Cl I | 16.17 | 21.50 | 6.41 | -2.21 | 9.23 | 20.51 | +71.61% |
| BlackRock +/. | -1.05 | -4.04 | -0.21 | 0.29 | -0.28 | -1.06 | |
| +/- Cumulative | | -5.09 | -5.30 | -5.01 | -5.29 | -6.35 | -6.35 |
| Vanguard Target Retire 2040 Trust 1 | 15.69 | 24.47 | 7.29 | -1.44 | 8.80 | 20.82 | +75.63% |
| BlackRock +/. | -0.57 | -7.01 | -1.09 | -0.48 | 0.15 | -1.37 | |
| +/- Cumulative | | -7.58 | -8.67 | -9.15 | -9.00 | -10.37 | -10.37% |
| T. Rowe Price Ret Hybrid 2040 Tr-T1 | 16.62 | 25.15 | 6.50 | -0.57 | 9.17 | 21.49 | +78.36% |
| BlackRock +/. | -1.50 | -7.69 | -0.30 | -1.35 | -0.22 | -2.04 | |
| +/- Cumulative | | -9.19 | -9.49 | -10.84 | -11.06 | -13.10 | -13.10% |
| Voya Target Solution 2040 Trust | 16.02 | 22.93 | 6.81 | -0.57 | 7.53 | 20.01 | +72.73% |
| BlackRock +/. | -0.90 | -5.47 | -0.61 | -1.35 | 1.42 | -0.56 | |
| +/- Cumulative | | -6.37 | -6.98 | -8.33 | -6.91 | -7.47 | -7.47% |
| Callan Glidepath 2040 Fund Z | 17.62 | 27.71 | 6.22 | -1.49 | 10.71 | 19.18 | +79.95% |
| BlackRock +/. | -2.50 | -10.25 | -0.02 | -0.43 | -1.76 | 0.27 | |
| +/- Cumulative | | -12.75 | -12.77 | -13.20 | -14.96 | -14.69 | -14.69% |

116.     The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2040 Fund. Indeed, according to Morningstar, as of February 24, 2018, the 66% funds in the 2040 target date category outperformed the BlackRock LifePath Index 2040 Fund for the past five years.

117.     The table below shows the hypothetical growth of $100 million invested in the BlackRock 2040 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2040 Fund with a better option resulted in significantly lower returns for Plan participants.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2040 F Fund | 83.29 | 10.63 | $183 million |
| Callan Glidepath 2040 Fund Z | 107.38 | 12.93 | $207 million |
| T. Rowe Price Ret Hybrid 2040 Tr-T1 | 104.99 | 12.71 | $205 million |
| Vanguard Target Retire 2040 Trust 1 | 100.14 | 12.26 | $200 million |
| Voya Target | 95.47 | 11.82 | $195 million |

| Solution 2040 Trust | | | |
|---|---|---|---|

118.     Home Depot breached its fiduciary duties by failing to remove the BlackRock 2040 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

