IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

| | | |
|---|---|---|
| JAIME H. PIZARRO and CRAIG SMITH, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | CIVIL ACTION FILE No. 1:18-cv-01566-LMM |
| THE HOME DEPOT, INC.; THE ADMINISTRATIVE COMMITTEE OF THE HOME DEPOT FUTUREBUILDER 401(K) PLAN; THE INVESTMENT COMMITTEE OF THE HOME DEPOT FUTUREBUILDER 401(K) PLAN; FINANCIAL ENGINES ADVISORS, LLC; ALIGHT FINANCIAL ADVISORS, LLC; AND DOES 1-30, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

## BRIEF IN SUPPORT OF THE HOME DEPOT DEFENDANTS' MOTION TO DISMISS

David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler

Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Telephone: (404) 572-4600
Fax: (404) 572-5139

**Attorneys for the Home Depot
Defendants**

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

PERTINENT ALLEGATIONS IN THE COMPLAINT ...............................3

MOTION TO DISMISS STANDARD IN ERISA CASES LIKE THIS ONE.........6

ARGUMENT ......................................................................................................8

I.   PLAINTIFFS' CONCLUSORY DISLOYALTY ALLEGATIONS
     FAIL TO STATE A CLAIM (COUNTS I AND II). ...................................8

II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR IMPRUDENT
     MONITORING OF PLAN INVESTMENTS (COUNT I). .........................10

     A.  Plaintiffs' After-The-Fact Performance Allegations Are Insufficient
         to State a Prudence Claim. .......................................................11

     B.  Plaintiffs' Performance Allegations Are Based on Unreliable
         Post-Hoc Fund Comparisons. ...................................................12

     C.  Plaintiffs Lack Standing to Sue Over Six of the BlackRock LifePath
         Funds. .......................................................................................15

III. PLAINTIFFS FAIL TO STATE A CLAIM THAT THE HOME DEPOT
     DEFENDANTS IMPRUDENTLY MONITORED FINANCIAL
     ENGINES (COUNT II). ...........................................................................15

     A.  Plaintiffs' Identification of Cheaper Service Providers Does Not
         State a Valid Prudence Claim. ..................................................16

     B.  Plaintiffs' Other Allegations Fail to Allege Plausibly that Financial
         Engines' Fees Were Imprudent. ...............................................17

IV.  PLAINTIFFS FAIL TO STATE A CLAIM THAT THE SELECTION OF
     FINANCIAL ENGINES WAS A PROHIBITED TRANSACTION
     (COUNT III). ...........................................................................................20

     A.  Plaintiffs' Prohibited Transaction Claim Arising Out of The Home Depot
         Defendants' Selection of Financial Engines Is Time-Barred Because It
         Occurred More than Six Years Ago. .........................................21

     B.  Plaintiffs Have Not Alleged a Plausible Claim Under 29 U.S.C.
         § 1106(a)(1)(A), (C), or (D) in Any Event. ...............................22

V.   THE DERIVATIVE MONITORING CLAIM FAILS (COUNT IV). .........24

VI.  PLAINTIFFS' JURY DEMAND SHOULD BE STRUCK..........................24

CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstong v. LaSalle Bank, N.A.*,
    446 F. 3d 728 (7th Cir. 2006) ........................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................6, 7

*Barchock v. CVS Health Corp.*,
    886 F.3d 43 (1st Cir. 2018) ......................................................................2, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................6

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Solutions, Inc.*,
    658 F. App'x 966 (11th Cir. 2016) ................................................................22

*Cassell v. Vanderbilt Univ.*,
    285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ........................................8, 9, 10, 18

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990) ....................................................................................24

*Cunningham v. Cornell Univ.*,
    No. 16-cv-6525 (PKC), 2017 WL 4358769 (S.D.N.Y. Sept. 29,
    2017) ........................................................................................................23

*Danza v. Fidelity Mgmt. Trust Co.*,
    533 F. App'x 120 (3d Cir. 2013) ...................................................................23

*David v. Alphin*,
    817 F. Supp. 2d 764 (W.D.N.C. 2011) ...........................................................15

*DeFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007) ........................................................................12

*Divane v. Northwestern Univ.*,
   No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) ...........................17

*Ehlen Floor Covering, Inc. v. Lamb*,
   No. 2:07-CV-666-FTM-29, 2012 WL 1698351 (M.D. Fla. May 14,
   2012) ...........................................................................................................25

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014)..................................................................................6, 7

*Fite v. Merrill Lynch & Co*,
   No. 8:10-cv-008 (DOC), 2010 WL 11556808 (C.D. Cal. Nov. 2,
   2010) ...........................................................................................................23

*Fuller v. SunTrust Banks, Inc.*,
   No. 1:11-CV-784-ODE, 2012 WL 1432306 (N.D. Ga. Mar. 20,
   2012) .....................................................................................................15, 22

*In re GlaxoSmithKline ERISA Litig.*,
   494 F. App'x 172 (2d Cir. 2012) .....................................................................14

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002).......................................................................................25

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ..........................................................................17

*In re ING Groep, N.V. ERISA Litig.*,
   749 F. Supp. 2d 1338 (N.D. Ga. 2010).............................................................15

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) .....................................................................14, 20

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
   513 F. App'x 78 (2d Cir. 2013) .......................................................................14

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ..............................................................9, 17, 19

*New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*,
635 F. Supp. 2d 1351 (N.D. Ga. 2009)...............................................................7

*Patrico v. Voya Fin., Inc.*,
No. 16-cv-7070 (LGS), 2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018) .............................................................................................23

*Patterson v. Capital Grp. Cos.*,
No. CV 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018) ...................16, 17

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
712 F.3d 705 (2d Cir. 2013) .................................................11, 12, 13

