## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| _____ | ) | |
| **JAIME H. PIZARRO, CRAIG** | ) | |
| **SMITH, JERRY MURPHY,** | ) | |
| **RANDALL IDEISHI, GLENDA** | ) | |
| **STONE, RACHELLE NORTH,** | ) | |
| **MARIE SILVER, and GARTH** | ) | |
| **TAYLOR on behalf of themselves** | ) | |
| **and all others similarly situated,** | ) | **CIVIL ACTION FILE** |
| | ) | **No. 1:18-cv-01566-LMM** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE HOME DEPOT, INC.; THE** | ) | |
| **ADMINISTRATIVE** | ) | |
| **COMMITTEE OF THE HOME** | ) | |
| **DEPOT FUTUREBUILDER** | ) | |
| **401(K) PLAN; THE** | ) | |
| **INVESTMENT COMMITTEE OF** | ) | |
| **THE HOME DEPOT** | ) | |
| **FUTUREBUILDER 401(K) PLAN;** | ) | |
| **FINANCIAL ENGINES** | ) | |
| **ADVISORS, LLC; ALIGHT** | ) | |
| **FINANCIAL ADVISORS, LLC;** | ) | |
| **AND DOES 1-30,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### BRIEF IN SUPPORT OF THE HOME DEPOT DEFENDANTS' MOTION TO DISMISS

David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
Benjamin B. Watson
Georgia Bar No. 632663
bwatson@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Telephone: (404) 572-4600
Fax: (404) 572-5139

**Attorneys for the Home Depot
Defendants**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

PERTINENT ALLEGATIONS IN THE AMENDED COMPLAINT ...................3

MOTION TO DISMISS STANDARD IN ERISA CASES LIKE THIS ONE.........6

ARGUMENT ............................................................................................8

I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR IMPRUDENT
     MONITORING OF PLAN INVESTMENT OPTIONS (COUNT I)...............8

   A.   Plaintiffs' Allegations of Poor Fund Performance, Without Any
        Accompanying Allegations of Actual Imprudent Conduct, Do Not
        State a Plausible Prudence Claim.................................................8

   B.   Regardless, Plaintiffs Fail to Allege Plausibly that Any Fund's
        Performance Required Its Removal from the Plan. .....................10

II.  PLAINTIFFS FAIL TO STATE A CLAIM THAT THE HOME
     DEPOT DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES
     BY SELECTING AND RETAINING FINANCIAL ENGINES AND
     AFA (COUNT II)........................................................................15

   A.   Any Claims Arising from the Home Depot Defendants' Selection of
        Financial Engines Are Time Barred..........................................15

   B.   Plaintiffs Fail to Allege Plausibly that the Selection and Retention of
        Financial Engines and AFA Was Imprudent. .............................16

   C.   Plaintiffs Fail to Allege Plausibly that the Selection and Retention of
        Financial Engines and AFA Was Disloyal...................................22

III. PLAINTIFFS' DERIVATIVE MONITORING CLAIM FAILS
     (COUNT VI). ...........................................................................24

IV.  THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND.............24

CONCLUSION .......................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. LaSalle Bank, N.A.*,
    446 F.3d 728 (7th Cir. 2006) ...........................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................6

*Barchock v. CVS Health Corp.*,
    886 F.3d 43 (1st Cir. 2018) ......................................................................2, 9, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................6

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990) ........................................................................................24

*DeFelice v. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007)  .........................................................................11

*Divane v. Northwestern Univ.*,
    No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) ...........................20

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ..................................................................................6, 7

*Hecker v. Deere & Co.*,
    556 F.3d 575 .................................................................................................17

*Henderson v. Emory Univ.*,
    No. 1:16-cv-2920, Dkt. No. 127 (N.D. Ga. July 10, 2017) ...............................25

*In re GlaxoSmithKline ERISA Litig.*,
    494 F. App'x 172 (2d Cir. 2012) ......................................................................14

*Jenkins v. Yager*,
    444 F.3d 916 (7th Cir. 2006) .....................................................................14, 21

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    513 F. App'x 78 (2d Cir. 2013) ........................................................................11

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ................................................................17, 18, 19

*Meiners v. Wells Fargo & Co.*,
    -- F.3d --, 2018 WL 3685525 (8th Cir. Aug. 3, 2018)....................11, 12, 14, 20

*New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension*
    *Fund v. Mercer Inv. Consultants*,
    635 F. Supp. 2d 1351 (N.D. Ga. 2009)................................................................7

*Patterson v. Capital Grp. Cos.*,
    No. CV 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018) .........................17

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret.*
    *Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
    712 F.3d 705 (2d Cir. 2013) ........................................................................9, 11

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005) ............................................................................24

*Pledger v. Reliance Trust Co.*,
    240 F. Supp. 3d 1314 (N.D. Ga. 2017).....................................................*passim*

*Pledger v. Reliance Trust Co.*,
    No. 1:15-cv-4444, Dkt. No. 100 (N.D. Ga. Nov. 7, 2017)................................25

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ............................................................................19

*Sec., U.S. Dept. of Labor v. Preston*,
    873 F.3d 877 (11th Cir. 2017) .........................................................................16

