## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____
)
**JAIME H. PIZARRO, CRAIG** )
**SMITH, JERRY MURPHY,** )
**RANDALL IDEISHI, GLENDA** )
**STONE, RACHELLE NORTH,** )
**MARIE SILVER, and GARTH** )
**TAYLOR on behalf of themselves** )
**and all others similarly situated,** )          **CIVIL ACTION FILE**
)          **No. 1:18-cv-01566-WMR**
     **Plaintiffs,** )
)
**v.** )
)
**THE HOME DEPOT, INC.; THE** )
**ADMINISTRATIVE** )
**COMMITTEE OF THE HOME** )
**DEPOT FUTUREBUILDER** )
**401(K) PLAN; THE** )
**INVESTMENT COMMITTEE OF** )
**THE HOME DEPOT** )
**FUTUREBUILDER 401(K) PLAN;** )
**FINANCIAL ENGINES** )
**ADVISORS, LLC; ALIGHT** )
**FINANCIAL ADVISORS, LLC;** )
**AND DOES 1-30,** )
)
     **Defendants.** )
_____)

## REPLY BRIEF IN SUPPORT OF THE HOME DEPOT DEFENDANTS' MOTION TO DISMISS

David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
Benjamin B. Watson
Georgia Bar No. 632663
bwatson@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Telephone: (404) 572-4600
Fax: (404) 572-5139

**Attorneys for the Home Depot
Defendants**

# TABLE OF CONTENTS

**I.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED AN IMPRUDENT INVESTMENT MONITORING PROCESS (COUNT I).** ..........................................................................1

   **A.    Threadbare Allegations of "Poor Performance" Are Insufficient to State a Prudence Claim.** ..........................................................1

   **B.    Hindsight-Based Performance Allegations Do Not Support a Plausible Inference of an Imprudent Monitoring Process.** ....................5

**II.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT THE RETENTION OF FINANCIAL ENGINES WAS A BREACH OF FIDUCIARY DUTY (COUNT II).** ................................................10

   **A.    Plaintiffs Do Not State a Plausible Claim that Offering Financial Engines' Investment Advice Was Imprudent.** ..........................10

   **B.    Plaintiffs Do Not State a Plausible Claim that Offering Financial Engines' Investment Advice Was Disloyal.** ...............................14

**III.   PLAINTIFFS ARE NOT ENTITLED TO A JURY TRIAL.** .....................15

**CONCLUSION** ...............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. GreatBanc Trust Co.*,
    835 F.3d 670 (7th Cir. 2016) ...............................................................3

*Barchock v. CVS Health Corp.*,
    886 F.3d 43 (1st Cir. 2018) ..................................................................2

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...............................................................3

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...........................................................8

*Cigna Corp. v. Amara*,
    563 U.S. 421 (2011) ...........................................................................15

*Cunningham v. Cornell Univ.*,
    No. 16-cv-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) .........3

*Divane v. Northwestern Univ.*,
    No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) ............13

*George v. Kraft Foods Global, Inc.*,
    641 F.3d 786 (7th Cir. 2011) .............................................................13

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .............................................................12

*Henderson v. Emory Univ.*,
    252 F. Supp. 3d 1344 (N.D. Ga. 2017) .......................................2, 3, 13

*Henderson v. Emory Univ.*,
    No. 1:16-cv-02920, Doc. 127 (N.D. Ga. Feb. 28, 2018) ...................15

*Jacobs v. Verizon Commc'ns, Inc.*,
    No. 16 Civ. 1082, 2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017) .......4

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) .............................................................................14

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ......................................................................6, 13

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 15 CIV. 9936, 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016)......................3

*Nicolas v. Trustees of Princeton Univ.*,
  No. CV 17-3695, 2017 WL 4455897 (D.N.J. Sept. 25, 2017) ...........................4

*Patterson v. Capital Grp. Cos.*,
  No. CV 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018) .........................12

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret.
  Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
  712 F.3d 705 (2d Cir. 2013) .....................................................................2, 3, 4

*Pledger v. Reliance Trust Co.*,
  240 F. Supp. 3d 1314 (N.D. Ga. 2017).........................................................2, 14

