## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JAMIE H. PIZARRO, CRAIG
SMITH, JERRY MURPHY,
RANDALL IDEISHI, GLENDA
STONE, RACHELLE NORTH,
MARIE SILVER, and GARTH
TAYLOR on behalf of themselves and
all others similarly situated

    Plaintiff,

     v.

The HOME DEPOT, INC; THE
ADMINISTRATIVE COMMITTEE
OF THE HOME DEPOT
FUTUREBUILDER 401(K) PLAN;
THE INVESTMENT COMMITTEE
OF THE HOME DEPOT
FUTUREBUILDER 401(K) PLAN;
FINANCIAL ENGINES ADVISORS,
LLC; ALIGHT FINANCIAL
ADIVSORS, LLC; AND DOES 1-30,

    Defendants.

CIVIL ACTION FILE
NO. 1:18-CV-01566-WMR

## <u>ORDER</u>

This matter is before the Court on the respective MOTIONS TO DISMISS

filed by Defendants Alight Financial Advisors ("AFA") [Doc. 57], Financial

Engines Advisors ("FEA") [Doc. 58], and The Home Depot, Inc., the Administrative

Committee of the Home Depot Futurebuilder 401(k) Plan, and the Investment

Committee of the Home Depot Futurebuilder 401(k) Plan (collectively "Home Depot") [Doc. 59]. Based on the reasoning below, AFA's motion to dismiss [Doc. 57 is **GRANTED**, FEA's motion to dismiss [Doc. 58] is **GRANTED**, and Home Depot's motion to dismiss [Doc. 59] is **DENIED**.

## I.     BACKGROUND

Plaintiffs are participants in Home Depot's FutureBuilder 401(k) plan (the "Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1000*et seq*. [Doc. 53 at ¶¶ 1, 7-14]. Home Depot is the Plan's sponsor and administrator. [*Id*. at ¶¶ 15-17]. FEA and AFA are investment advisory firms with which Home Depot has contracted to provide services for the Plan. [*Id*. at ¶¶ 20-21, 34-35].

Plaintiffs claim that all Defendants are fiduciaries that owe duties of loyalty and prudence to Plan participants under ERISA. [*Id*. at ¶¶ 7-21]. Plaintiffs allege that Home Depot imprudently selected and retained investment options for the Plan which were poorly-performing and charged high asset-based fees. [*Id*. at ¶¶ 74-151]. Plaintiffs further allege that Home Depot imprudently selected and retained FEA and AFA as investment advice service providers because they charged high asset-based fees, provided poor customer service, and provided substandard advisement services. [*Id*. at ¶¶ 60-68]. Plaintiffs also allege that FEA and AFA likewise

breached their duties of prudence and loyalty under ERISA because they charged expensive asset-based fees, provided poor customer service, and provided substandard advisement services. [*Id*. at ¶¶ 48-59]. Specifically, Plaintiffs allege that FEA and AFA engaged in self-dealing in violation of 29 U.S.C. § 1106(b) by utilizing a "reverse churning" scheme, which is based on the theory that—by charging expensive, asset-based fees for investments with low trading activity and no need for ongoing monitoring or advice—the fiduciaries were able to limit the time they spent on customer service and investment advice and focus on recruiting additional customers. [*Id*. at ¶¶ 205-209].

Defendants have moved to dismiss the respective claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. 57; Doc. 58; Doc. 59].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Supreme Court emphasized that a complaint does not suffice if it tenders "'naked assertions' devoid of 'further factual enhancement,'" or if it offers "labels and conclusions," or

"a formulaic recitation of the elements of a cause of action." *Id*. (quoting *Twombly*, 550 U.S. at 555).

A court confronted with a motion to dismiss must accept the plaintiffs' well-pleaded factual allegations as true, but "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Piedmont Office Realty Tr., Inc. v. XL Specialty Ins. Co.*, 11 F. Supp. 3d 11184, 1189 (N.D. Ga. 2014), *aff'd*, 790 F.3d 1252 (11th Cir. 2015) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004)).  Thus, to survive a motion to dismiss, plaintiffs must "allege some specific factual basis" for their legal conclusions.  *Id*. (quoting *Jackson*, 372 F.3d at 1263).

## III.   DISCUSSION

ERISA's duty of prudence requires fiduciaries of an employee retirement plan to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  The duty of loyalty requires fiduciaries to act "solely in the interest" of plan participants and beneficiaries, and "for the exclusive purpose of providing benefits to participants" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

"An ERISA fiduciary's duty is derived from the common law of trusts." *Tibble v. Edison Intern.*, 135 S. Ct. 1823, 1828 (2015).   "A trustee (and thus an ERISA fiduciary) has a continuing duty to monitor…investments and remove imprudent ones.  This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id*. (internal citations and quotation marks omitted).  This monitoring "is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." *Id.* (internal citations and quotation marks omitted).