**j. 2045 Target Date:**

119.     The charts below illustrate the performance of the BlackRock LifePath 2045 Index Fund from 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2045 Index Fund underperformed most of its comparators between 2008 and 2011 on a cumulative basis. Moreover, the Fund's performance only worsened during the class period. BlackRock underperformed every single option on a cumulative basis between 2012 and 2017. Moreover, each of the options except Vanguard outperformed the BlackRock LifePath 2045 Fund for five out of the six years between 2012 and 2017. Vanguard outperformed BlackRock for four out of those six years.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2045 F Fund | -38.24 | 31.90 | 15.92 | -3.26 | +6.32% |
| | | | | | |
| State St Target Ret 2045 SL Cl I | -33.55 | 27.45 | 16.30 | 0.22 | +10.42% |
| BlackRock +/- | -4.69 | 4.45 | -0.38 | -3.48 | |
| +/- Cumulative | | -0.24 | -0.62 | -4.10 | -4.10% |
| | | | | | |
| Vanguard Target Retire 2045 Trust 1 | -34.68 | 28.55 | 15.31 | -2.46 | +6.72% |
| BlackRock +/- | -3.56 | 3.35 | 0.61 | -0.80 | |
| +/- Cumulative | | -0.21 | 0.40 | -0.40 | -0.40% |
| | | | | | Cumulative (2009-2011) |
| T. Rowe Price Ret Hybrid 2045 Tr-T1 | | 35.16 | 15.30 | -3.03 | +47.43% |
| BlackRock +/- | | -3.26 | 0.62 | -0.23 | |
| +/- Cumulative | | | -2.64 | -2.87 | -2.87% |
| | | | | | Incepted 2010 |
| Voya Target Solution 2045 Trust | | | | | |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |
| | | | | | |
| Callan Glidepath 2045 Fund Z | | | | | Incepted 2012 |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| BlackRock LifePath Index 2045 F Fund | 15.92 | 18.97 | 6.30 | -2.07 | 9.25 | 20.54 | +68.91% |
| State St Target Ret 2045 SL Cl I | 16.18 | 21.62 | 6.38 | -2.33 | 9.59 | 21.39 | +72.83% |
| BlackRock +/- | -0.26 | -2.65 | -0.08 | 0.26 | -0.34 | -0.85 | |
| +/- Cumulative | | -2.91 | -2.99 | -2.73 | -3.07 | -3.92 | -3.92% |
| Vanguard Target Retire 2045 Trust 1 | 15.74 | 24.44 | 7.29 | -1.47 | 8.94 | 21.52 | +76.46% |
| BlackRock +/- | 0.18 | -5.47 | -0.99 | -0.60 | 0.31 | -0.98 | |
| +/- Cumulative | | -5.29 | -6.28 | -6.88 | -6.57 | -7.55 | -7.55% |
| T. Rowe Price Ret Hybrid 2045 Tr-T1 | 16.62 | 25.06 | 6.57 | -0.63 | 9.24 | 21.96 | +78.82% |
| BlackRock +/- | -0.70 | -6.09 | -0.27 | -1.44 | 0.01 | -1.42 | |
| +/- Cumulative | | -6.79 | -7.06 | -8.50 | -8.49 | -9.91 | -9.91% |
| Voya Target Solution 2045 Trust | 15.99 | 23.80 | 6.99 | -0.41 | 7.34 | 20.76 | +74.47% |
| BlackRock +/- | -0.07 | -4.83 | -0.69 | -1.66 | 1.91 | -0.22 | |
| +/- Cumulative | | -4.90 | -5.59 | -7.25 | -5.34 | -5.56 | -5.56% |
| Callan Glidepath 2045 Fund Z | 17.61 | 27.69 | 6.21 | -1.47 | 10.75 | 19.43 | +80.22% |
| BlackRock +/- | -1.69 | -8.72 | 0.09 | -0.60 | -1.50 | 1.11 | |
| +/- Cumulative | | -10.41 | -10.32 | -10.92 | -12.42 | -11.31 | -11.31% |

120.    The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2045 Fund.

121.    According to Morningstar, as of February 24, 2018, 62% of funds in the 2045 target date category outperformed the BlackRock LifePath Index 2045 Fund for the past five years. Moreover, 56% of funds outperformed BlackRock for the past year.

122.    The table below shows the hypothetical growth of $100 million invested in the BlackRock 2045 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2045 Fund with a better option resulted in significantly lower returns for Plan participants.

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2045 F Fund | 89.06 | 11.20 | $189 million |
| Callan Glidepath 2045 Fund Z | 107.88 | 12.97 | $208 million |
| T. Rowe Price Ret Hybrid 2045 Tr-T1 | 105.77 | 12.78 | $206 million |
| Vanguard Target Retire 2045 Trust 1 | 101.56 | 12.39 | $202 million |
| Voya Target Solution 2045 Trust | 98.33 | 12.09 | $198 million |

123.     Home Depot breached its fiduciary duties by failing to remove the BlackRock 2045 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