*Pereira v. Farace*,
413 F.3d 330 (2d Cir. 2005) ..............................................................25

*Pledger v. Reliance Trust Co.*,
240 F. Supp. 3d 1314 (N.D. Ga. 2017).....................................7, 12, 14

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) ..............................................................19

*Sacerdote v. N.Y. Univ.*,
No. 16-CV-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) .......................................................19, 22, 23, 24

*Sellers v. Anthem Life Ins. Co.*,
No. 1:17-cv-00087-TLS-SLC, 2018 WL 2727895 (D.D.C. June 6, 2018) ...........................................................23, 24

*Smith v. Delta Air Lines, Inc.*,
422 F. Supp. 2d 1310 (N.D. Ga. 2006)...............................................24

*Stargel v. SunTrust Banks, Inc.*,
968 F. Supp. 2d 1215 (N.D. Ga. 2013), *vacated on other grounds*,
791 F.3d 1309 (11th Cir. 2015) ...........................................15, 21, 22

*Sweda v. Univ. of Pa.*,
No. CV 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017) ................ *passim*

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013) ..................................................................... 17, 19

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) .............................................................................. 16

*UFCW Local 56 Health & Welfare Fund v. Brandywine Operating*
*P'ship, L.P.*,
No. 05-cv-2435 (JEI), 2005 WL 3555390 (D.N.J. Oct. 28, 2005) ..................... 23

*White v. Chevron Corp.*,
No. 16-cv-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ................ *passim*

*White v. Chevron Corp.*,
No. 16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31,
2017) ............................................................................................................ 12, 20

**Statutes**

29 U.S.C. § 1002 ..................................................................................................... 20

29 U.S.C. § 1104 .......................................................................................... 2, 7, 8, 9

29 U.S.C. § 1106 ............................................................................................. *passim*

29 U.S.C. § 1113 ................................................................................................ 13, 21

**Other Authorities**

*Vanguard Research Note: Quantifying the impact of chasing fund*
*performance* (Jul. 2014), *available at*
https://pressroom.vanguard.com/nonindexed/
Quantifying_the_impact_of_chasing_fund_performance_July_
2014.pdf .......................................................................................................... 14

## **INTRODUCTION**

Plaintiffs in this putative ERISA[1] class action are participants in The Home Depot, Inc.'s 401(k) plan who allege that they would have been better off if the plan's fiduciaries had offered different investment options and picked a different investment advisory service provider. Plaintiffs seek to hold the plan's fiduciaries—"the Home Depot Defendants"[2]—liable based solely on post-hoc identification of other investment options and investment advisory services that cost less and performed better during the putative class period. But Plaintiffs' second-guessing of the Home Depot Defendants' decisions with the benefit of hindsight does not state a plausible claim under ERISA.

Plaintiffs allege no facts that plausibly support their claims that the Home Depot Defendants' decision to offer eleven specific funds and optional investment advisory services offered by Defendants Financial Engines Advisors, LLC ("Financial Engines") (through June 30, 2017) and Alight Financial Advisors, LLC ("AFA") (after July 1, 2017) constituted breaches of ERISA's duties of loyalty or prudence. Plaintiffs' first misstep is to conflate the two distinctly defined duties—a tactic that has been roundly rejected. As for ERISA's duty of loyalty,

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

[2] The Home Depot Defendants are defined in the Complaint as The Home Depot, Inc., the Administrative Committee, and the Investment Committee and their members. Compl. ¶ 1.

Plaintiffs allege no facts that plausibly indicate that the Home Depot Defendants put their own or another party's interests above the interests of the Plan by offering participants certain funds or access to optional investment advisory services. And their prudence claims fare no better. ERISA's duty of prudence requires that plan fiduciaries act as a prudent person would "under the circumstances then prevailing."[3] This requirement "is one of <u>conduct</u>, and not a test of the result of performance of the investment."[4] As established case law dictates, Plaintiffs' hindsight critique is not sufficient to allege that the Home Depot Defendants actually made imprudent investment decisions in real time. Likewise, while Plaintiffs allege that Financial Engines and AFA charged higher fees for investment advisory services than competitors, simply identifying service providers that charge less does not relieve Plaintiffs from pleading concrete factual allegations that support a plausible claim of imprudence.

Finally, Plaintiffs' prohibited transaction claims are time-barred with respect to the selection and retention of Financial Engines because Plaintiffs concede that Financial Engines was incumbent when the six-year class period opened. Thus the "transaction" of hiring Financial Engines occurred outside ERISA's six-year

---

[3] 29 U.S.C. § 1104(a)(1)(B).
[4] *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44–45 (1st Cir. 2018) (emphasis in original) (internal quotation marks and citation omitted).

statute of repose.  And the prohibited transaction claim fails in all respects because adopting Plaintiffs' theory would lead to the absurd result (rejected by courts) that *any* transaction between a plan and a service provider is prohibited under ERISA.

Plaintiffs' Complaint is long on criticisms about outcomes, but short on allegations about the Defendants' allegedly imprudent and disloyal process.  The Court should dismiss it for failure to state a claim.