*Smith v. Delta Air Lines, Inc.*,
    422 F. Supp. 2d 1310 (N.D. Ga. 2006)............................................................24

*Sweda v. Univ. of Pa.*,
    No. CV 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 2, 2017) ....................9, 11

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds by* 135 S.
    Ct. 1823 (2015) ..........................................................................................17, 18

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ......................................................................16

*White v. Chevron Corp.*,
    No. 16-cv-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)................*passim*

*White v. Chevron Corp.*,
    No. 16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31,
    2017) ..........................................................................................................10

**Statutes**

29 U.S.C. § 1001 *et seq.*...............................................................................1

29 U.S.C. § 1104(a)(1)........................................................................1, 7, 22

29 U.S.C. § 1113 ............................................................................13, 15

**Other Authorities**

*Vanguard Research Note: Quantifying the impact of chasing fund
    performance* (Jul. 2014), *available at*
    https://pressroom.vanguard.com/nonindexed/Quantifying_the_imp
    act_of_chasing_fund_performance_July_2014.pdf. ..........................................14

Quarterly Schedule of Portfolio Holdings, PIMCO Funds (March 1,
    2018) *available at*
    https://www.sec.gov/Archives/edgar/data/810893/0001193125180
    67319/d501220dnq.htm. ............................................................................18

**INTRODUCTION**

Plaintiffs are participants in The Home Depot, Inc.'s 401(k) plan who allege that they would have been better off if the plan had offered different investment options and advisory services.  Plaintiffs seek to hold the Home Depot Defendants[1] liable for offering these supposedly subpar investment options and services.  But Plaintiffs base their claims solely on post-hoc identification of other investment options and advisory services that allegedly cost less and performed better during the putative class period.  As numerous courts have held, such hindsight allegations do not state a plausible breach of fiduciary duty claim under the Employee Retirement Income Security Act of 1974 ("ERISA").[2]

First, Plaintiffs allege no concrete facts that plausibly support their claim that the Home Depot Defendants' decision to offer the challenged investment options was imprudent.  ERISA's duty of prudence requires that plan fiduciaries act as a prudent person would "under the circumstances then prevailing."[3]  This requirement "is one of <u>conduct</u>, and not a test of the result of performance of the

---

[1] The Home Depot Defendants are defined in the Amended Complaint as The Home Depot, Inc., the Administrative Committee, and the Investment Committee and their members.  Amend. Compl. ("AC") ¶ 1.

[2] 29 U.S.C. § 1001 *et seq.*

[3] 29 U.S.C. § 1104(a)(1)(B).

investment."[4]  Thus, Plaintiffs' hindsight critique that better performing funds were available is insufficient to state a plausible claim that the Home Depot Defendants acted imprudently by offering the challenged funds.

Second, Plaintiffs have alleged no facts supporting their claim that the Home Depot Defendants breached their duties of prudence and loyalty by allowing plan participants to use the optional investment advisory services of Defendants Financial Engines Advisors, LLC ("Financial Engines") and Alight Financial Advisors, LLC ("AFA").  While Plaintiffs allege that Financial Engines and AFA charged higher fees than other investment advisors, simply identifying cheaper alternatives does not relieve Plaintiffs from pleading specific factual allegations that the Home Depot Defendants engaged in imprudent conduct with respect to Financial Engines and AFA.  Especially not where, as here, the alternatives identified by Plaintiffs are not actually comparable to Financial Engines and AFA.  And absent any plausible allegations that the Home Depot Defendants were motivated by a conflict of interest in selecting Financial Engines or AFA, Plaintiffs' tag-along loyalty claim fails, too.

The claims that Plaintiffs seek to bring against the Home Depot Defendants—heavy on criticisms about outcomes, but light on concrete factual

---

[4] *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44–45 (1st Cir. 2018) (emphasis in original) (internal quotation marks and citation omitted).

allegations about how Defendants behaved imprudently or disloyally—could be leveled against any 401(k) plan fiduciaries whose plan fails to provide the best investment results over a given period of time.  This is simply not enough to state a plausible claim under ERISA.  The Court should dismiss Plaintiffs' claims against the Home Depot Defendants as a matter of law.

## PERTINENT ALLEGATIONS IN THE AMENDED COMPLAINT

The Home Depot, Inc. ("Home Depot") is the world's largest home improvement retailer.[5]  Home Depot sponsors a defined contribution plan for its employees: The Home Depot FutureBuilder ("the Plan").[6]  The Plan permits eligible employees to make contributions to individual accounts within the Plan on a tax-advantaged basis, and the Home Depot Defendants make certain matching contributions, too.  Participants choose from a wide variety of investment options that allows them to build a savings approach to suit their individual needs.  Plaintiffs allegedly participated in the Plan during the putative class period of April 12, 2012 to the present.[7]  Plaintiffs allege that the Home Depot Defendants served as fiduciaries to the Plan.[8]

---

[5] AC ¶ 15.
[6] AC ¶¶ 1, 15.
[7] AC ¶¶ 7–14, 153.
[8] AC ¶¶ 15–17.