*Pledger v. Reliance Trust Co.*,
  No. 1:15-cv-04444, Doc. 100 (N.D. Ga. Nov. 7, 2017) ....................................15

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) .............................................................................14

*Sacerdote v. N.Y. Univ.*,
  No. 16-CV-6284, 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) .......................3

*Sweda v. Univ. of Pa.*,
  No. CV 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017) ....................2, 4

*Terraza v. Safeway Inc.*,
  241 F. Supp. 3d 1057 (N.D. Cal. 2017).............................................................3

*Troudt v. Oracle Corp.*,
  No. 1:16-CV-00175, 2017 WL 1100876 (D. Colo. Mar. 22, 2017)....................4

*White v. Chevron Corp.*,
   No. 16-cv-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)..............2, 12, 14

**Statutes**

29 U.S.C. § 1132(a)(2).............................................................................................15

**Other Authorities**

*Definition of the Term "Fiduciary"; Conflict of Interest Rule—*
   *Retirement Investment Advice*,
   81 Fed. Reg. 20946-01 (Apr. 8, 2016)................................................................11

Plaintiffs' claims against the Home Depot Defendants seek to impose standards of fiduciary liability that go far beyond anything contemplated in ERISA.  Count I faults the Home Depot Defendants for failing to select the top performing mutual funds and seeks to impose liability for funds that either exceeded or marginally underperformed their benchmarks during Plaintiffs' putative class period.  Count II contends that Financial Engines was too expensive given the subjectively disappointing level of services it delivered, and seeks to impose liability on the Home Depot Defendants for offering Financial Engines' optional services at all.  ERISA's fiduciary duties are demanding, but they do not impose strict liability.  The Court should dismiss Plaintiffs' claims against the Home Depot Defendants as a matter of law.

## I.      PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED AN IMPRUDENT INVESTMENT MONITORING PROCESS (COUNT I).

### A.      Threadbare Allegations of "Poor Performance" Are Insufficient to State a Prudence Claim.

Contrary to Plaintiffs' arguments, courts in this District and elsewhere require more than threadbare allegations of "underperformance" to sustain a claim of imprudent monitoring of 401(k) plan investment options.  ERISA's duty of

prudence focuses on plan fiduciaries' *process* for monitoring investment options.[1] Plaintiffs thus must allege facts plausibly demonstrating that this process was flawed, and may do so directly (by alleging what the flaws in the process were) or indirectly (by alleging that the results of that process were so poor that they give rise to a plausible inference that a breach occurred).  Plaintiffs have elected the indirect path, but their conclusory allegations that better performing funds and services existed in the market are *not* the "objective indicia" of an imprudent investment monitoring process.[2]

Plaintiffs cite no decisions from this District that have sustained a prudence claim solely on allegations of underperformance.  *Pledger v. Reliance Trust Co.* distinguished between complaints that couple underperformance allegations with allegations of self-dealing and complaints "that merely allege underperformance of selected funds."[3]  Consistent with this distinction, *Henderson v. Emory University* involved not just performance allegations, but also detailed allegations that plan fiduciaries had entered into an agreement that "forced [the fiduciaries] to use [the

---

[1] *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 44–45 (1st Cir. 2018); *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

[2] *White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) ("*Chevron I*"); *see also Sweda v. Univ. of Pa.*, No. CV 16-4329, 2017 WL 4179752, at *10 (E.D. Pa. Sept. 21, 2017).

[3] 240 F. Supp. 3d 1314, 1327 (N.D. Ga. 2017).

recordkeepers'] funds" and used those funds "without researching or choosing other funds."[4]

Indeed, most of Plaintiffs' cases involved direct allegations that the plan fiduciaries' process was flawed. This includes allegations that fiduciaries used proprietary funds (and thus had a supposedly inherent conflict of interest)[5] or that the plan recordkeeper improperly influenced fund selection.[6] The circuit cases cited by Plaintiffs, meanwhile, either affirmed dismissal under Rule 12[7] or involved claims fundamentally different than those brought here.[8]

And the Second Circuit in *St. Vincent* did not hold that bare allegations of "underperformance relative to comparators can state a breach of fiduciary duty claim," as Plaintiffs claim.[9] Rather, the Second Circuit explained that plaintiffs must plausibly allege a flawed monitoring process, and noted in *dicta* (before

---

[4] 252 F. Supp. 3d 1344, 1350–51 (N.D. Ga. 2017).