A.  Home Depot's Duty of Prudence in Managing the Plan

In Count I of the Amended Complaint, Plaintiffs allege that Home Depot breached its duty of prudence under 29 U.S.C. § 1104(1)(B) when it mismanaged the investment options that had been selected and retained by the Plan. [Doc. 53 at ¶¶ 160-175].  Specifically, Plaintiffs assert that Home Depot utilized a "faulty investment process" that was tainted by imprudence because it allowed the retention of selected investment funds that had a long-term history of underperformance relative to their benchmarks.  Plaintiffs further assert the Home Depot's faulty process "substantially impaired the Plan's use, its value, and its investment performance for all of the Plan's participants, past and present."  [*Id*. at ¶¶ 166-172]. As a result of this process, Plaintiffs allege that they suffered damages and lost-opportunity costs. [*Id*. at ¶ 173].

In its motion to dismiss, Home Depot argues (1) that Plaintiffs' allegations of poor investment fund performance, without accompanying allegations of actual imprudent conduct on the part of Home Depot, are insufficient to state a plausible prudence claim under ERISA, and (2) that Plaintiffs failed to plausibly allege that any investment fund's performance required its removal from the Plan.[Doc. 59-1 at 8-14].

Home Depot cites a case from the Northern District of California, *White v. Chevron Corp.*   No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. 2016), to support the proposition that "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation." *Id*. at *17.   The issue in that case was whether the fiduciary had breached the duty of prudence by unduly delaying the removal of an imprudent investment option. *Id.*   The district court in *White* concluded that allegation of fund underperformance was not enough to create a plausible inference of imprudent management based the fiduciary's delay in removing the investment option because a "fiduciary may – and often does – retain investments through a period of underperformance as part of a long-range investment strategy." *Id*.

However, in *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344 (N.D. Ga. 2017), a district court here in the Eleventh Circuit allowed an ERISA claim to proceed where the plaintiffs alleged that the defendants imprudently retained

6

historically underperforming stocks that charged excessive fees when there were other lower cost, better performing investments that were available to the plan.  In that case, the plaintiffs had alleged that there were defects in the defendant's process for choosing and analyzing investment funds. *Id*. 1351-1352 The district court concluded that the plaintiffs had successfully stated a claim where the plaintiffs sufficiently alleged that the "process by which [the Home Depot] selected and managed the funds in the Plan [were] tainted by failure of effort, competence, or loyalty." *Id*. at 1351 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)).

The facts presented in Henderson are analogous to the facts in the instant case. Here, Plaintiffs have specifically alleged that Home Depot's decision-making process in managing the Plan was faulty and tainted by imprudence because the decision-making process allowed for the retention of chronically poor performing investments when there were better investments available to the Plan. [Doc. 53 at ¶¶ 166-172].

Although Plaintiffs have not identified the specific flaws in Home Depot's decision-making process, the Court acknowledges that Plaintiffs would likely have no access to Home Depot's particular decision-making process at this stage of the litigation.  In circumstances such as this, courts have held that plaintiffs may rely on circumstantial factual allegations to show a flawed process—particularly one that

involves the fiduciaries management of underperforming investments. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718-719 (2d Cir. 2013) (holding plaintiffs may state claim with "circumstantial factual allegations" that the decision-making process was flawed, including "that a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative"); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) (noting that plaintiffs need not allege specific facts about decision-making process if they show poor investment performance).

In support of their claim, Plaintiffs point to circumstantial evidence that the Plan's investment funds consistently underperformed other comparative funds relative to their benchmarks while imposing higher management fees. [Doc. 53 at ¶¶ 81-85, 92-97, 99-103, 109-151].  Additionally, Plaintiffs cite a number of legal and financial issues that they claim would have alerted a prudent fiduciary to the deficiencies in the investment choices that remained in the Plan. [Doc. 53 at ¶¶ 94 (poor rating on the Stephens Small Cap Growth fund by an independent agency), 99-100 (JPMorgan's legal troubles)].  In response, Home Depot contends that Plaintiffs' allegations are insufficient because they do not cite the actual

performance data or present "meaningful benchmarks."[1]    [Doc. 59-1 at 12-15].
Home Depot cites a recent Eighth Circuit case, *Meiners v. Wells Fargo & Co.*, 898
F.3d 820 (8th Cir. 2018), to support this proposition.