### k. 2050 Target Date:

124.     The charts below illustrate the performance of the BlackRock LifePath 2050 Index Fund from 2008-2011 and 2012-2017. As the charts illustrate, the BlackRock LifePath 2050 Index Fund under-preformed most of its comparators between 2008 and 2011 on a cumulative basis.  The Fund's performance only worsened during the class period. BlackRock underperformed every single option on a cumulative basis between 2012 and 2017. Further, the T. Rowe Price option outperformed the BlackRock LifePath 2050 Fund five out of six years between 2012 and 2017. Similarly, the Callan, State Street, Vanguard, and Voya options

outperformed the BlackRock LifePath 2050 Fund four out of the six years between

2012 and 2017.

| Fund | 2008 | 2009 | 2010 | 2011 | Cumulative (2008-2011) |
|---|---|---|---|---|---|
| BlackRock LifePath Index 2050 F Fund | -39.49 | 33.90 | 16.46 | -3.91 | 6.96% |
| | | | | | |
| State St Target Ret 2050 SL Cl I | -33.54 | 27.53 | 16.31 | 0.24 | 10.54% |
| BlackRock +/- | -5.95 | 6.37 | 0.15 | -4.15 | |
| +/- Cumulative | | 0.42 | 0.57 | -3.58 | -3.58% |
| | | | | | |
| Vanguard Target Retire 2050 Trust 1 | -34.40 | 28.67 | 15.27 | -2.44 | 7.10% |
| BlackRock +/- | -5.09 | 5.23 | 1.19 | -1.47 | |
| +/- Cumulative | | 0.14 | 1.33 | -0.14 | -0.14% |
| | | | | | Cumulative (2009-2011) |
| T. Rowe Price Ret Hybrid 2050 Tr-T1 | | 35.10 | 15.39 | -3.03 | 47.46% |
| BlackRock +/- | | -1.20 | 1.07 | -0.88 | |
| +/- Cumulative | | | -0.13 | -1.01 | -1.01% |
| | | | | | |
| | | | | | Incepted 2010 |
| Voya Target Solution 2050 Trust | | | | | |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |
| | | | | | |
| Callan Glidepath 2050 Fund Z | | | | | Incepted 2012 |
| BlackRock +/- | | | | | |
| +/- Cumulative | | | | | |

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|------|------|------|------|------|------|------|------------------------|
| BlackRock LifePath Index 2050 F Fund | 16.63 | 20.33 | 6.35 | -2.11 | 9.32 | 20.92 | +71.44% |
| State St Target Ret 2050 SL Cl I | 16.18 | 21.62 | 6.38 | -2.34 | 9.58 | 21.39 | +72.81% |
| BlackRock +/- | 0.45 | -1.29 | -0.03 | 0.23 | -0.26 | -0.47 | |
| +/- Cumulative | | -0.84 | -0.87 | -0.64 | -0.90 | -1.37 | -1.37% |
| Vanguard Target Retire 2050 Trust 1 | 15.76 | 24.52 | 7.29 | -1.53 | 8.96 | 21.48 | +76.48% |
| BlackRock +/- | 0.87 | -4.19 | -0.94 | -0.58 | 0.36 | -0.56 | |
| +/- Cumulative | | -3.32 | -4.26 | -4.84 | -4.48 | -5.04 | -5.04% |
| T. Rowe Price Ret Hybrid 2050 Tr-T1 | 16.68 | 25.08 | 6.48 | -0.63 | 9.29 | 21.91 | +78.81% |
| BlackRock +/- | -0.05 | -4.75 | -0.13 | -1.48 | 0.03 | -0.99 | |
| +/- Cumulative | | -4.80 | -4.93 | -6.41 | -6.38 | -7.37 | -7.37% |
| Voya Target Solution 2050 Trust | 16.02 | 23.77 | 6.98 | -0.42 | 7.42 | 21.01 | +74.78% |
| BlackRock +/- | 0.61 | -3.44 | -0.63 | -1.69 | 1.90 | -0.09 | |
| +/- Cumulative | | -2.83 | -3.46 | -5.15 | -3.25 | -3.34 | -3.34% |
| Callan Glidepath 2050 Fund Z | 17.66 | 27.71 | 6.23 | -1.49 | 10.77 | 19.43 | +80.31% |
| BlackRock +/- | -1.03 | -7.38 | 0.12 | -0.62 | -1.45 | 1.49 | |
| +/- Cumulative | | -8.41 | -8.29 | -8.91 | -10.36 | -8.87 | -8.87% |

125.     The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them. On the contrary, Home Depot would have had to scour the market to find an offering as poor-performing as the BlackRock LifePath Index 2050 Fund. Indeed, according to Morningstar, as of February 24, 2018, 59% of funds in the 2050 target date category outperformed the BlackRock LifePath Index 2050 Fund for the past five years.