## PERTINENT ALLEGATIONS IN THE COMPLAINT

The Home Depot, Inc. ("Home Depot") is the world's largest home improvement retailer.[5]   Home Depot sponsors for its employees a defined contribution plan, The Home Depot FutureBuilder ("the Plan").[6]  The Plan permits eligible employees to make contributions to individual accounts within the Plan on a tax-deferred basis, and the Home Depot Defendants make certain matching contributions, too.  Participants choose from a wide variety of investment options that allows them to tailor a savings approach to suit their individual needs. Plaintiffs Craig Smith and Jaime H. Pizarro allegedly participated in the Plan

---

[5] Compl. ¶ 8.
[6] Compl. ¶¶ 1, 8.

during the putative class period of April 12, 2012 to the present.[7]  Plaintiffs allege that the Home Depot Defendants served as fiduciaries to the Plan.[8]

Defendant Financial Engines provided optional investment advisory services to Plan participants from the start of the relevant period until June 30, 2017.[9] Financial Engines, which Plaintiffs derisively label as a "robo adviser" in their Complaint, uses mathematical algorithms to assist participants with selecting appropriate asset allocations for their age, investment goals, and risk tolerance.[10] Financial Engines only provided such services to Plan participants who, like Plaintiff Pizarro, opted into the Plan's "Professional Management Account Program."[11]   Starting July 1, 2017, AFA provided advisory services to Plan participants and used Financial Engines' services through a sub-advisory agreement.[12]

Plaintiffs allege that the Home Depot Defendants breached their fiduciary duties of prudence and loyalty in two ways.  First, certain of the Home Depot Defendants allowed the Plan to offer eleven investment options that Plaintiffs allege were imprudent:  (1) the TS&W Small Cap Value Fund; (2) the Stephens

---

[7] Compl. ¶¶ 6–7, 134.
[8] Compl. ¶¶ 8–10.
[9] Compl. ¶ 13.
[10] Compl. ¶¶ 28–29.
[11] Compl. ¶¶ 6, 27.
[12] Compl. ¶¶ 13–14.

Small Cap Growth Fund; (3) the J.P. Morgan Stable Value Fund; and (4) a suite of eight BlackRock LifePath portfolios (a/k/a "target date" funds).[13]  Plaintiffs allege these funds performed poorly during the relevant period when compared to benchmarks and selected comparator funds.[14]  Plaintiff Smith alleges that he invested in the TS&W, Stephens, and J.P. Morgan Stable Value funds, but only two of the eight BlackRock funds.[15]  Plaintiff Pizarro does not allege he invested in any of these funds, although (unlike Smith) he alleges he used Financial Engines' services.[16]

Second, Plaintiffs allege that the Home Depot Defendants allowed Financial Engines to charge excessive fees to Plan participants for its advisory services. Plaintiffs allege that Financial Engines currently charges an investment advisory fee of up to 0.50%, depending on the amount of a participant's assets under management.[17]  Plaintiffs allege that these fees were excessive for the services Financial Engines provided and in light of other fees charged by managers of the challenged investment options.[18]

---

[13] Compl. ¶¶ 57, 88.
[14] Compl. ¶¶ 58–132.
[15] Compl. ¶ 7.
[16] Compl. ¶ 6.
[17] Compl. ¶ 34.
[18] Compl. ¶¶ 34–47.

Count I of Plaintiffs' Complaint brings prudence and loyalty claims for the Home Depot Defendants' alleged failure to remove the challenged funds during the putative class period.  Count II brings prudence and loyalty claims for the Home Depot Defendants' alleged failure to remove Financial Engines' optional services from the Plan during the same time frame.  Count III alleges that the Plan's dealings with Financial Engines and AFA were prohibited transactions under ERISA § 406, 29 U.S.C. § 1106.  Count IV alleges the Home Depot Defendants failed to monitor other (unidentified) individuals to whom they may have delegated any fiduciary responsibility.

## MOTION TO DISMISS STANDARD IN ERISA CASES LIKE THIS ONE

The Supreme Court has recently explained that Rule 12 is an "important mechanism for weeding out meritless [ERISA] claims" at the pleading stage.[19]  To survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20]  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21]  "Threadbare recitals

---

[19] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).
[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[22]

ERISA imposes duties of loyalty and prudence on fiduciaries who manage 401(k) plans.  To state a plausible claim for breach of the fiduciary duty of prudence, a plaintiff must allege concrete facts establishing that the fiduciary failed to act "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use."[23]  This inquiry "will necessarily be context specific,"[24] and follows "the generally accepted principle that a fiduciary's actions are not to be judged 'from the vantage point of hindsight.'"[25]  Courts "use an objective standard" to evaluate the prudence of investment decisions, "focusing on whether the fiduciary employed appropriate methods to reach" that decision.[26]

To state a claim for breach of ERISA's duty of loyalty, a plaintiff must allege facts demonstrating that the fiduciary failed to discharge her duties "solely

---

[22] *Iqbal*, 556 U.S. at 678.

[23] 29 U.S.C. § 1104(a)(1)(B).

[24] *Dudenhoeffer*, 134 S. Ct. at 2471.

[25] *Pledger v. Reliance Trust Co.*, 240 F. Supp. 3d 1314, 1331 (N.D. Ga. 2017) (quoting *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2008)).

[26] *New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1372 (N.D. Ga. 2009).

in the interest of the participants and beneficiaries" of the plan.[27]   To state a plausible prohibited transaction claim under ERISA, a plaintiff must allege facts establishing that a fiduciary caused the plan to engage in a transaction that the fiduciary knew or should have known was prohibited under 29 U.S.C. § 1106.[28]

## **ARGUMENT**

Plaintiffs' claims would create standards of fiduciary liability that go far beyond anything Congress contemplated by enacting ERISA.   Indeed, under Plaintiffs' results-oriented approach, any fiduciary who failed to offer the best-performing, lowest-cost investments and services over a given period would face liability.   Nothing in ERISA creates such a standard, and Plaintiffs' claims accordingly fail as a matter of law.