3

Defendant Financial Engines provided optional investment advisory services to Plan participants from the start of the relevant period until June 30, 2017.[9] Financial Engines, which Plaintiffs derisively label as a "robo adviser" in their Amended Complaint, uses mathematical algorithms to assist participants with selecting appropriate asset allocations for their age, investment goals, and risk tolerance.[10]   Financial Engines only provided such services to Plan participants who opted into the Plan's "Professional Management Account Program."[11] Starting July 1, 2017, AFA provided advisory services to Plan participants and used Financial Engines' services through a sub-advisory agreement.[12]

Plaintiffs allege that the Home Depot Defendants breached their fiduciary duties of prudence and loyalty in two ways.   First, Plaintiffs allege that it was imprudent for certain of the Home Depot Defendants to include in the Plan four investment options—(1) the TS&W Small Cap Value Fund; (2) the Stephens Small Cap Growth Fund; (3) the J.P. Morgan Stable Value Fund; and (4) a suite of eight BlackRock LifePath portfolios (a/k/a "target date" funds)—that Plaintiffs allege performed poorly during the relevant period when compared to Plaintiffs' selected

---

[9] AC ¶ 20.
[10] AC ¶¶ 36–37.
[11] AC ¶ 34.
[12] AC ¶¶ 20–21.

comparator funds.[13]   Second, Plaintiffs allege that the Home Depot Defendants allowed Financial Engines and AFA to charge excessive fees for their optional advisory services, as compared to the fees charged by other investment funds and investment advisors.[14]

The Amended Complaint contains six counts.  Just three allege claims against the Home Depot Defendants (Counts I, II, and VI).  Count I asserts a prudence claim against the Home Depot Defendants for failing to remove the challenged funds during the putative class period.  Count II levels both prudence and loyalty claims against the Home Depot Defendants for failing to discontinue Financial Engines' and AFA's optional investment advisory services.  Count VI alleges that the Home Depot Defendants breached their fiduciary duty to monitor any (unidentified) individuals to whom they may have delegated fiduciary obligations.[15]

---

[13] AC ¶¶ 74–151.

[14] AC ¶¶ 34–68.

[15] Counts III and IV bring loyalty and prudence claims against Financial Engines and AFA, respectively.  Count V alleges a prohibited transaction claim against Financial Engines and AFA.

## <u>MOTION TO DISMISS STANDARD IN ERISA CASES LIKE THIS ONE</u>

The Supreme Court has recently admonished that Rule 12 is an "important mechanism for weeding out meritless [ERISA] claims" at the pleading stage.[16]  To survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17]  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[18]  As the Supreme Court has explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[19]  If the facts pleaded are merely consistent with the misconduct alleged, however, the complaint "stops short of the line between possibility and plausibility" and should be dismissed.[20]

ERISA imposes duties of loyalty and prudence on fiduciaries who manage 401(k) plans.  To state a plausible claim for breach of the fiduciary duty of prudence, a plaintiff must allege concrete facts establishing that the fiduciary failed to act "with the care, skill, prudence, and diligence . . . that a prudent man acting in

---

[16] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).
[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[19] *Iqbal*, 555 U.S. at 678.
[20] *Id.* (citation omitted).

a like capacity and familiar with such matters would use."[21]   This inquiry "will necessarily be context specific,"[22] and follows "the generally accepted principle that a fiduciary's actions are not to be judged 'from the vantage point of hindsight.'"[23]   Courts "use an objective standard" to evaluate the prudence of investment decisions, "focusing on whether the fiduciary employed appropriate methods to reach" that decision.[24]

To state a claim for breach of ERISA's duty of loyalty, a plaintiff must allege facts demonstrating that the fiduciary failed to discharge her duties "solely in the interest of the participants and beneficiaries" of the plan.[25]   Allegations that fiduciaries acted imprudently, standing alone, are insufficient to state a claim of disloyalty.[26]

---

[21] 29 U.S.C. § 1104(a)(1)(B).

[22] *Dudenhoeffer*, 134 S. Ct. at 2471.

[23] *Pledger v. Reliance Trust Co.*, 240 F. Supp. 3d 1314, 1331 (N.D. Ga. 2017) (quoting *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2008)).

[24] *New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1372 (N.D. Ga. 2009).

[25] 29 U.S.C. § 1104(a)(1).

[26] *White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) ("*Chevron I*") ("Because the complaint does not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and includes no separate allegations to support the duty of loyalty claim, the court finds the allegations in the complaint insufficient to sustain the disloyalty claim.").

## ARGUMENT

Plaintiffs' claims against the Home Depot Defendants would create standards of fiduciary liability that go far beyond anything Congress contemplated in ERISA.  Indeed, under Plaintiffs' results-oriented approach, any fiduciary who fails to offer the best-performing, lowest-cost investments and services over a given period would face liability.  Nothing in ERISA creates such a standard, and Plaintiffs' claims should be dismissed as a matter of law.

## I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR IMPRUDENT MONITORING OF PLAN INVESTMENT OPTIONS (COUNT I).

It is well settled that ERISA plaintiffs must allege more than simple disappointment with a challenged fund's performance to state a breach of fiduciary duty claim.  Plaintiffs fail to do so here; the allegations supporting Count I compare the performance of four investment options during the putative class period to "comparator funds" cherry picked by Plaintiffs with the benefit of hindsight.  This is insufficient as a matter of law.