[5] *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016).

[6] *See Henderson*, 252 F. Supp. 3d at 1350–51; *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2017 WL 4358769, at *1–2 (S.D.N.Y. Sept. 29, 2017); *Sacerdote v. N.Y. Univ.*, No. 16-CV-6284, 2017 WL 3701482, at *2 (S.D.N.Y. Aug. 25, 2017); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017).

[7] *See St. Vincent*, 712 F.3d at 728.

[8] *See Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (alleged improper valuation of privately held employer stock plan); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (alleged failure to use identical, cheaper share class).

[9] Pls.' Br. at 8.

affirming dismissal of a complaint under Rule 12) that a "readily apparent" "superior alternative" could conceivably meet that burden.[10]  *St. Vincent* in fact warned that mere allegations of "underperformance relative to comparators" were likely *insufficient* to state a claim.[11]

The few out-of-circuit cases cited by Plaintiffs that do involve standalone allegations of fund underperformance are consistent with *St. Vincent*, as they involve allegations of *extreme* underperformance.  For example, *Jacobs v. Verizon Communications, Inc.* involved a "Global Opportunity Fund" with ten-year returns that were barely one-tenth that of its stated benchmark, and only slightly better than a much cheaper and lower-risk money market fund.[12]  *Troudt v. Oracle Corp.* refused to dismiss claims arising from the *selection* of two newly formed funds that "had inadequate performance histories to warrant investment in them at all" and the retention of a third fund "alleged to have greatly underperformed its

---

[10] *St. Vincent*, 712 F.3d at 718.

[11] Pls.' Br. at 8; *see St. Vincent*, 712 F.3d at 718 ("Nor is it necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions.").

[12] *See* No. 16 CIV. 1082 (PGG), 2017 WL 8809714, at *9 (S.D.N.Y. Sept. 28, 2017) (alleging annualized fund performance of 1.74% versus 10.37% for benchmark).  Plaintiffs' final case, *Nicolas v. Trustees of Princeton University*, No. CV 17-3695, 2017 WL 4455897 (D.N.J. Sept. 25, 2017), does not give detail on the extent of the alleged underperformance, and expressly premises its holding on its interpretation of controlling Third Circuit precedent, *see id.* at *5 n.3. Regardless, *Nicolas* is squarely at odds with *Sweda*, another district court decision from the Third Circuit.  *See* 2017 WL 4179752, at *10.

benchmark."[13]   As explained below, Plaintiffs' meager allegations of fund underperformance come nowhere near this level.

### B.   Hindsight-Based Performance Allegations Do Not Support a Plausible Inference of an Imprudent Monitoring Process.

Plaintiffs argue that the Plan funds lagged against three alleged "benchmarks": (1) "other funds with equivalent investment objectives"; (2) "the Funds' self-professed or customary benchmarks," and (3) "applicable Morningstar peer rankings."[14]   Plaintiffs' first "benchmark" consists of cherry-picked funds and is simply not an objective basis for evaluating fund performance.   The second and third purported benchmarks, meanwhile, do not reveal the dramatic and sustained underperformance that might give rise to a plausible inference that the Home Depot Defendants' monitoring process was imprudent.

### 1.   Plaintiffs' Cherry-Picked Comparator Funds Are Inapposite.

Plaintiffs' comparison of funds in the 401(k) Plan to funds they selected after the results were in reveals nothing about the monitoring process that the Home Depot Defendants used in real time.   Such post-hoc, selective comparisons are exactly what the Eighth Circuit recently rejected—at the motion-to-dismiss

---

[13] No. 1:16-CV-00175, 2017 WL 1100876, at *2 (D. Colo. Mar. 22, 2017).
[14] Pls.' Br. at 2.

stage—in *Meiners v. Wells Fargo & Co.*[15]  Plaintiffs try to distinguish *Meiners* as involving only one comparator fund, as opposed to Plaintiffs' four.[16]  But that Plaintiffs have provided a marginally larger drop in the mutual fund bucket does not prove that Plaintiffs' comparator funds are a meaningful benchmark.  Whether one fund or four, the same problem remains:  Plaintiffs were able to pick their comparator funds after they had the funds' performance during the class period.