In *Meiners*, the Eight Circuit addressed an ERISA claim of a breach of the
fiduciary duty of prudence based on allegations of underperformance and higher
fees.  There, the court reasoned that there was no claim where the plaintiff alleged
that one other investment fund performed better than the defendant's fund and
offered no benchmark because "[t]he fact that one fund with a different investment
strategy ultimately performed better does not establish anything about whether [the
investment choices] were imprudent[.]" *Id*. at 823.  The Eight Circuit, however,
cautioned that the "ultimate conclusions rest on the totality of the specific allegations
in th[e] case." *Id*. at 822 (quoting *Braden*, 588 F.3d at 596 n.7).

Home Depot asks this Court to apply *Meiner* to dismiss Count I of Amended
Complaint. [Doc. 67 at 5-6].  However, this Court is unconvinced that Plaintiffs'
factual allegations of performance data and benchmarks could not lead to a
reasonable inference of imprudence in Home Depot's decision-making process.  The
Court notes that the Eighth Circuit in *Meiner* acknowledged that "ERISA

---

[1]  Plaintiffs allege that some of these funds do not publicly disclose their performance data and
instead cite composites that merely give an indication of the actual performance.  [Doc. 53 at ¶¶
78, 88, 111].

plaintiffs…typically lack extensive information regarding the fiduciary's methods and actual knowledge because those details tend to be in the sole possession of that fiduciary." *Meiner*, 898 F.3d at 822 (internal quotation marks omitted) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013)).  As the decision-making process by which Home Depot managed the Plan involves an inquiry into Home Depot's specific methods and knowledge that Plaintiffs have not yet had access to, this Court agrees with Plaintiffs that the disposition of Count I is improper at this stage of the litigation. Plaintiffs have alleged high fees, chronic underperformance against benchmarks and comparable funds, and specific legal and financial warning signs as circumstantial evidence of the imprudence of Home Depot's management of the Plan.  These facts could support the reasonable inference that a prudent fiduciary would have made different decisions in managing the Plan's investments.

Under the circumstances of this case, the Court finds that Plaintiffs have stated a plausible ERISA claim for breach of the duty of prudence by sufficiently alleging that Home Depot utilized an imprudent decision-making process in managing the Plan's investment funds.  Accordingly, the Home Depot's motion to dismiss is **DENIED** as to Count I of the Amended Complaint.

B. <u>Home Depot's Duty of Loyalty and Prudence in selecting and failing to monitor FEA and AFA</u>

In Count II of the Amended Complaint, Plaintiffs allege that Home Depot breached its duty of prudence under 29 U.S.C. § 1104(1)(B) by selecting FEA and AFA to provide investment advisory services to the Plan participants and then failing to monitor FEA and AFA to ensure that the services they provided were meeting the needs of the Plan participants.[2] Specifically, Plaintiffs allege that Home Depot's failure to monitor the services provided by FEA and AFA allowed FEA and AFA to charge expensive asset-based fees and to engage in a "reverse churning" scheme, which neglected the needs of the Plan participants and benefitted Home Depot by defraying the expenses of administering the Plan.  As a result of this allegedly imprudent process, Plaintiffs allegedly suffered damages and lost-opportunity costs. [Doc. 53 at ¶¶ 176-186].

In its motion to dismiss, Home Depot argues that Plaintiffs' allegation that there were cheaper investment advisement service alternatives readily available is insufficient to state an ERISA claim for breach of the duty of prudence, absent any allegations showing an abuse of discretion in Home Depot's decision-making

---

[2]   In Count II, Plaintiffs also asserted that Home Depot breached its duty of loyalty under 29 U.S.C. § 1104(1)(A), but Plaintiffs withdrew their breach of loyalty claim at the hearing on the motions to dismiss. [See Doc. 72, Transcript of hearing at pp. 42-44].

process.  Home Depot further argues that Plaintiffs fail to allege an improper conduct on its part. [Doc. 59-1 at pp.16-21].   However, Plaintiffs' do not rely solely upon the allegation of cheaper investment options to show that Home Depot's decision-making process was imprudent.  [Doc. 59-1 at 16-20].

As discussed above, ERISA requires that the fiduciary engage in a prudent decision-making process when providing investment options for its retirement plan participants.   As a fiduciary under ERISA has a continuing duty to monitor investments and remove imprudent ones, *see Tibble*, 135 S.Ct. at 1828 (2015), it follows that a fiduciary likewise has a continuing duty to monitor its investment advisors and remove imprudent ones.  However, a claim for breach of that duty of prudence requires the plaintiff to make some factual allegations that would lead to an inference that the fiduciary's decision-making process in that regard was imprudent.  *See Meiner*, 898 F.3d at 822; *Henderson*, 252 F. Supp. 3d at 1351. Again, Plaintiffs may rely on circumstantial factual allegations to show a flawed process. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d at 718-19 (2d Cir. 2013).