126.     The table below shows the hypothetical growth of $100 million invested in the BlackRock 2050 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2050 Fund with a better option resulted in significantly lower returns for Plan participants

| Fund Name | Compounded Performance | Annualized Performance | Growth of $100 Million |
|---|---|---|---|
| BlackRock LifePath Index 2050 Fund | 93.13 | 11.59 | $193 million |
| Callan Glidepath 2050 Fund Z | 108.02 | 12.98 | $208 million |
| T. Rowe Price Ret Hybrid 2050 Tr-T1 | 105.76 | 12.78 | $206 million |
| Vanguard Target Retire 2050 Trust 1 | 101.59 | 12.39 | $202 million |
| Voya Target | 98.86 | 12.14 | $199 million |

| Solution 2050 Trust | | | |
|---|---|---|---|

127.     Home Depot breached its fiduciary duties by failing to remove the BlackRock 2050 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

### l.  2055 Target Date:

128.     The charts below illustrate the performance of the BlackRock LifePath 2055 Index Fund from 2011-2017. As the charts illustrates, BlackRock underperformed every single comparator on a cumulative basis except the State Street option. Moreover, all the options (except State Street) outperformed the BlackRock LifePath 2050 Fund for four out of the six years between 2011 and 2017.

| Fund | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2011-2017) |
|---|---|---|---|---|---|---|---|---|
| BlackRock LifePath Index 2055 F Fund | -4.32 | 17.35 | 21.45 | 6.38 | -2.10 | 9.30 | 20.90 | +68.96% |
| | | | | | | | | |
| State St Target Ret 2055 SL Cl I | | 16.17 | 21.60 | 6.37 | -2.34 | 9.58 | 21.39 | +72.77% |
| BlackRock +/- | | 1.18 | -0.15 | 0.01 | 0.24 | -0.28 | -0.49 | |
| +/- Cumulative | | | 1.03 | 1.04 | 1.28 | 1.00 | 0.51 | +0.51% |
| | | | | | | | | |
| Vanguard Target Retire | -2.23 | 15.69 | 24.41 | 7.27 | -1.63 | 8.98 | 21.48 | +73.97% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2055 Trust 1 | | | | | | | | |
| BlackRock +/- | -2.09 | 1.66 | -2.96 | -0.89 | -0.47 | 0.32 | -0.58 | |
| +/- Cumulative | | -0.43 | -3.39 | -4.28 | -4.75 | -4.43 | -5.01 | -5.01% |
| | | | | | | | | |
| T. Rowe Price Ret Hybrid 2055 Tr-T1 | -3.04 | 16.54 | 25.10 | 6.51 | -0.63 | 9.26 | 21.94 | +75.68% |
| BlackRock +/- | -1.28 | 0.81 | -3.65 | -0.13 | -1.47 | 0.04 | -1.04 | |
| +/- Cumulative | | -0.47 | -4.12 | -4.25 | -5.72 | -5.68 | -6.72 | -6.72% |
| | | | | | | | | |
| Voya Target Solution 2055 Trust | -4.84 | 16.07 | 23.82 | 7.16 | -0.40 | 7.26 | 21.12 | +70.19% |
| BlackRock +/- | 0.52 | 1.28 | -2.37 | -0.78 | -1.70 | 2.04 | -0.22 | |
| +/- Cumulative | | 1.80 | -0.57 | -1.35 | -3.05 | -1.01 | -1.23 | -1.23% |
| | | | | | | | | |
| Callan Glidepath 2055 Fund Z | | 17.69 | 27.77 | 6.23 | -1.50 | 10.79 | 19.44 | +80.42% |
| BlackRock +/- | | -0.34 | -6.32 | 0.15 | -0.60 | -1.49 | 1.46 | |
| +/- Cumulative | | | -6.66 | -6.51 | -7.11 | -8.60 | -7.14 | -7.14% |

129.    The options listed in the table above are managed by well-known investment advisers, are readily available, and easily accessible to all investors. Home Depot would not have had to scour the market to find them.