### I.     PLAINTIFFS' CONCLUSORY DISLOYALTY ALLEGATIONS FAIL TO STATE A CLAIM (COUNTS I AND II).

Plaintiffs allege no facts to support their claim that the Home Depot Defendants breached their fiduciary duty of loyalty, either in managing Plan investments (Count I) or selecting Financial Engines (Count II).   To state a loyalty claim, the Complaint must allege specific facts that demonstrate plan fiduciaries

---

[27] 29 U.S.C. § 1104(a)(1).
[28] *See Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018).

did not act "solely in the interest of the participants and beneficiaries."[29]   As courts have consistently held, allegations that defendants acted imprudently, standing alone, are not sufficient to state a distinct claim for breach of the duty of loyalty.[30]

Plaintiffs make no effort to support their disloyalty claims with specific allegations that the Home Depot Defendants failed to act in the Plan's interests, and instead rely on their (insufficient) prudence allegations.   Plaintiffs do not allege that the challenged investment options were affiliated with Home Depot, or that their selection and retention otherwise benefited the Home Depot Defendants.[31]   Plaintiffs similarly plead only conclusory allegations with respect to the Home Depot Defendants' dealings with Financial Engines.[32]   But simply alleging that conduct may have benefitted third parties (as any service agreement between a Plan and a third party inherently does) does not state a claim for

---

[29] 29 U.S.C. § 1104(a)(1).

[30] *See White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) ("*Chevron I*") ("Because the complaint does not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and includes no separate allegations to support the duty of loyalty claim, the court finds the allegations in the complaint insufficient to sustain the disloyalty claim.") (noting that ERISA differentiates between the two duties by defining them in separate subparts); *see also Cassell*, 285 F. Supp. 3d at 1062.

[31] *See Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) ("Plaintiffs do not contend that the funds that Exelon selected had any control over it, or it over them; there is no reason to think that Exelon chose these funds to enrich itself at participants' expense.").

[32] Compl. ¶¶ 162, 165.

disloyalty without allegations "supporting an inference that Defendants *acted for the purpose* of providing benefits to any third party or to themselves."[33]  This attempt by Plaintiffs to "piggyback" loyalty claims on their prudence allegations fails as a matter of law.[34]

## II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR IMPRUDENT MONITORING OF PLAN INVESTMENTS (COUNT I).

Plaintiffs' allegations that the Home Depot Defendants should have replaced certain Plan investment options with better performing funds fail to state a prudence claim.  ERISA's duty of prudence asks whether fiduciaries' *process* for selecting and monitoring plan investments was reasonable.  As courts have repeatedly found, allegations concerning investment performance—like those in Plaintiffs' Complaint—cannot support a prudence claim.  The Complaint's after-the-fact, selective fund comparisons do not raise any plausible inference of an imprudent investment monitoring process.

---

[33] *Casell*, 285 F. Supp. 3d at 1062 (emphasis in original); *see also Chevron I*, 2016 WL 4502808, at *5.

[34] *Cassell*, 285 F. Supp. 3d at 1062.

## A.    Plaintiffs' After-The-Fact Performance Allegations Are Insufficient to State a Prudence Claim.

ERISA's duty of prudence requires fiduciaries to conduct a reasonable investigation into plan investments.[35]  But "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation."[36]  Plaintiffs accordingly "cannot rely, after the fact, on the magnitude of the decrease" in an investment to state a prudence claim, "[n]or is it necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions."[37]  Simply put, "there is no cause of action in ERISA for 'underperforming funds.'"[38]

Rather, to state a claim of imprudent monitoring of plan investments, "ERISA requires a plaintiff to plead some other objective indicia of imprudence."[39] For example, another court in this District held that a complaint stated a prudence claim in connection with a poor investment where it further alleged that the investment "benefitted one or more corporate or fiduciary interests over those of

---

[35] *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

[36] *Chevron I*, 2016 WL 4502808, at *17.

[37] *St. Vincent*, 712 F.3d at 718 (internal quotation marks and citation omitted); *see also Chevron I*, 2016 WL 4502808, at *17 ("The mere fact that the fund's price dropped is not sufficient to state a claim for breach of fiduciary duty.").

[38] *Sweda v. Univ. of Pa.*, No. CV 16-4329, 2017 WL 4179752, at *10 (E.D. Pa. Sept. 21, 2017).

[39] *Chevron I*, 2016 WL 4502808, at *17.

the plan" (in that case, because the funds were proprietary), thus plausibly suggesting a conflicted decision-making process.[40]   By contrast, the court in *Chevron* dismissed a prudence claim where plaintiffs based the claim "solely on the fact that the Fund[s] did not perform well."[41]

Plaintiffs have pleaded no objective indicia of imprudence here.   The Complaint contains no allegations that these investments benefitted the Home Depot Defendants at the expense of Plan participants.   And Plaintiffs' Complaint is completely bereft of any allegations about flaws in the Home Depot Defendants' process for reviewing these investments.

**B.     Plaintiffs' Performance Allegations Are Based on Unreliable Post-Hoc Fund Comparisons.**

Plaintiffs' performance allegations exemplify why courts require more to state a claim for imprudent monitoring of plan investments.   Fiduciary actions are judged "based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."[42]   Yet Plaintiffs offer nothing but 20/20 hindsight.   They compare each fund's performance during

---

[40] *Pledger*, 240 F. Supp. 3d at 1326.

[41] *See White v. Chevron Corp.*,  No. 16-CV-0793-PJH, 2017 WL 2352137, at *21 (N.D. Cal. May 31, 2017) ("*Chevron II*").

[42] *St. Vincent*, 712 F.3d at 716 (citation omitted); *see also DeFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) ("[W]hether a fiduciary's actions are prudent cannot be measured in hindsight.").

the putative class period against benchmarks and comparator funds (which comprise only a tiny fraction of the overall mutual fund market), selected by Plaintiffs.[43]  Plaintiffs then allege that a prudent fiduciary would have replaced the challenged fund with one of their cherry-picked comparator funds that had better performance (naturally, since Plaintiffs selected them as comparators after the results were in).[44]  ERISA, however, "requires prudence, not prescience."[45] There is obviously no requirement that fiduciaries only choose winning investments—a standard even the most successful investor would not meet.