### A.   Plaintiffs' Allegations of Poor Fund Performance, Without Any Accompanying Allegations of Actual Imprudent Conduct, Do Not State a Plausible Prudence Claim.

ERISA's duty of prudence is not a guarantee of investment returns.  Rather, the duty—which "is one of <u>conduct</u>, and not a test of the results of performance of

an investment"[27]—requires that fiduciaries follow a reasonable process when monitoring investments in a 401(k) plan.[28]   As courts recognize, no investor can predict the future, and even the most rigorous investigations will sometimes result in the retention of investments that underperform expectations.   Consequently, "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation."[29] Plaintiffs "cannot rely, after the fact, on the magnitude of the decrease" in an investment to state a prudence claim, "[n]or is it necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions."[30]   As one court has aptly summarized, "there is no cause of action in ERISA for 'underperforming funds.'"[31]

Instead, to state a claim for imprudent monitoring of plan investments, "ERISA requires a plaintiff to plead some other objective indicia of imprudence."[32] For example, another court in this District held that plaintiffs stated a prudence

---

[27] *Barchock*, 886 F.3d at 44–45 (emphasis in original).

[28] *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

[29] *Chevron I*, 2016 WL 4502808, at *17.

[30] *St. Vincent*, 712 F.3d at 718 (internal quotation marks and citation omitted); *see also Chevron I*, 2016 WL 4502808, at *17 ("The mere fact that the fund's price dropped is not sufficient to state a claim for breach of fiduciary duty.").

[31] *Sweda v. Univ. of Pa.*, No. CV 16-4329, 2017 WL 4179752, at *10 (E.D. Pa. Sept. 21, 2017).

[32] *Chevron I*, 2016 WL 4502808, at *17.

claim in connection with a poor investment where they further alleged that the investment "benefitted one or more corporate or fiduciary interests over those of the plan" (in that case, because the investments were proprietary funds managed by the defendants), thus plausibly suggesting a conflicted decision-making process.[33] By contrast, the court in *Chevron* dismissed a prudence claim where, as here, plaintiffs based the claim "solely on the fact that the Fund[s] did not perform well."[34]

Plaintiffs have pleaded no "objective indicia" of imprudence here. The Amended Complaint is completely bereft of any allegations about flaws in the Home Depot Defendants' process for reviewing funds, other than the conclusory assertion that each fund "was included as the result of an imprudent process."[35]

### B.   Regardless, Plaintiffs Fail to Allege Plausibly that Any Fund's Performance Required Its Removal from the Plan.

Furthermore, Plaintiffs offer no plausible allegations that the challenged funds underperformed in any meaningful way. Fiduciary actions are judged "based upon information available to the fiduciary at the time of each investment

---

[33] *Pledger*, 240 F. Supp. 3d at 1326.

[34] *See White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *21 (N.D. Cal. May 31, 2017) ("*Chevron II*").

[35] AC ¶ 75.

decision and not from the vantage point of hindsight."[36]  The fact a different fund performed better during a certain time period does not mean that a fiduciary was imprudent to not offer that fund.[37]  ERISA "requires prudence, not prescience."[38]

Earlier this month, the Eighth Circuit emphasized this principle in *Meiners v. Wells Fargo & Co.*, where it affirmed the dismissal of an ERISA complaint alleging that a plan's suite of target-date funds was imprudent because an allegedly better, cheaper suite of funds existed in the market.[39]  As the Eighth Circuit explained, to allege plausibly that a fund's poor performance made it an imprudent investment, the Plaintiff needed to provide "a sound basis for comparison—a meaningful benchmark."[40]  Cherry-picked funds that performed better, even those

---

[36] *St. Vincent*, 712 F.3d at 716 (citation omitted); *see also DeFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) ("[W]hether a fiduciary's actions are prudent cannot be measured in hindsight.").

[37] *See Pledger*, 240 F. Supp. 3d at 1334 (rejecting challenge to "the mere selection of one fund over another, with no allegations (other than hindsight financial comparison) of why the selection was improper"); *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 79–80 (2d Cir. 2013) (rejecting imprudence claim based on comparison of fund's performance against eight other funds selected by plaintiffs); *Chevron I*, 2016 WL 4502808, at *8 ("Finally, plaintiffs' focus on the relative performance of stable value and money market funds over the last six years is an improper hindsight-based challenge to the Plan fiduciaries' investment decision-making."); *Sweda*, 2017 WL 4179752, at *10.

[38] *St. Vincent*, 712 F.3d at 716 (citation omitted).

[39] -- F.3d --, 2018 WL 3685525 (8th Cir. Aug. 3, 2018).

[40] *Id.* at *2.

11

with "*some* similarities" to the challenged fund, are not such a meaningful benchmark.[41]

The Amended Complaint lacks such "meaningful benchmarks." Plaintiffs' so-called "comparator funds" (which Plaintiffs selected after the results were in) provide no context about the overall market. The only thing these comparisons demonstrate is that, in a vacuum, Plaintiffs could have made more money by investing in the "comparator funds." As *Meiners* explains, this is meaningless for determining whether a fund was imprudent.