Moreover, Plaintiffs have failed to allege the actual performance of the TS&W, Stephens, or Blackrock funds.  Plaintiffs contend that actual performance data on these funds is unavailable to them,[17] but Plaintiffs are participants in the 401(k) Plan who allege to have invested in these funds.

### 2. Plaintiffs' Other Benchmarks Do Not Show Meaningful Underperformance.

Plaintiffs' other alleged benchmarks do not reveal the type of extreme and sustained underperformance required to support a prudence claim in the absence of direct allegations about the Home Depot Defendants' process.  Rather, they reveal at most only slight underperformance during the putative class period.

First, the funds' "self-professed or customary benchmarks" contradict Plaintiffs' breathless claims of "chronic," "ongoing," and "wretched"

---

[15] 898 F.3d 820, 825 (8th Cir. 2018).
[16] *See* Pls.' Br. at 11.
[17] *See* Pls.' Br. at 12 n.8.

underperformance.[18]  In fact, two of the funds at issue—the TS&W Small Cap

Value and Stephens Small Cap Growth Funds—*outperformed* their benchmarks

multiple years of the putative class period[19]:

| Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|---|
| Russell 2000 Value | 18.05 | 34.52 | 4.22 | -7.47 | 31.74 | 7.84 | +88.90% |
| TSW +/- | -0.41 | *12.61* | *3.55* | -2.20 | -14.49 | -4.05 | |
| +/- Cumulative | | *12.20* | *15.75* | *13.55* | -0.94 | -4.99 | -4.99% |

| Fund | 2013 | 2014 | 2015 | 2016 | 2017 | Cumulative (2012-2017) |
|---|---|---|---|---|---|---|
| Russell 2000 Growth | 43.30 | 5.60 | -1.38 | 11.32 | 22.17 | +81.01% |
| Stephens +/- | *1.35* | -7.91 | -2.23 | *0.08* | -1.88 | |
| +/- Cumulative | | -6.56 | -8.79 | -8.71 | -10.59 | -10.59% |

As these charts from the Amended Complaint show, the TS&W Small Cap

Value Fund **outperformed** its benchmark in 2013 and 2014, and cumulatively

**outperformed** its benchmark by over 13.5% through 2015.[20]  The Stephens Small

Cap Growth Fund, meanwhile, outperformed its benchmark in 2013 and 2016, two

---

[18] Pls.' Br. at 9–10, 13.

[19] Excerpts from Amended Complaint paragraphs 82 and 92 (emphases added).

[20] Indeed, by the end of the putative class period, the TS&W Small Cap Value Fund's trailing ten-year performance lagged its benchmark by less than one percent.  *See* Amended Complaint (Doc. 53) ("AC") ¶ 77 (5.48% vs. 6.26%).

of the five years at issue in the putative class period, and its cumulative underperformance is attributable primarily to a single year (2014).

Allegations for the other funds fare no better. Plaintiffs assert that each Blackrock fund they challenge underperformed its benchmark by an unspecified amount "either during the previous ten years or since inception to date."[21] But the document Plaintiffs cite reveals that this underperformance was hardly dramatic, ranging from only 1.38% to 0.29%.[22] Plaintiffs acknowledge the JPM Stable Value Fund underperformed its benchmark by a negligible amount during the putative class period, but maintain that *any* underperformance is enough to plausibly infer imprudence.[23] But Plaintiffs concede the Fund was intended as a cash equivalent and had positive growth every year of the class period.[24]

Plaintiffs' third alleged benchmark—the "applicable Morningstar peer rankings"—is most revealing in how it is *not* used. For the Stephens Small Cap Growth Fund, Plaintiffs provide the rankings only for a single timeframe that does

---

[21] AC ¶ 107.