Here, Plaintiffs allege that Home Depot breached its duty of prudence in retaining FEA and AFA as investment advice providers because (1) comparable firms charged lower fees, (2) lower fees were offered to participants in other comparable plans, (3) Home Depot failed to conduct competitive bidding [Doc. 53

at ¶¶ 45-52], (4) the investment options provided imposed duplicative advisory fees, (5) the Plan's Recordkeeper received "kick-backs" that unreasonably increased the advisory fees that were charged to the Plan participants [*Id*. at ¶¶ 60-64], and (5) Home Depot allowed FEA and AFA to engage in a self-dealing, "reverse churning" scheme which neglected the basic needs of the Plan participants and benefitted Home Depot by defraying the expenses of administering the Plan [*Id*. at ¶¶ 176-186; *see also* ¶ 208]. Although Home Depot argues that FEA and AFA's services were optional for the Plan participants [Doc. 59-1 at p. 2], Plaintiffs allege that Home Depot encouraged its employees to use FEA and AFA's services [Doc. 53 at ¶ 39].

As the decision-making process by which Home Depot retained FEA and AFA as the investment advisors for the Plan involves an inquiry into Home Depot's specific methods and knowledge that Plaintiffs have not yet had access to, this Court finds that the disposition of Count II is improper at this stage of the litigation. Taking into consideration all of the circumstantial factual allegations surrounding Home Depot's retention of FEA and AFA as the investment advisors, the Court finds that Plaintiffs have alleged sufficient facts to support an inference of an imprudent decision-making process. For these reasons, Home Depot's motion to dismiss is **DENIED** as to Count II of the Amended Complaint.

C.  Home Depot's Duty of Prudence in Monitoring Other Fiduciaries

As a derivative of Counts I and II, Plaintiffs allege in Count VI that Home Depot had a duty to monitor the performance of any individual to whom it delegated any fiduciary responsibilities regarding the Plan. [Doc. 53 at ¶¶ 210-213].  In their Amended Complaint, Plaintiffs allege that Home Depot delegated fiduciary functions to the Investment Committee and the Administrative Committee. [*Id*. at ¶¶ 16-17, 19].  These Committees consist of members (designated as Does 1-30 because they are not yet known to Plaintiffs) to whom the Committees may have delegated fiduciary functions.   To the extent that the Committees delegated any of their fiduciary functions to another unknown person or entity, that person or entity is also alleged to be a Doe Defendant. [*Id.* at ¶ 18].  Further, Plaintiffs allege facts detailing precisely the ways in which said Defendants failed to monitor appointees, including, for example, that Home Depot lacked a "system in place" for monitoring. [*Id.* at ¶¶ 214-215. The Court finds that this is sufficient to state a claim. *See, e.g.*, *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012) (similar allegations sufficient to state monitoring claim); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV151614JLSJCGX, 2016 WL 4507117, at *7 (C.D. Cal. Aug. 5, 2016) (same).  Just as Plaintiffs' primary claims in Counts I and II survive, the derivative monitoring claim in Count VI also survives.

For the above reasons, Home Depot's motion to dismiss is **DENIED** as to Count VI of the Amended Complaint.

D.  FEA's and AFA's Duty of Loyalty and Prudence in Providing Services

In Counts III and IV, respectively, Plaintiffs contend that FEA and AFA breached their duties of loyalty and prudence in providing investment advice by improperly charging excessive fees, making no effort to determine whether the asset based fee arrangement was in the participants' best interest, failing to perform ongoing assessments of the Plan participants' lifestyles or financial situation to determine if their current investment strategies remained in their best interest, and failing to respond to attempted communication or otherwise make themselves readily available to the Plan participants. [Doc. 53 at ¶¶ 188-193, 197-202]. Essentially, Plaintiffs' are alleging that FEA and AFA charged too much for the level of investment advisory services they provided.

In their respective motions to dismiss, FEA and AFA contend that they cannot be held liable for any fiduciary breach with regard to their fees because they did not act as fiduciaries with respect to negotiating or collecting their fees.  ERISA provides that a person or entity is a fiduciary only "to the extent" it engages in certain fiduciary functions.  *See* 29 U.S.C. § 1002(21)(A).  "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of

some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person…was performing a fiduciary function when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).