130.    According to Morningstar, as of February 24, 2018, 52% of funds in the 2050 target date category outperformed the BlackRock LifePath Index 2055 Fund for the past five years.

74

131.     The table below shows the hypothetical growth of $100 million invested in the BlackRock 2055 Fund and each of its comparators from January 1, 2012 to December 31, 2017, rounded to the nearest million. As the table makes clear, Home Depot's failure to replace the BlackRock LifePath Index 2055 Fund

| Fund Name | Compounded Performance | Annualized Performance | Growth of $20 Million |
|---|---|---|---|
| BlackRock LifePath Index 2055 F Fund | 96.13 | 11.88 | $39 million |
| Callan Glidepath 2055 Fund Z | 108.20 | 13.00 | $42 million |
| T. Rowe Price Ret Hybrid 2055 Tr-T1 | 105.58 | 12.76 | $41 million |
| Vanguard Target Retire 2055 Trust 1 | 101.10 | 12.35 | $40 million |
| Voya Target Solution 2055 Trust | 99.28 | 12.18 | $40 million |

with a better option resulted in significantly lower returns for Plan participants.

132.     Home Depot breached its fiduciary duties by failing to remove the BlackRock 2055 Fund from the Plan and caused Plan participants to lose millions of dollars in retirement savings.

## VI.   CLASS ACTION ALLEGATIONS

133.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).

134.     In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Specifically, Plaintiffs seek to certify, and to be appointed as representatives of, the following class and subclasses:

- **Class**: All participants and beneficiaries of the Plan from April 12, 2012 through the date of judgment, excluding the Defendants.

- **Investment Advisory Subclass:** All participants and beneficiaries of the Plan, excluding the Defendants, for whom Financial Engines or AFA performed investment advisory services at any time from April 12, 2012 through the date of judgment.

135.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. The Class includes over 300,000 members and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to this Class because the Home Depot Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of Home Depot Defendants' breach of duty.

c. Among the questions of law and fact common to the Investment Advisory Subclass are:

1. whether each of the Home Depot Defendants was a fiduciary and owed a fiduciary duty to Plaintiff Pizarro and members of the Investment Advisory Subclass;

2. whether the Home Depot Defendants breached their fiduciary duties to Plaintiff Pizarro and members of the Investment Advisory Subclass by failing to act prudently and solely in the interests of

the ERISA Plan's participants and beneficiaries with respect to the selection, monitoring and oversight of Financial Engines and AFA;

3. whether any or all of the Home Depot Defendants engaged in prohibited transactions under ERISA;

4. whether the ERISA Plan or Plan participants have suffered losses from any fiduciary's breaches and, if so, what is the proper measure of damages; and

5. whether Financial Engines and AFA are parties in interest who knowingly participated in ERISA violations.

d. Plaintiffs' claims are typical of the claims of the Class because each Plaintiff was a participant during the time period at issue in this action and all participants in the Plan were harmed by Defendants' misconduct.

e. Plaintiffs are adequate representatives of the Class because they were participants in the Plan during the Class period, have no interest that is in conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

f. Plaintiff Pizarro is an adequate representative of the Investment Advisory Subclass because he entered into an investment advisory relationship with Financial Engines during the Class period, has no interest that is in conflict with the Subclass, is committed to the vigorous representation of the Subclass, and has engaged experienced and competent attorneys to represent the Subclass.

136.     Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, prohibited transactions, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

137.     Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds that apply

generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Plaintiffs seek reformation of the Plan to make it a more viable retirement investment option, which will benefit them and other Plan participants.

138.     Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3). A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

139.     Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4) – including but not limited to Defendants' liability to the class for their allegedly disloyal and imprudent conduct.

140.     Plaintiffs' counsel, Sanford Heisler Sharp, LLP and Blumenthal Nordrehaug Bhowmik DeBlouw LLP, will fairly and adequately represent the

interests of the Class and Investment Advisory Subclass and is best able to represent the interests of the Class and Investment Advisory Subclass under Rule 23(g).