Moreover, nine of the eleven funds were already in the Plan at the start of the putative class period—meaning that any prudence claims arising from the *selection* of those funds are barred by ERISA's six-year statute of repose.[46]  For most of the funds, then, Plaintiffs' legal theory must then be limited to arguing that the Home Depot Defendants were imprudent not to immediately dump these funds

---

[43] *See* Compl. ¶¶ 58–132.

[44] *See, e.g.*, Compl. ¶ 67.

[45] *St. Vincent*, 712 F.3d at 716 (quoting *DeBruyne v. Equitable Life Assur. Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990)); *see also Sweda*, 2017 WL 4179752, at *10 ("Sophisticated investors and rank amateurs both look to buy low and sell high and wonder why they did not have clear enough vision to see the path for doing so early enough to make their fortunes.  Chagrin does not inexorably become a cause of action.").

[46] Only the Stephens Small Cap Growth Fund and the BlackRock LifePath 2055 Portfolio were added to the Plan during the putative class period.  *See* Compl. ¶ 73; 29 U.S.C. § 1113.

13

once alternatives exhibited better returns.  But this type of "performance chasing" is exactly what financial advisors recommend *against*.[47]  As courts recognize, it is not imprudent—and, indeed, is often advisable—for fiduciaries "to select conservative funds with long-term growth potential and to stay with those mutual funds even during years of lower performance."[48]

In short, courts have expressed profound skepticism about the type of after-the-fact, selective comparisons on which Plaintiffs solely base their prudence claim.[49]  While such allegations may establish a *possibility* that a fiduciary's decision-making process was flawed, they do not move such a claim "across the line from conceivable to plausible."[50]  Accordingly, Count I fails to state a claim for breach of the duty of prudence and should be dismissed as a matter of law.

---

[47] *See, e.g.*, *Vanguard Research Note: Quantifying the impact of chasing fund performance* (Jul. 2014), *available at* https://pressroom.vanguard.com/nonindexed/ Quantifying_the_impact_of_chasing_fund_performance_July_2014.pdf.

[48] *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006); *see also In re GlaxoSmithKline ERISA Litig.*, 494 F. App'x 172, 175 (2d Cir. 2012) (assessing suitability of stock "as a long-term retirement investment for employees").

[49] *See Pledger*, 240 F. Supp. 3d at 1334 (rejecting challenge to "the mere selection of one fund over another, with no allegation (other than hindsight financial comparison) of why the selection was improper"); *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 79–80 (2d Cir. 2013) (rejecting imprudence claim based on comparison of fund's performance against eight other funds selected by plaintiffs).

[50] *Sweda*, 2017 WL 4179752, at *10 (quoting *Twombly*, 550 U.S. at 570).

### C.    Plaintiffs Lack Standing to Sue Over Six of the BlackRock LifePath Funds.

Finally, Plaintiffs lack standing under Rule 12(b)(1) to pursue claims related to the performance of all BlackRock LifePath funds except the 2020 and 2025 LifePath Portfolios, which are the only BlackRock funds in which either Plaintiff alleges he invested.[51]  Under Rule 12(b)(1), Plaintiffs must establish standing to pursue their claims, including the constitutional requirement of injury-in-fact.[52] The Complaint, however, does not explain how the performance of these six BlackRock Funds, in which neither Plaintiff invested, caused either Plaintiff concrete injury.  As decisions from this District and elsewhere have found, this deprives Plaintiffs of standing to pursue claims related to those funds.[53]

### III.   PLAINTIFFS FAIL TO STATE A CLAIM THAT THE HOME DEPOT DEFENDANTS IMPRUDENTLY MONITORED FINANCIAL ENGINES (COUNT II).

Plaintiffs' claims that the Home Depot Defendants breached their duty of prudence by permitting Financial Engines to offer investment advisory services to

---

[51] *See* Compl. ¶ 7.

[52] *See, e.g.*, *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010).

[53] *See Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2012 WL 1432306, at *8 (N.D. Ga. Mar. 20, 2012); *Stargel v. SunTrust Banks, Inc.*, 968 F. Supp. 2d 1215, 1233 (N.D. Ga. 2013), *vacated on other grounds*, 791 F.3d 1309 (11th Cir. 2015); *David v. Alphin*, 817 F. Supp. 2d 764, 781–82 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013).

15

Plan participants is insufficient on its face to state a prudence claim, and is not supported by any concrete factual allegations that give rise to a plausible claim.

### A.   Plaintiffs' Identification of Cheaper Service Providers Does Not State a Valid Prudence Claim.

Plaintiffs' identification of cheaper "alternatives" to Financial Engines does not state a plausible claim that the Home Depot Defendants breached their duty of prudence.  Plaintiffs allege that the Home Depot Defendants allowed Financial Engines "to charge unreasonable investment advisory fees," and that Financial Engines' fees were high "compared to similar investment products."[54]  Absent concrete allegations showing an abuse of discretion in the fiduciary's decision-making process, however, courts are loathe to second-guess conclusions about whether a particular service provider or investment option is in the best interest of a plan and its participants.[55]  Courts recognize that ERISA "fiduciaries are required to consider factors beyond price" when making fiduciary decisions, and they must balance competing factors when choosing investments and service providers.[56]

---

[54] Compl. ¶¶ 34, 37.

[55] *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014); *Armstong v. LaSalle Bank, N.A.*, 446 F. 3d 728, 732 (7th Cir. 2006).

[56] *Patterson v. Capital Grp. Cos.*, No. CV 17-4399, 2018 WL 748104, at *4–5 (C.D. Cal. Jan. 23, 2018); *see also Chevron I*, 2016 WL 4502808, at *10 ("Fiduciaries have latitude to value investment features other than price (and indeed, are required to do so).").