And the limited benchmark data that Plaintiffs do allege (for three of the four challenged funds[42]) only undermines the inference they seek to draw. Indeed, two of the three challenged funds outperformed their alleged benchmarks two years during the putative class period.[43] In other words, with respect to the only

---

[41] *Id.* at *3 (emphasis in original).

[42] *See* AC ¶ 82 (alleging Russell 2000 Value Index as benchmark for TS&W Small Cap Value Fund); *id.* ¶¶ 87, 92 (alleging Russell 2000 Growth Index as benchmark for Stephens Small Cap Growth Fund); *id.* ¶¶ 98, 101 (alleging Hueler Stable Value Pooled Index as "customary" benchmark for JPM Stable Value Fund). While Plaintiffs state the BlackRock LifePath Funds also had a benchmark, they give no data on its performance. *See id.* ¶ 107.

[43] *See* AC ¶ 82 (alleging TS&W Small Cap Value Fund overperformed Russell 2000 Value Index by 12.61% and 3.55% in 2013 and 2014); *id.* ¶ 92 (alleging Stephens Small Cap Growth Fund overperformed Russell 2000 Growth Index by 1.35% in 2013 and 0.08% in 2016). The JPM Stable Value Fund underperformed the Hueler Stable Value Pooled Index by negligible amounts. *See id.* ¶ 101 (alleging fund underperformed benchmark by, at most, 0.24%).

benchmarks that might qualify as "meaningful" under *Meiners*, the Amended Complaint fails to allege the challenged funds exhibited the type of consistent, significant underperformance that could even arguably raise a plausible inference of an imprudent process.

Worse still, the Amended Complaint is missing the actual performance data of the TS&W Small Cap and Stephens Small Cap Growth funds, instead citing to "composites" that supposedly offer only a "reasonable indication" of the funds' performance during the putative class period.[44] Likewise for the BlackRock LifePath Funds, Plaintiffs cite performance data from another fund that Plaintiffs admit has only "somewhat comparable performance" to the funds actually offered in the Plan.[45] Thus, Plaintiffs lack not only meaningful comparators for these funds, but also accurate data of the challenged funds' actual performance.

Furthermore, nine of the eleven challenged funds were already in the Plan at the start of the putative class period—meaning that any claims arising from the *selection* of those funds are barred by ERISA's six-year statute of repose.[46] For most of the funds, then, Plaintiffs are limited to arguing that the Home Depot

---

[44] *See* AC ¶¶ 78, 88.

[45] *See* AC ¶ 111.

[46] 29 U.S.C. § 1113.  Only the Stephens Small Cap Growth Fund and BlackRock LifePath 2055 Portfolio were added to the Plan during the putative class period. *See* AC ¶ 91.

Defendants were imprudent for retaining the funds, *i.e.*, not immediately dumping them once other funds exhibited better returns.  But this "performance chasing" is exactly what financial advisors recommend *against*.[47]  Courts recognize it is not imprudent—and indeed, is often advisable—for fiduciaries "to select conservative funds with long-term growth potential and to stay with those mutual funds even during years of lower performance."[48]

Finally, Plaintiffs' assertion that negative performance information was available to plan fiduciaries "in real time" applies in *every* case where an investment underperforms during a certain period of time.  The same goes for Plaintiffs' truism that the details of the Home Depot Defendants' decision-making process "is solely within the possession of Defendants prior to discovery."[49]  But neither is a free pass around Rule 12; courts still require ERISA plaintiffs to plead other "objective indicia" of imprudence to state a plausible claim.[50]

---

[47] *See, e.g.*, *Vanguard Research Note: Quantifying the impact of chasing fund performance* (Jul. 2014), *available at* https://pressroom.vanguard.com/nonindexed/ Quantifying_the_impact_of_chasing_fund_performance_July_2014.pdf.

[48] *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006); *see also In re GlaxoSmithKline ERISA Litig.*, 494 F. App'x 172, 175 (2d Cir. 2012) (assessing suitability of stock "as a long-term retirement investment for employees").

[49] AC ¶ 75 n.9.

[50] *See, e.g.*, *Meiners*, 2018 WL 3685525, at *3 ("Any other conclusion would exempt ERISA plaintiffs both from pleading benchmarks for the funds and from pleading internal processes about selecting funds.").

14

## II.   PLAINTIFFS FAIL TO STATE A CLAIM THAT THE HOME DEPOT DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES BY SELECTING AND RETAINING FINANCIAL ENGINES AND AFA (COUNT II).

Count II of the Amended Complaint, which alleges that the Home Depot Defendants breached their fiduciary duties of prudence and loyalty by selecting Financial Engines' and AFA's services for the Plan, also fails to state a claim.  As an initial matter, any claims arising from the initial selection of Financial Engines—which Plaintiffs acknowledge occurred more than six years ago—are barred by ERISA's statute of repose.  Even putting timeliness aside, Plaintiffs' allegations that Financial Engines and AFA were expensive compared to "alternative" investment options do not state a prudence claim.  Plaintiffs further fail to allege that the offering of Financial Engines and AFA benefitted the Home Depot Defendants in any way, thus defeating their loyalty claim.