[22] Ex. A to Shuler Declaration (2017 Annual Fee Disclosure Statement) at 3. As Plaintiffs referred to this document and it is central to their allegations, the court may consider it on a motion to dismiss. *See* AC ¶¶ 106–107; *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[23] *See* Pls.' Br. at 14. Grasping for any bad information about the Fund, Plaintiffs also point to their irrelevant allegation that it was subject to litigation filed *before* the putative class period began. *See* Pls.' Br. at 14–15; AC ¶ 99.

[24] *See* Pls.' Br. at 14; AC ¶ 101.

not capture the entire class period.[25]  For the BlackRock funds, Plaintiffs allege that the fund suite had poor peer rankings only from 2012 through 2014, but are conspicuously silent about the second half of the class period.[26]  Likewise, Plaintiffs discuss the 3- and 1-year peer rankings of some of the BlackRock funds, but not others.[27]  Plaintiffs do not provide any Morningstar peer rankings at all for the TS&W or JPM Stable Value Funds.

Plaintiffs' Amended Complaint simply does not plead the type of significant or sustained underperformance necessary to support a plausible inference of unreasonable investment monitoring.  Plaintiffs claim that the Home Depot Defendants breached their fiduciary duty by *failing to remove* these funds—and thus cause considerable disruption for Plan participants—once they exhibited their alleged underperformance.[28]  As explained above, Plaintiffs do not allege facts that support the type of sustained poor performance that would require a prudent fiduciary to remove a fund.  To the extent Plaintiffs allege that the Home Depot Defendants should have known the funds would have mild cumulative underperformance during the putative class period (an arbitrary time period

---

[25] *See* AC ¶ 94.

[26] *See* AC ¶ 109.

[27] *See* AC ¶¶ 115, 121, 126, 131, 135, 140, 144, 149.

[28] *See* Pls.' Br. at 6 n.3.

Plaintiffs selected), Plaintiffs' argument is pure hindsight bias, despite their protestations to the contrary.[29]

## II.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT THE RETENTION OF FINANCIAL ENGINES WAS A BREACH OF FIDUCIARY DUTY (COUNT II).

### A.   Plaintiffs Do Not State a Plausible Claim that Offering Financial Engines' Investment Advice Was Imprudent.

To state a prudence claim in Count II, Plaintiffs must do more than simply allege that Financial Engines was expensive.   Rather, Plaintiffs must plead concrete facts that plausibly show that the Home Depot Defendants engaged in an imprudent process by keeping Financial Engines.[30]   Plaintiffs have not done so.

1.   <u>Plaintiffs' Conclusory Allegations of So-Called "Reverse Churning" Do Not State a Prudence Claim.</u>

The bulk of Plaintiffs' argument on Count II consists of conclusory assertions that Financial Engines offered "poor" services for "high" fees.[31]   The Amended Complaint contains no allegation that Financial Engines failed to deliver the investment advice it contracted to provide Plan participants.   Indeed, Plaintiffs

---

[29] *See* Pls.' Br. at 9–10.

[30] Plaintiffs acknowledge that any claims relating to the initial selection of Financial Engines are time barred.   *See* Pls.' Br. at 16 n.11.   Plaintiffs' claim that the Home Depot Defendants are liable as co-fiduciaries, *see id.* at 17, requires a predicate finding that Financial Engines and AFA breached a fiduciary duty.

[31] Pls.' Br. at 17–18; *see also id.* at 19 (stating that Financial Engines and AFA "were expensive relative to the services [they] rendered").

concede that Financial Engines monitored and made changes to their investments.[32]   The only factual allegations Plaintiffs make about Financial Engines' services—which were optional—are complaints that the services were not as personalized or responsive as Plaintiffs had hoped.[33]   Allegations of dashed expectations do not support a plausible inference that the Home Depot Defendants breached their fiduciary duties by offering Financial Engines' optional services.

Plaintiffs' "reverse churning" allegations merely rebadge these conclusory assertions.   Plaintiffs argue that Financial Engines engaged in "reverse churning" because it charged asset-based fees while providing its allegedly "neglectful" services.[34]   But ERISA contains no *per se* prohibition on asset-based fees, and Plaintiffs cite no authority to support their proposition.[35]

---

[32] *See* AC ¶ 54.

[33] *See* AC ¶¶ 37, 40–41, 46, 53–59.

[34] *See* Pls.' Br. at 18.