Here, Plaintiffs do not allege that FEA and AFA functioned as fiduciaries in any capacity other than by "providing investment advice," [Doc. 53 at ¶¶ 20-21, 188, 197], yet they fail to allege facts sufficient to show that FEA and AFA breached their fiduciary duties to provide investment advice.

Instead, Plaintiffs allege fiduciary breaches arising out of FEA's and AFA's negotiation and collection of their fees. Such allegations are insufficient. It is well established that a service provider does not become a fiduciary simply by negotiating its compensation in an arm's-length bargaining process—particularly where, as here, the service provider is not alleged to have had the ability to determine or control the actual amount of its compensation. *See, e.g.*, *Fleming v. Fid. Mgmt. Tr. Co.*, No. 16-cv-10918, 2017 WL 4225624, at *7 (D. Mass. Sept. 22, 2017); *Patrico v. Voya Fin., Inc.*, No. 16-cv-7070, 2017 WL 2684065, at *4 (S.D.N.Y. June 20, 2017). Therefore, FEA and AFA did not function as a fiduciary with respect to its fees.

Plaintiff's remaining allegations with respect to FEA and AFA pertain to allegedly inadequate customer service. FEA and AFA contend that they were not fiduciaries with respect to Plaintiffs' allegations regarding inadequate customer

service because such ministerial actions do not confer fiduciary status. *See Harley v. Bank of N.Y. Mellon*, No. 15-cv-8898, 2017 WL 78901, at \*24 (S.D.N.Y. Jan. 9, 2017). [Doc. 57-1 at pp. 10-11; Doc. 58-1 at pp. 10-11].  Plaintiffs respond that such actions were part and parcel of FEA's fiduciary duty to provide investment advice. [Doc. 63 at pp. 10-11; Doc.64 at pp. 8-9].  However, FEA and AFA's duty to provide prudent investment advice does not extend to providing flawless customer service. *Cf. Harley*, 2017 WL 78901, at \*24; *Prudential Ins. Co. of Am. v. Chumney*, No. 1:08-cv-474, 2012 WL 4069244, at \*5 (M.D. Ala. Sept. 14, 2012).  Here, Plaintiffs have failed to connect any supposed customer service failure with any resulting breach of FEA's fiduciary duty to provide investment advice.

For the above reasons, the Court finds that Plaintiffs have failed to state a claim against FEA in Count III and, likewise, failed to state a claim against AFA in Count IV.  Accordingly, FEA's motion to dismiss [Doc. 58] is **GRANTED** as to Count III and AFA's motion to dismiss [Doc. 57] is **GRANTED** as to Count IV.

D.  Prohibited Transactions

In Count V of the Amended Complaint, Plaintiffs allege that FEA and AFA violated 29 U.S.C. § 1106(b)(1) and (b)(2), which prohibits ERISA fiduciaries from engaging in "self-dealing" and taking any action on behalf of a party that is adverse to the interests of the Plan or its participants.  Specifically, Plaintiffs allege that FEA

and AFA engaged in a "reverse churning" scheme in which they "promoted asset-based fees for accounts with low trading activity and no need for monitoring or advice as a means of promoting their profits at the expense of participants."  [Doc. 53 at ¶ 208].

Apparently, Plaintiffs are attempting to advance the theory that by charging asset-based fees for low maintenance accounts, FEA and AFA have engaged self-dealing. However, § 1106(b)'s purpose is to prohibit transactions that improperly benefit the fiduciary or adversely affect the Plan or its participants, not to prevent fiduciaries from being paid for their work. *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17-cv-679, 2018 WL 1384300, at *13 (N.D. Ill. 2018).  Furthermore, Plaintiffs fail to identify any transaction that violates § 1106(b), and FEA and AFA's collection of previously negotiated and agreed-upon fees, without more, does not satisfy the elements of that section.

For the above reasons, the Court finds that Plaintiffs have failed to state a claim against FEA and AFA in Count V of the Amended Complaint.  Accordingly, FEA's and AFA's respective motions to dismiss [Doc. 58; Doc. 57] are **GRANTED** as to Count V.

18

## IV.   CONCLUSION

Upon the Court's consideration of the pleadings, arguments of counsel, and all appropriate matters of record, it is hereby ORDERED that AFA's Motion to Dismiss [Doc. 57] is **GRANTED** and that FEA's Motion to Dismiss [Doc. 58] is **GRANTED**. Accordingly, all claims asserted in the Amended Complaint against FEA and AFA are DISMISSED WITH PREJUDICE.  It is further ORDERED that Home Depot's Motion to Dismiss [Doc. 59] is **DENIED**.

**IT IS SO ORDERED**, this 20th day of September, 2019.

_____
WILLIAM M. RAY, II
United States District Judge
Northern District of Georgia