## VII.  CAUSES OF ACTION

### COUNT I

**Breach of Duties of Loyalty and Prudence by Mismanaging the Investment Options Selected for and Retained by the Plan During the Class Period**

**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All Home Depot Defendants)**

141.     The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

142.     Home Depot used the Plan as a strategic and financial benefit to recruit and retain workers.

143.     In joining Home Depot and subsequently enrolling in the Plan, Home Depot employees trusted and relied on Home Depot's resources and expertise to construct and maintain a state-of-the-art 401(k) plan.

144.     At all relevant times during the Class Period, the Home Depot Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by

exercising authority and control with respect to the management of the Plan and its assets.

145.     29 U.S.C. § 1104(a)(1) requires plan fiduciaries to act "solely in the interest" of plan participants and beneficiaries.

  a. Subsection (A) of this section requires that the fiduciary act for the "exclusive purpose" of providing benefits to plan participants and defraying reasonable expenses of plan administration. 29 U.S.C. § 1104(a)(1)(A).

  b. Subsection (B) adds the duty of prudence, requiring a plan fiduciary to act with the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

146.     The scope of the fiduciary duties and responsibilities of the Home Depot Defendants includes managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, defraying reasonable expenses, and administering the Plan with the care, skill, diligence, and prudence required by ERISA. Home Depot Defendants are responsible for selecting prudent

investment options, evaluating and monitoring the Plan's investments on an on-going basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

147.   Home Depot Defendants selected and retained the Plan's investment products, which included separately managed portfolios, collective investment trusts, and mutual funds. The process for selecting and retaining the Plan's investment products and services is and has been based on a faulty investment process that was tainted by Home Depot Defendants' disloyalty and imprudence.

148.   The faulty process resulted in a plan loaded with relatively poor investment products, which substantially impaired the Plan's use, its value, and its investment performance for all the Plan's participants, past and present. This process included the retention of the following investment products despite sustained poor relative investment performance:

149.   TS&W Small Cap Value:   Home Depot Defendants selected and retained TS&W to manage the Small Cap Value portfolio despite its long-term historical underperformance relative to other investment advisers and relative to its benchmark.

150.   Stephens Small Cap Growth:   Home Depot Defendants selected and retained Stephens to manage the Small Cap Growth portfolio despite abysmal

83

underperformance relative to other investment advisers and relative to its benchmark.

151.   <u>JP Morgan Stable Value</u>:   Home Depot Defendants selected and retained this collective investment trust despite JP Morgan's legal and regulatory trouble and the trust's historical underperformance relative to its benchmark and other stable value collective investment trusts.

152.   <u>BlackRock Target Date Portfolios</u>: Home Depot Defendants selected and retained eight target date collective investment trusts despite their historical underperformance relative to other target date collective investment trusts.

153.   Home Depot Defendants had an imprudent process for investigating, selecting and monitoring investments. By failing to adequately consider better-performing investment products and services for the Plan, Home Depot Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

154.   As a direct and proximate result of Home Depot Defendants' breaches of fiduciary duties, the Plan and each of its participants have suffered hundreds of millions of dollars of damages and lost-opportunity costs which continue to accrue

and for which Home Depot Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

155.    Each of the Home Depot Defendants is liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Home Depot Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

156.    Each Home Depot Defendant also participated in the breach of the other Home Depot Defendants, knowing that such acts were a breach, enabled the other Home Depot Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, and knew of the breach by the other Home Depot Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Home Depot Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT II

**Breach of Duties of Loyalty and Prudence by Selecting Financial Engines and AFA to Provide Investment Advisory Services to Plan Participants**

**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All Defendants)**

157.    The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

158.     Defendants failed to engage in a prudent and loyal process for selecting and retaining an investment advisor to construct asset allocation portfolios for participants.