As such, "courts have routinely held that a fiduciary's failure to offer the cheapest investment option is not enough by itself to state a claim for a breach of fiduciary duty."[57]  And fiduciaries have no obligation "to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."[58]  These deferential principles should apply with even greater force where, as here, the fees at issue were only incurred by those participants who chose to use Financial Engines' services.[59]  Plaintiffs' bare allegation that cheaper "alternatives" to Financial Engines were available is insufficient as a matter of law.

### B. Plaintiffs' Other Allegations Fail to Allege Plausibly that Financial Engines' Fees Were Imprudent.

Plaintiffs fail to plead any other facts regarding the Home Depot's retention of Financial Engines that could support a prudence claim.  As discussed above, a prudence claim must plausibly allege that the *process* that led to the challenged

---

[57] *Patterson*, 2018 WL 748104, at *4–5; *see also Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds by* 135 S. Ct. 1823 (2015); *Loomis*, 658 F.3d at 670; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).

[58] *Hecker*, 556 F.3d at 586.

[59] *See Divane v. Northwestern Univ.*, No. 16 C 8157, 2018 WL 2388118, at *6 (N.D. Ill. May 25, 2018) (dismissing breach of fiduciary duty claims regarding excessive recordkeeping fees associated with a proprietary fund in part because "no plan participant was required to invest in the [product, t]hus, any plan participant could avoid what plaintiffs consider to be the problems with those products (excessive record-keeping fees and underperformance) simply by choosing other options").

17

outcome was flawed.[60]   Plaintiffs' allegations do not plausibly suggest that the Plan's offering of Financial Engines was the result of such a flawed process, either.

First, Plaintiffs' limited direct allegations about the Home Depot Defendants' monitoring of Financial Engines fail to allege any actual imprudent conduct.   The allegation that the Home Depot Defendants failed "to survey Plaintiff Pizarro to determine whether" Financial Engines was "in his best interest" imposes a duty made of whole cloth, and ignores that Financial Engines was an optional service that Pizarro was free to stop using if he was unsatisfied.[61] Likewise, Plaintiffs' allegation that the Home Depot Defendants did not engage in competitive bidding proves nothing.[62]   No court has held that competitive bidding is required for a prudent selection or monitoring of plan investment options or services.[63]   Decisions that have discussed competitive bidding have involved plan *administrative* services, such as recordkeeping, which are more price-sensitive than investment advisory services, and impose mandatory fees.[64]

Second, Plaintiffs' allegations about Financial Engines' fees fail to demonstrate an imprudent monitoring process.   Courts consistently reject the types

---

[60] *See, e.g.*, *Barchock*, 886 F.3d at 44–45.

[61] Compl. ¶ 48.

[62] *See* Compl. ¶ 160.

[63] *Chevron I*, 2016 WL 4502808, at *14 ("[N]othing in ERISA compels periodic competitive bidding.").

[64] *See, e.g.*, *id.* at *15; *Cassell*, 285 F. Supp. 3d at 1064.

of apples-to-oranges comparisons that Plaintiffs try to draw between Financial Engines and other allegedly "similar investments products," such as target date funds.[65]  Courts have also rejected Plaintiffs' argument that an asset-based, rather than a participant-based, fee is imprudent *per se*.[66]  Allegations that AFA's 2017 subcontract with Financial Engines "only exacerbated an already inefficient and costly fee structure," meanwhile, do not explain how this subcontract resulted in higher overall fees, and, if it did, that those higher fees were imprudent.[67]

Finally, Plaintiffs' allegations about the quality of Financial Engines' services do no better.  Plaintiffs' "reverse churning" claim—that Financial Engines made "only limited changes to [Pizarro's] portfolio"[68]—prove nothing.  It is equally plausible that more extensive changes would have been imprudent.  Most

---

[65] *See* Compl. ¶¶ 37–39; *Tibble I*, 729 F.3d at 1134 (rejecting that mutual funds were imprudent because collective trusts were available); *Loomis*, 658 F.3d at 671–72 (same).

[66] *See Chevron I*, 2016 WL 4502808, at \*14; *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011); *Loomis*, 658 F.3d at 672 ("Likewise it isn't clear to us why participants would view a capitation fee as a gain.  A flat-fee structure might be beneficial for participants with the largest balances, but, for younger employees and others with small investment balances, a capitation fee could work out to more, per dollar under management, than a fee between 0.03% and 0.96% of the account balance.").

[67] Compl. ¶ 47; *see Sacerdote v. N.Y. Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at \*11 (S.D.N.Y. Aug. 25, 2017) ("allegations regarding unnecessary and excessive fee layers" insufficient where "plaintiffs have not alleged that the inclusion of investment products with these fees led to higher fees overall").

[68] Compl. ¶ 66.

19

often, choosing and sticking with a particular asset allocation is *prudent*, not imprudent, investment behavior.[69]   Plaintiffs' allegations that Financial Engines' fees made it more difficult for participants to "break even" with fund benchmarks, meanwhile, is simply a recast version of the excessive fees argument.[70]   Moreover, the fact that an investment does not outperform a benchmark (essentially, beating the market) does not mean it is imprudent.[71]

## IV. PLAINTIFFS FAIL TO STATE A CLAIM THAT THE SELECTION OF FINANCIAL ENGINES WAS A PROHIBITED TRANSACTION (COUNT III).

Plaintiffs further allege that the Home Depot Defendants' contracting with Financial Engines constituted a prohibited transaction under ERISA § 406, 29 U.S.C. § 1106(a)(1).[72]   Section 1106(a)(1) prohibits particular transactions between plans and "parties in interest," which includes plan fiduciaries and persons "providing services to such plan."[73]   Among other things, section 1106(a)(1) prohibits the "sale or exchange, or leasing of any property," "furnishing of goods,

---

[69] *See, e.g.*, *Yager*, 444 F.3d at 926.