### A.   Any Claims Arising from the Home Depot Defendants' Selection of Financial Engines Are Time Barred.

Financial Engines was already an incumbent service provider to the Plan at the start of the putative six-year class period, meaning its selection took place outside ERISA's six-year repose period.[51]   Any claim that the Home Depot

---

[51] *See* 29 U.S.C. § 1113; AC ¶¶ 20–21, 35 (alleging Financial Engines was an investment advisor to the Plan "from the beginning of the class period").

Defendants were imprudent or disloyal in choosing Financial Engines for the Plan, therefore, is time barred.[52]

**B.   Plaintiffs Fail to Allege Plausibly that the Selection and Retention of Financial Engines and AFA Was Imprudent.**

Even putting timeliness aside, Plaintiffs fail to state a plausible claim that the Home Depot Defendants breached their duty of prudence by permitting Financial Engines and AFA to offer advisory services to Plan participants.  As discussed above, a prudence claim must plausibly allege that the *process* leading to a challenged outcome was flawed.[53]  But Plaintiffs fail to do so.

**1.   Plaintiffs' Identification of Cheaper Investment Advisors Does Not State a Valid Prudence Claim.**

Absent concrete allegations showing an abuse of discretion in the fiduciary's decision-making process, courts are loathe to second-guess conclusions about whether a particular service provider or investment option is in the best interest of a plan and its participants.[54]  That is because courts recognize that ERISA "fiduciaries are required to consider factors beyond price" when making fiduciary decisions, and must balance competing factors when choosing

---

[52] *See Sec., U.S. Dept. of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017).

[53] *See, e.g.*, *Barchock*, 886 F.3d at 44–45.

[54] *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014); *Armstong v. LaSalle Bank, N.A.*, 446 F.3d 728, 732 (7th Cir. 2006).

investments and service providers.[55]  Accordingly, "courts have routinely held that a fiduciary's failure to offer the cheapest investment option is not enough by itself to state a claim for a breach of fiduciary duty."[56]

Courts have also consistently rejected the type of apples-to-oranges comparisons that Plaintiffs draw between the advisory services that Financial Engines provides and other allegedly "similar, substitute investment products"— such as target date funds.[57]  Although Plaintiffs have added an allegation to the Amended Complaint that Financial Engines' securities filings "[i]dentify competition from substitute investment products" such as target-date funds,[58] this does not solve their problem.  The fact that Financial Engines' advisory services may compete with target-date funds in the most general sense does not mean that their services and costs are directly comparable.  In other contexts, courts have

---

[55] *Patterson v. Capital Grp. Cos.*, No. CV 17-4399, 2018 WL 748104, at *4–5 (C.D. Cal. Jan. 23, 2018); *see also Chevron I*, 2016 WL 4502808, at *10 ("Fiduciaries have latitude to value investment features other than price (and indeed, are required to do so).").

[56] *Patterson*, 2018 WL 748104, at *4–5; *see also Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds by* 135 S. Ct. 1823 (2015); *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (fiduciaries have no obligation "to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)").

[57] AC ¶¶ 48–50; *Tibble*, 729 F.3d at 1134 (rejecting allegations that mutual funds imprudent because cheaper investment vehicles available); *Loomis*, 658 F.3d at 671–72 (same).

[58] AC ¶ 38.

17

held that strict price comparisons between different types of investment vehicles (such as mutual funds versus other fund structures) are inappropriate and further that plan fiduciaries should consider factors beyond price when deciding between them.[59]  Those holdings apply with even great force here, where Plaintiffs seek to compare an investment advisory service with investment funds.

Nor does Plaintiffs' threadbare allegation that Financial Engines was more expensive than other robo-advisors state a plausible prudence claim.[60]  As an initial matter, Plaintiffs only allege what these other robo-advisors *currently* charge, which is irrelevant to whether Financial Engines and AFA were a prudent choice during the putative class period, which opened six years before Plaintiffs filed this case.  Moreover, although Plaintiffs point to lower expense ratios in isolation, they provide no context with which to assess the validity of their comparisons—such as whether these other advisors' published fees came with minimum account balances, different fee structures, or other features that materially affect the pricing of these services.[61]

---

[59] *See, e.g.*, *Tibble*, 729 F.3d at 1134; *Loomis*, 658 F.3d at 671–72.

[60] AC ¶ 51.

[61] Likewise, while Plaintiffs allege that Financial Engines "also charges more than non-robotic investment advisory services," their only example is the fee charged by the advisor to two of PIMCO's "all asset" funds.  AC ¶ 50.  These funds Plaintiffs chose had assets, collectively, of over $27 billion as of December 31, 2017.  *See* Quarterly Schedule of Portfolio Holdings, PIMCO Funds (March 1,

Plaintiffs' allegation that the Home Depot Defendants did not engage in a competitive bidding process for "robo advisors" during the putative class period proves nothing.[62]   No court has held that competitive bidding is required for prudent selection or monitoring of plan investment options or services.[63]   Decisions that have discussed competitive bidding have involved retirement plan *administrative* services, such as recordkeeping, which are more price-sensitive than optional investment advisory services tailored to certain participants, and impose mandatory fees spread across all plan participants.[64]

Plaintiffs' other fee-related allegations also fail.   Multiple courts have rejected Plaintiffs' argument that an asset-based, rather than a per capita, fee is imprudent *per se*.[65]   Plaintiffs' allegations about Financial Engines' and AFA's "inefficient fee structure," meanwhile, do not explain how any "inefficiency"

---

2018) *available at* https://www.sec.gov/Archives/edgar/data/810893/000119312518067319/d501220dnq.htm.  It is no surprise that an advisor to such large funds can charge a smaller fee than an advisor to individual account holders.