[35] *See infra* at 14.  The Department of Labor's "concern" identified by Plaintiffs is found in commentary to the now-vacated revised fiduciary rule, was made in the context of discussing prohibited transaction exemptions, and discusses where a fiduciary uses an asset-based account over a transaction-based account with the unlawful aim of increasing fees.  *See Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Investment Advice*, 81 Fed. Reg. 20946-01 (Apr. 8, 2016).  Plaintiffs' other citations are administrative decisions or guidance from the SEC or NYSE that do not discuss ERISA fiduciary duties.  *See* Pls.' Br. at 18 n.13.

2.     Plaintiffs' Other Allegations Do Not State a Prudence Claim.

The purported "red flags" about Financial Engines that Plaintiffs identify in their response were nothing of the sort.[36]   *First*, that purported "competitors" to Financial Engines allegedly charged lower fees than Financial Engines does not state a claim of imprudence.   Courts have rejected the idea that price must be the overriding selection criteria for investment services,[37] and have repeatedly refused to sustain claims premised on apples-to-oranges price comparisons across dissimilar investment vehicles.[38]   Plaintiffs' argument to the contrary relies on inapposite cases involving fungible plan administrative services.[39]   Plaintiffs' attempt to create a fact issue out of whether the Home Depot Defendants should have offered target date funds in place of Financial Engines ignores that the Plan *did* offer target date funds in addition to Financial Engines' optional services.[40]

---

[36] Pls.' Br. at 18–19.

[37] *See* Home Depot Br. at 16–19.

[38] *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *Patterson v. Capital Grp. Cos.*, No. CV 17-4399, 2018 WL 748104, at *4–5 (C.D. Cal. Jan. 23, 2018); *Chevron I*, 2016 WL 4502808, at *10.

[39] *See* Pls.' Br. at 16 (citing four cases, all of which concern plan recordkeepers, which provide non-discretionary administrative services).

[40] *See* Pls.' Br. at 20.

*Second*, the "red flag" of "Home Depot's failure to conduct competitive bidding" fails for similar reasons.[41]  Again, Plaintiffs' cases involve mandatory administrative services that saddled participants with high fees so the plan sponsor could pay less.[42]  Plaintiffs offer no explanation why these inapposite cases should be applied to optional investment advisory services like Financial Engines.[43]

*Third*, Plaintiffs' allegations of "fee layering" do not plausibly establish a claim of imprudence.  Financial Engines may have received a fee for its services, but that would be true of any investment advisor the Plan used.  Conclusory allegations of kickbacks or other inefficient fee structures do not establish imprudence absent concrete allegations that the structures resulted in unjustified higher fees for participants.[44]  For example, Plaintiffs' cited case, *Henderson*, involved allegations of specific, unnecessary additional charges, such as for fund marketing.[45]  Here, Plaintiffs do not allege that they were charged for things they did not need or buy.

---

[41] *Id.* at 19.

[42] *Id.* at 21 (citing *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 800 (7th Cir. 2011); *Henderson*, 252 F. Supp. 3d at 1353).

[43] *See* Pls.' Br. at 21–22.

[44] *See, e.g.*, *Divane v. Northwestern Univ.*, No. 16 C 8157, 2018 WL 2388118, at *8 (N.D. Ill. May 25, 2018); *Meiners*, 898 F.3d at 823 n.5.

[45] *See* 252 F. Supp. 3d at 1351.

*Fourth*, as explained in the Home Depot Defendants' opening brief, courts have rejected Plaintiffs' proposition that asset-based fees are imprudent *per se*.[46] For typical retirement plan participants with relatively small account balances, an asset-based fee may be cheaper than a per capita fee.[47] The complaint in Plaintiffs' cited case, *Pledger*, alleged specific excessive fees, such as a $500 recordkeeping charge and $30 service fee, that were charged on top of asset based fees.[48]

### B.   Plaintiffs Do Not State a Plausible Claim that Offering Financial Engines' Investment Advice Was Disloyal.

Plaintiffs argue that the Home Depot Defendants' retention of Financial Engines and AFA was disloyal because it incidentally benefitted Financial Engines and AFA.[49] This is true of every service provider contract, and is insufficient to state a loyalty claim—which requires allegations that the plan fiduciaries acted *for the purpose* of benefitting themselves or third parties.[50] Here, Plaintiffs' allegations of disloyalty are indistinguishable from their allegations of imprudence.[51]