159.     Home Depot selected Financial Engines and AFA to construct investment portfolios for participants even though cheaper asset allocation funds (e.g. target date funds or global portfolios) provide substantially similar services for a reduced price. Home Depot knew or should have known that selection of Financial Engines and AFA would result in participants paying duplicative and much higher investment advisory fees, thereby resulting in added expense and significant underperformance for participants. Home Depot's selection and retention of Financial Engines and AFA caused the participants to pay significantly excessive investment advisory fees and suffer poor relative performance.

160.     Moreover, upon information and belief, Home Depot Defendants failed to consider, or to solicit competitive bids from, other "robo advisers" who offered comparable asset allocation services for a cheaper price.

161.     In failing to adequately consider cheaper investment advisory services for participants, Home Depot Defendants failed to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

162.     Home Depot Defendants furthermore failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan. Therefore, Home Depot Defendants breached their fiduciary duty of loyalty under 29 U.S.C. §1104(a)(1)(A).

163.     Home Depot Defendants allowed Financial Engines and AFA to receive asset-based investment advisory fees but failed to monitor those payments and the services provided to ensure that Financial Engines and AFA received only reasonable compensation for the investment advisory services provided to the participants. As the amount of assets grew, the investment advisory fees paid to Financial Engines and AFA grew, even though the services provided by Financial Engines and AFA remained the same. This caused the investment advisory compensation paid to Financial Engines and AFA to exceed a reasonable fee for the services provided.

164.     By failing to monitor the services provided by Financial Engines and AFA to ensure that the fees Financial Engines and AFA received were reasonable

relative to services provided, Home Depot Defendants' breached their duty of prudence.

165.    Furthermore, Home Depot Defendants failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan. Therefore, Home Depot Defendants breached their fiduciary duty of loyalty under 29 U.S.C. §1104(a)(1)(A).

166.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages which continue to accrue and for which Home Depot Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

167.    Each Home Depot Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

168.    Financial Engines and AFA are parties in interest who knowingly participated in the Home Depot Defendants' breaches of fiduciary duty. Accordingly, under 29 U.S.C. § 1132(a)(3), Financial Engines and AFA are liable

to Plan participants for equitable relief, such as restitution or disgorgement, to redress the above-described violations of ERISA.

169.     Each Defendant participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## COUNT III

### Prohibited Transactions

### (29 U.S.C. § 1106)
### (Against All Defendants)

170.     Plaintiffs restate and incorporate the allegations contained in the preceding paragraphs.

171.     Home Depot Defendant's hiring of Financial Engines and AFA, and the payment of fees to Financial Engines and AFA, constitute prohibited transaction under 29 U.S.C. § 1106.

172.     By causing the Plan to deliver Plan assets to Financial Engines and AFA, Defendants caused the Plan to engage in transactions that they knew or

should have known constituted exchanges of property between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(A).

173.    By causing the Plan to use Financial Engines and AFA to provide services to the Plan and its participants and by causing the Plan to pay Plan assets to Financial Engines and AFA, Defendants caused the Plan to engage in transactions they knew or should have known constituted the furnishing of services between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(C).

174.    By causing the Plan to deliver Plan assets to Financial Engines and AFA, Defendant's caused the Plan to engage in transactions that they knew or should have known constituted a transfer of Plan assets to a party in interest in violation of 29 U.S.C. § 1106(a)(1)(D).

175.    Financial Engines and AFA are parties in interest who knowingly participated in above-described prohibited transactions. Accordingly, under 29 U.S.C. § 1132(a)(3), Financial Engines and AFA are liable to Plan participants for equitable relief, such as restitution or disgorgement, to redress the above-described violations of ERISA.

176.    As a direct result of these prohibited transactions, Defendants caused the Plan to suffer loses in the reduction of Plan assets and the lost investment returns on those assets.

## COUNT IV

### Failure to Monitor

### (Against All Home Depot Defendants)

177.     Plaintiffs restate and incorporate the allegations contained in the preceding paragraphs.

178.     The Home Depot Defendants had a duty to monitor the performance of each individual to whom they delegated any fiduciary responsibilities.