[70] Compl. ¶ 45.

[71] *See, e.g.*, *Chevron II*, 2017 WL 2352137, at *20 (denying prudence claim despite allegations that fund "significantly underperformed its benchmark").

[72] *See* Compl. ¶¶ 171–74.

[73] *See* 29 U.S.C. § 1106(a)(1); *id.* § 1002(14)(B).

services, or facilities," or "transfer . . . of any assets of the plan" between the plan and a party in interest.[74]

Plaintiffs have not stated a plausible prohibited transaction claim.  First, because any claim arising from the Home Depot Defendants' hiring of Financial Engines is barred by ERISA's six-year statute of repose.  And second, because Plaintiffs' theory—that the Plan's use of Financial Engines, by itself, was a prohibited transaction—has been rejected by multiple courts.

### A.    Plaintiffs' Prohibited Transaction Claim Arising Out of The Home Depot Defendants' Selection of Financial Engines Is Time-Barred Because It Occurred More than Six Years Ago.

As an initial matter, Plaintiffs are barred from bringing any prohibited transaction claim related to the Home Depot Defendants' selection of Financial Engines to offer optional financial advisory services to Plan participants.  As Plaintiffs acknowledge, this "hiring" took place before the putative class period opened, and thus outside ERISA's six-year statute of repose.[75]  ERISA § 406's focus is the challenged "transaction" (here, the "hiring").[76]  The fact that Financial Engines may have thereafter remained an investment advisor to the Plan during the

---

[74] 29 U.S.C. § 1106(a)(1)(A), (C), (D).

[75] *See* 29 U.S.C. § 1113; Compl. ¶¶ 13, 27 n.2 (alleging Financial Engines was an investment advisor to the Plan "from the beginning of the class period"), and ¶ 171.

[76] *See Stargel*, 968 F. Supp. 2d at 1234–35.

six-year putative class period does not make Plaintiffs' prohibited transaction claim timely.  Indeed, both the Eleventh Circuit and another court in this District have rejected that "continuing transaction" argument.[77]

### B.  Plaintiffs Have Not Alleged a Plausible Claim Under 29 U.S.C. § 1106(a)(1)(A), (C), or (D) in Any Event.

Plaintiffs' entire prohibited transaction claim fails on the merits.  Plaintiffs have pleaded no factual basis for their prohibited transaction claim other than that the Home Depot Defendants hired Financial Engines and AFA as service providers and allegedly paid them unreasonable fees.[78]  But Financial Engines and AFA only qualify as "parties in interest" under § 1106 *because* the Home Depot Defendants hired them and paid them fees.  In other words, Plaintiffs allege this transaction simultaneously caused Financial Engines and AFA to be "parties in interest" and is prohibited because Financial Engines and AFA are "parties in interest."

But this proves too much.  As other courts have noted, this reasoning is "circular"[79] and would lead to the absurd result of prohibiting *any* transaction

---

[77] *See Carolinas Elec. Workers Ret. Plan v. Zenith Am. Solutions, Inc.*, 658 F. App'x 966, 972 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1079 (2017); *Stargel*, 968 F. Supp. 2d at 1234–35; *Fuller*, 2012 WL 1432306, at *7.

[78] *See* Compl. ¶ 171.

[79] *Sacerdote*, 2017 WL 3701482, at *13 ("But it is circular to suggest that an entity which becomes a party in interest by providing services to the Plans has engaged in a prohibited transaction simply because the Plans have paid for those services.").

between a plan and a service provider.[80]   Accordingly, a series of recent court decisions have rejected that a single transaction can simultaneously create party-in-interest status and constitute a prohibited transaction with a party in interest.[81]

Rather, as those decisions have explained, section 1106(a)(1) "only prohibits such service relationships with persons who are 'parties in interest' by virtue of some *other* relationship" with the plan.[82]   That is, a plan service provider must have a relationship with the plan separate to the prohibited transaction.[83]   Section 1106(a)(1) "does not prohibit a plan from paying an unrelated party, dealt with at

---

[80] *See Sweda*, 2017 WL 4179752, at *11 ("If such an argument were true, then any time plan administrators contracted with another party to provide services to plan participants in exchange for money (which includes the basic elements of retirement plans, including making mutual funds available or recordkeeping services) it would qualify as a prohibited transaction.").

[81] *See Danza v. Fidelity Mgmt. Trust Co.*, 533 F. App'x 120, 125 (3d Cir. 2013); *Sellers v. Anthem Life Ins. Co.*, No. 1:17-cv-00087-TLS-SLC, 2018 WL 2727895, at *7 (D.D.C. June 6, 2018); *Patrico v. Voya Fin., Inc.*, No. 16-cv-7070 (LGS), 2018 WL 1319028, at *7 (S.D.N.Y. Mar. 13, 2018); *Sacerdote*, 2017 WL 3701482, at *13–14; *Sweda*, 2017 WL 4179752, at *11; *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017); *Fite v. Merrill Lynch & Co*, No. 8:10-cv-008 (DOC) (ANx), 2010 WL 11556808, at *7 (C.D. Cal. Nov. 2, 2010); *UFCW Local 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.*, No. 05-cv-2435 (JEI), 2005 WL 3555390, at *2–4 (D.N.J. Oct. 28, 2005).

[82] *Sellers*, 2018 WL 2727895, at *5 (emphasis added).

[83] *Id.* at *8–10.