[62] AC ¶ 179.

[63]   *See Chevron I*, 2016 WL 4502808, at *14 ("[N]othing in ERISA compels periodic competitive bidding.").

[64] *See, e.g.*, *id.* at *15.

[65] *See Chevron I*, 2016 WL 4502808, at *14; *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011); *Loomis*, 658 F.3d at 672 ("Likewise it isn't clear to us why participants would view a capitation fee as a gain. A flat-fee structure might be beneficial for participants with the largest balances, but, for younger employees and others with small investment balances, a capitation fee could work out to more, per dollar under management, . . . .").

resulted in higher overall fees, and, if it did, that those higher fees were imprudent.[66]   Moreover, only those participants who chose to use Financial Engines' optional services incurred these fees.[67]

Finally, Plaintiffs' new allegation, made upon "information and belief," that Financial Engines and AFA offered lower fees to other (unidentified) 401(k) plans does not establish a prudence claim.[68]   The Amended Complaint offers no detail on why other plans may have paid less to Financial Engines and AFA, nor on how much less they paid.  The Home Depot Plan might have paid higher fees for many reasons far apart from imprudence—for example, different fee structures based on the number of plan participants or participants' average account balance.  It may be *conceivable* that certain participants paid higher fees because the Home Depot Defendants acted imprudently, but without additional facts that are missing from their Amended Complaint, Plaintiffs have failed to establish that it is *plausible*.

---

[66] AC ¶ 64; *see also Divane v. Northwestern Univ.*, No. 16 C 8157, 2018 WL 2388118, at *8 (N.D. Ill. May 25, 2018) (rejecting claim of excessive "layers of fees"); *Meiners*, 2018 WL 3685525, at *3 n.5.

[67] *See Divane*, 2018 WL 2388118, at *6 (dismissing breach of fiduciary duty claims regarding excessive recordkeeping fees associated with a proprietary fund in part because "no plan participant was required to invest in the [fund]").  To the extent that Plaintiffs allege that Financial Engines and AFA's fees made it more difficult for Plan participants to "break even" with fund benchmarks, AC ¶ 62, this is arguably true for all fee-based investment advice.

[68] *See* AC ¶ 52.

20

2.      Plaintiffs' Other Allegations Regarding Financial Engines and
        AFA Fail to State a Prudence Claim.

Plaintiffs' sparse allegations about the Home Depot Defendants' monitoring of Financial Engines and AFA fail to allege any actual imprudent conduct. The assertion that the Home Depot Defendants failed "to survey Plaintiffs to determine whether" Financial Engines and AFA were "in their best interests" imposes a duty made of whole cloth, and ignores that Financial Engines and AFA was an optional service that Plaintiffs could take or leave.[69]

Plaintiffs' bald assertions about the quality of Financial Engines' and AFA's services do no better.  Plaintiffs' "reverse churning" allegation—that Financial Engines and AFA made "only limited changes to Plaintiffs' portfolios"[70]—does not state a plausible claim.  Most often, choosing and sticking with a particular asset allocation is *prudent* investment behavior, and Plaintiffs have provided no basis for drawing the opposite inference.[71]  Likewise, Plaintiffs' anecdotal allegations about Financial Engines' and AFA's customer service do not establish that the Home Depot Defendants were imprudent to offer those optional investment advisory services within the Plan.

---

[69] AC ¶ 65.

[70] AC ¶¶ 53–54.

[71] *See, e.g.*, *Yager*, 444 F.3d at 926.

21

### C.   Plaintiffs Fail to Allege Plausibly that the Selection and Retention of Financial Engines and AFA Was Disloyal.

To state a loyalty claim, Plaintiffs must allege specific facts demonstrating plan fiduciaries did not act "solely in the interest of the participants and beneficiaries."[72]   Allegations that fiduciaries acted imprudently, standing alone, are insufficient.[73]   Likewise, simply alleging that conduct may have benefitted third parties (as any service agreement with a third party inherently does) does not state a claim for disloyalty.[74]

As another court in this District recently explained, without "allegations of self-dealing or the use of revenue sharing to benefit corporate interests over those of the plan," simple allegations of excessive management fees do not state a plausible breach of fiduciary duty claim.[75]   Rather, only where excessive fees are "linked to allegations of wrongdoing, including allegations that the selections were made to benefit the defendants over the plan participants," does the plaintiff state a plausible claim.[76]   In that decision, Judge Cohen allowed excessive management

---

[72] 29 U.S.C. § 1104(a)(1).