---

[46] *See Chevron I*, 2016 WL 4502808, at *14; *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011); *Loomis v. Exelon Corp.*, 658 F.3d 667, 672 (7th Cir. 2011).
[47] *See Loomis*, 658 F.3d at 672.
[48] 240 F. Supp. 3d at 1329.
[49] *See* Pls.' Br. at 23.
[50] *See, e.g.*, *Pledger*, 240 F. Supp. 3d at 1331.
[51] *See, e.g.*, *Chevron I*, 2016 WL 4502808, at *5.

## III.      PLAINTIFFS ARE NOT ENTITLED TO A JURY TRIAL.

Plaintiffs contend they are entitled to a jury trial because they seek restitution "at law" under 29 U.S.C. § 1132(a)(2).  Two different courts in this District have rejected this argument within the past year, concluding that § 1132(a)(2) claims seeking monetary relief for fiduciary breaches are equitable, not legal, in nature.[52]  Plaintiffs suggest that these decisions are wrongly decided because they rely on *Cigna Corp. v. Amara*,[53] which discussed the remedy of "surcharge."[54]  But *Pledger* and *Henderson* themselves involved relief identical to that sought by Plaintiffs, and both concluded that such relief was equitable.[55]  Plaintiffs also seek a variety of other equitable relief, including injunctive relief.[56]

## <u>CONCLUSION</u>

The Court should dismiss all claims against the Home Depot Defendants in Plaintiffs' Amended Complaint for failure to state a claim.

---

[52] *See Pledger v. Reliance Trust Co.*, No. 1:15-cv-04444, Doc. 100, at 10 (N.D. Ga. Nov. 7, 2017) (Cohen, J.) (noting that "the majority of courts nationwide have rejected this argument"); *Henderson v. Emory Univ.*, No. 1:16-cv-02920, Doc. 127, at 6–14 (N.D. Ga. Feb. 28, 2018) (Pannell, J.).  Both decisions are attached for the Court's convenience.  *See* Shuler Decl. Exs. B, C.

[53] 563 U.S. 421 (2011).

[54] *See* Pls.' Br. at 25.

[55]  *Henderson*, No. 1:16-cv-02920, Doc. 127, at 11–13; *Pledger*, No. 1:15-cv-04444, Doc. 100 at 13–14.  Plaintiffs' cases either predate or fail to discuss *Amara*.

[56] *See* AC at p. 107–08; *Henderson*, No. 1:16-cv-02920, Doc. 127, at 13 (other requested equitable relief "also lend to the conclusion that the plaintiffs' monetary remedy is equitable").

Dated: October 31, 2018

*/s/ David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com
Benjamin B. Watson
Georgia Bar No. 632663
bwatson@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5139

**Attorneys for The Home Depot
Defendants**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 31st day of October 2018.


*/s/  David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                    )
JAIME H. PIZARRO, CRAIG             )
SMITH, JERRY MURPHY,                )
RANDALL IDEISHI, GLENDA             )
STONE, RACHELLE NORTH,              )
MARIE SILVER, and GARTH             )
TAYLOR on behalf of themselves      )
and all others similarly situated,  )        CIVIL ACTION FILE
                                    )        No. 1:18-cv-01566-WMR
        Plaintiffs,                 )
                                    )
v.                                  )
                                    )
THE HOME DEPOT, INC.; THE           )
ADMINISTRATIVE                      )
COMMITTEE OF THE HOME               )
DEPOT FUTUREBUILDER                 )
401(K) PLAN; THE                    )
INVESTMENT COMMITTEE OF             )
THE HOME DEPOT                      )
FUTUREBUILDER 401(K) PLAN;          )
FINANCIAL ENGINES                   )
ADVISORS, LLC; ALIGHT               )
FINANCIAL ADVISORS, LLC;            )
AND DOES 1-30,                      )
                                    )
        Defendants.                 )
_____


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31st, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to all attorneys of record.

*/s/ David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653