179.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

180.     To the extent any of Home Depot Defendant's fiduciary responsibilities were delegated to another fiduciary, Home Depot Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

181.     Home Depot Defendants breached their fiduciary monitoring duties by, among other things:

> a.  failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan

91

suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

b.  failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c.  failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that fees were competitive, including: a process to identify and determine the amount of any revenue sharing payments and kickbacks between plan service providers; a process to avoid paying unreasonable fees to Financial Engines and AFA for advice; a process to periodically obtain competitive bids to determine the market rate for the services provided to the Plan; a process to determine whether maintaining particular investment strategies was in participants' interest; and a process to ensure the fiduciaries monitored the investment management fees and investment returns; and

d.  failing to remove appointees whose performance was inadequate in that they continued to allow improper and unreasonable investment advisory fees to be charged to Plan participants and imprudent

investment options to remain in the Plan, all to the detriment of Plan participants' retirement savings.

182.   Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a. failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

b. failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c. failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that fees were competitive, including: a process to identify and determine the amount of any revenue sharing payments and kickbacks between plan service providers; a process to avoid paying unreasonable fees to Financial Engines and AFA for advice; a process to periodically obtain competitive bids to determine the market rate for the services provided to the Plan; a process to determine whether maintaining

particular investment strategies was in participants' interest; and a process to ensure the fiduciaries monitored the investment management fees and investment returns; and

d. failing to remove appointees whose performance was inadequate in that they continued to allow improper and unreasonable administrative expenses to be charged to Plan participants and imprudent investment options to remain in the Plan, all to the detriment of Plan participants' retirement savings.

183. As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Home Depot and the other delegating fiduciaries discharged their fiduciary monitoring duties prudently and loyally, the Plan would not have suffered these losses.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

i) find and adjudge that the Home Depot Defendants have breached their fiduciary duties, as described above;

ii) find and adjudge that the Home Depot Defendants engaged in transactions prohibited by ERISA, as described above;

iii) find and adjudge that Financial Engines and AFA are parties in interest who knowingly participated in Home Depot Defendants' ERISA violations;

iv) find and adjudge that Home Depot Defendants are personally liable to make good to the Plan in excess of $140 million in losses to the Plan resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

v) find and adjudge that Defendants are liable to the Plan for appropriate equitable relief, including but not limited to restitution and disgorgement;

vi) determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

vii) order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under §1109(a);

viii) remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

ix) surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

x)  reform the Plan to include only prudent investments;

xi)  order the Plan to obtain bids for investment advisors and to pay only

reasonable investment advisory fees;

xii)  certify the Class and Subclass, appoint each of the Plaintiffs as a class

representative, appoint Plaintiff Pizarro as the Investment Advisory

Subclass representative, and appoint Sanford Heisler Sharp LLP and

Blumenthal Nordrehaug Bhowmik De Blouw LLP as Class Counsel;

xiii)  award to the Plaintiffs and the Class their attorney's fees and costs

under 29 U.S.C. §1132(g)(1) and the common fund doctrine; order the

payment of interest to the extent it is allowed by law; and

xiv)  grant other equitable or remedial relief as the Court deems appropriate

Dated:  April 12, 2018                    /s/ Paul Jay Pontrelli

Paul Jay Pontrelli (GA Bar # 583513)
**BYRNE, DAVIS AND HICKS, PC**
3565 Piedmont Road
Suite 380, Four Piedmont Center
Atlanta, GA 30305
Telephone: (404) 266-7284
Facsimile: (404)266-7272
pjp1460@gmail.com

*Charles Field
*Edward Chapin
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*Kevin H. Sharp
*Leigh Anne St. Charles
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
lstcharles@sanfordheisler.com

*David Tracey
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dtracey@sanfordheisler.com

*Norman Blumenthal
*Aparajit Bhowmik
*Nicholas De Blouw
*Molly DeSario
*Jeffrey Herman
**BLUMENTHAL NORDREHAUG
BHOWMIK DE BLOUW LLP**
2255 Calle Clara
San Diego, CA 92037
Phone: (858) 551-1223
Facsimile: (858) 551-1232
norm@bamlawca.com
aj@bamlawca.com
nick@bamlawca.com
molly@bamlawca.com
jeff@bamlawca.com

*pro hac vice forthcoming*

*Attorneys for Plaintiffs and
the Proposed Class*