23

arm's length, for services rendered."[84]   Plaintiffs have not pleaded any such separate relationship between the Plan and Financial Engines or AFA.[85]

## V.   THE DERIVATIVE MONITORING CLAIM FAILS (COUNT IV).

Count IV, which alleges that the Home Depot Defendants breached their duty of prudence by failing to monitor any (unidentified) individuals to whom they may have delegated fiduciary responsibilities, is derivative of the other Counts in the Complaint.  Because those Counts fail to state plausible claims for relief, Count IV also fails as a matter of law.[86]

## VI.   PLAINTIFFS' JURY DEMAND SHOULD BE STRUCK.

Finally, because Plaintiffs' claims seek equitable relief, the Court should strike Plaintiffs' demand for a jury trial.[87]   Plaintiffs' subsection 1132(a)(2) claims

---

[84] *Id.* at *5.

[85] There are other, related problems with Plaintiffs' prohibited transaction claim. Subsection 1106(a)(1)(A) requires allegations of a sale, exchange, or lease of property, which does not include payments to service providers.  *See Sacerdote*, 2017 WL 3701482, at *13 (subsection 1106(a)(1)(A) does not "equat[e] 'property' with compensation payments simply paid by plan investments to plan recordkeepers for workaday record keeping transactions").   Subsection 1106(a)(1)(D) requires allegations of "subjective intent to benefit a party in interest," which the Complaint lacks with regard to the Home Depot Defendants. *Sweda*, 2017 WL 4179752, at *11 (citation omitted).

[86] *See, e.g.*, *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1333 (N.D. Ga. 2006) ("Plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting prudently.").

[87] *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (Seventh Amendment preserves jury trial for legal, not equitable, claims).

are fiduciary duty claims, "historically within the jurisdiction of the equity courts,"[88] and they seek equitable relief, including that the Home Depot Defendants "make good to the Plan" the "losses to the Plan resulting from each breach of fiduciary duty," and "appropriate equitable relief, including but not limited to restitution and disgorgement."[89] Thus, they "sound[] in equity," and do not create a jury trial right.[90]  Plaintiffs' prohibited transaction claims sound under subsection 1132(a)(3), which allows only for equitable relief, and affords no right to a jury trial.[91]

## **CONCLUSION**

The Court should dismiss Plaintiffs' Complaint for failure to state a claim.

Dated: June 20, 2018

*/s/ David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com

---

[88] *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005).
[89] Compl. at page 95.
[90] *See Ehlen Floor Covering, Inc. v. Lamb*, No. 2:07-CV-666-FTM-29, 2012 WL 1698351, at *2 (M.D. Fla. May 14, 2012).
[91] *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002).

King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5139

**Attorneys for The Home Depot
Defendants**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 20th day of June 2018.


*/s/  David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

_____ )
)
**JAIME H. PIZARRO and CRAIG** )
**SMITH, on behalf of themselves** )
**and all others similarly situated,** )
)
    **Plaintiffs,** )
)
**vs.** )     **CIVIL ACTION FILE**
)     **No. 1:18-cv-01566-LMM**
**THE HOME DEPOT, INC.; THE** )
**ADMINISTRATIVE** )
**COMMITTEE OF THE HOME** )
**DEPOT FUTUREBUILDER** )
**401(K) PLAN; THE** )
**INVESTMENT COMMITTEE OF** )
**THE HOME DEPOT** )
**FUTUREBUILDER 401(K) PLAN;** )
**FINANCIAL ENGINES** )
**ADVISORS, LLC; ALIGHT** )
**FINANCIAL ADVISORS, LLC;** )
**AND DOES 1-30,** )
)
    **Defendants.** )
_____ )

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 20th, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to the following attorneys of record:

Aparajit Bhowmik
Jeffrey Herman
Molly Desario
Nicholas De Blouw
Norman Blumenthal
BLUMENTHAL NORDREHAUG
BHOWMIK DE BLOUW, LLP
2255 Calle Clara
San Diego, CA 92037
(858) 551-1232

*Attorneys for Plaintiff Jaime H.
Pizzaro*

Kevin Hunter Sharp
Leigh Anne St. Charles
SANFORD HEISLER SHARP, LLP
Suite 3100
611 Commerce Street
Nashville, TN 37203
(615) 434-7001
ksharp@sanfordheisler.com
lstcharles@sanfordheisler.com

*Attorney for Plaintiffs Jaime H.
Pizzaro and Craig Smith*

Paul Jay Pontrelli
BYRNE DAVIS & HICKS, P.C.
Building 4, Suite 380
Atlanta, GA 30305
(404) 266-7284
pjp1460@gmail.com

*Attorney for Plaintiffs Jaime H.
Pizzaro and Craig Smith*

Charles Henry Field
Edward Dewey Chapin
SANFORD HEISLER SHARP, LLP
Suite 1700
655 West Broadway
San Diego, CA 92101
(619) 577-4253
cfield@sanfordheisler.com
echapin2@sanfordheisler.com

*Attorneys for Plaintiffs Jaime H. Pizzaro
and Craig Smith*

David H. Tracey
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas
31st Floor
New York, NY 10019
(646) 402-5667
dtracey@sanfordheisler.com

*Attorney for Plaintiff Jaime H. Pizzaro
and Craig Smith*

Halsey G. Knapp, Jr.
KREVOLIN & HORST LLP
One Atlantic Center
1201 West Peachtree Street
Suite 3250
Atlanta, GA 30309
(404) 888-9700
hknapp@khlawfirm.com

2

*Attorney for Defendant Alight Financial Advisors, LLC*

Anthony L. Cochran
CHILIVIS, COCHRAN, LARKINS &
BEVER, LLP
3127 Maple Drive, NE
Atlanta, GA 30305
(404) 233-4171
alc@cclblaw.com

*Attorney for Financial Engines Advisors, LLC*

/s/ David Tetrick, Jr.
David Tetrick, Jr.
Georgia Bar No. 713653

3