[73] *See Chevron I*, 2016 WL 4502808, at *5 (noting that ERISA differentiates between the two duties by defining them in separate subparts).

[74] *Id.*

[75] *Pledger*, 240 F. Supp. 3d at 1331.

[76] *Id.*

fee allegations to go forward, but only because the funds at issue were proprietary, meaning defendants benefitted directly from their fees.[77]

The Amended Complaint contains no similar allegations of self-dealing or wrongdoing concerning the Home Depot Defendants' interactions with Financial Engines and AFA. Plaintiffs allege only that the Home Depot Defendants allowed Financial Engines and AFA "to charge unreasonable investment advisory fees," and that Financial Engines' and AFA's fees were high "compared to similar, substitute investment products."[78] Plaintiffs do not allege in any manner that the Home Depot Defendants benefitted from the fees paid to Financial Engines or AFA, and that is fatal to Plaintiffs' loyalty claim.

While Plaintiffs allege that the Home Depot Defendants allowed Financial Engines and AFA to act "in the role of profiteer,"[79] they offer no plausible allegations that the Home Depot Defendants intended for Financial Engines and AFA to profit at the expense of Plan participants. It is well settled that Plaintiffs' belief that Financial Engines and AFA charged excessive fees, by itself, is insufficient to state a disloyalty claim against the Home Depot Defendants.[80]

---

[77] *Id.* at 1331–32.
[78] AC ¶¶ 44, 48.
[79] AC ¶ 180.
[80] *See Chevron I*, 2016 WL 4502808, at *4–5 ("Plaintiffs cite no authority in support of the proposition that causing an ERISA Plan to incur unreasonable

### III.   PLAINTIFFS' DERIVATIVE MONITORING CLAIM FAILS (COUNT VI).

Count VI, which alleges that the Home Depot Defendants breached their duty of prudence by failing to monitor other (unidentified) individuals to whom they may have delegated fiduciary responsibilities, is both speculative and conclusory, and it fails to state a claim.[81]   Furthermore, because Count VI is derivative of other Counts that fail to state plausible claims for relief for the reasons described above, Count VI also fails.[82]

### IV.   THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND.

Finally, because Plaintiffs seek equitable relief, the Court should strike their demand for a jury trial.[83]   Plaintiffs' fiduciary breach claims against the Home Depot Defendants, brought under subsection 1132(a)(2), are "historically within the jurisdiction of the equity courts."[84]   Furthermore, Plaintiffs seek equitable relief, including that the Home Depot Defendants "make good to the Plan" the

---

expenses is a breach of the duty of loyalty, distinct from a breach of the duty of prudence.").

[81] *See id.* at *18 (dismissing monitoring claim and noting complaint "does not specify which 'appointees' or 'other fiduciaries' [defendant] failed to monitor").

[82] *See, e.g.*, *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1333 (N.D. Ga. 2006).

[83] *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (Seventh Amendment preserves jury trial for legal, not equitable, claims).

[84] *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005).

"losses to the Plan resulting from each breach of fiduciary duty."[85]   As two other decisions from this District have recently found, such ERISA claims sound in equity and do not create a jury trial right.[86]

## CONCLUSION

The Court should dismiss all claims against The Home Depot Defendants in Plaintiffs' Amended Complaint for failure to state a claim.

Dated: August 27, 2018

*/s/ David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
Benjamin B. Watson
Georgia Bar No. 632663
bwatson@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5139

---

[85] AC at p. 106.

[86] *See Pledger v. Reliance Trust Co.*, No. 1:15-cv-4444, Dkt. No. 100 (N.D. Ga. Nov. 7, 2017) (Cohen, J.); *Henderson v. Emory Univ.*, No. 1:16-cv-2920, Dkt. No. 127 (N.D. Ga. July 10, 2017) (Pannell, J.).

**Attorneys for The Home Depot
Defendants**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 27th day of August 2018.


*/s/  David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                              )
JAIME H. PIZARRO, CRAIG                        )
SMITH, JERRY MURPHY,                           )
RANDALL IDEISHI, GLENDA                        )
STONE, RACHELLE NORTH,                         )
MARIE SILVER, and GARTH                        )
TAYLOR on behalf of themselves                 )
and all others similarly situated,             )        CIVIL ACTION FILE
                                              )        No. 1:18-cv-01566-LMM
        Plaintiffs,                            )
                                              )
v.                                             )
                                              )
THE HOME DEPOT, INC.; THE                      )
ADMINISTRATIVE                                 )
COMMITTEE OF THE HOME                          )
DEPOT FUTUREBUILDER                            )
401(K) PLAN; THE                               )
INVESTMENT COMMITTEE OF                        )
THE HOME DEPOT                                 )
FUTUREBUILDER 401(K) PLAN;                     )
FINANCIAL ENGINES                              )
ADVISORS, LLC; ALIGHT                          )
FINANCIAL ADVISORS, LLC;                       )
AND DOES 1-30,                                 )
                                              )
        Defendants.                            )
_____


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 27th, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to all attorneys of record.

/s/ David Tetrick, Jr.
David Tetrick, Jr.
Georgia Bar No. 713653