IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| JAIME H. PIZARRO, CRAIG ) | | |
| SMITH, JERRY MURPHY, ) | | |
| RANDALL IDEISHI, GLENDA ) | | |
| STONE, RACHELLE NORTH, ) | | |
| MARIE SILVER, and GARTH ) | | |
| TAYLOR on behalf of themselves ) | | |
| and all others similarly situated, ) | CIVIL ACTION FILE | |
| ) | No. 1:18-cv-01566-WMR | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| THE HOME DEPOT, INC.; THE ) | | |
| ADMINISTRATIVE ) | | |
| COMMITTEE OF THE HOME ) | | |
| DEPOT FUTUREBUILDER ) | | |
| 401(K) PLAN; THE ) | | |
| INVESTMENT COMMITTEE OF ) | | |
| THE HOME DEPOT ) | | |
| FUTUREBUILDER 401(K) PLAN; ) | | |
| AND DOES 1-30, ) | | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |

**[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

This matter is before the Court on Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (Doc. 98). Based on the reasoning below, Plaintiffs' motion is **DENIED**.

## I.   FINDINGS OF FACT.

### A.   The Plan and Financial Engines.

Defendant The Home Depot, Inc. ("Home Depot") sponsors a defined contribution 401(k) plan for its employees called The Home Depot FutureBuilder ("the Plan"). (Amend. Compl. (Doc. 53) ("AC") ¶¶ 1, 15). Defendant The Investment Committee of the Home Depot FutureBuilder ("the Investment Committee") is a named fiduciary of the Plan responsible for overseeing the Plan's investment options. (*See* 2016 Plan Document (Doc. 98-4) at §§ 11.9–11.10). Defendant The Administrative Committee of the Home Depot FutureBuilder ("the Administrative Committee") is a named fiduciary of the Plan responsible for overseeing the Plan's administration. (*Id.* at § 11.3(a)). Together, Home Depot, the Investment Committee, and the Administrative Committee are referred to herein as "The Home Depot Defendants" or "Defendants." Plaintiffs are current and former participants in the Plan. (AC ¶¶ 7–14).

The Plan permits eligible employees to make contributions to individual accounts within the Plan on a tax-advantaged basis, with Home Depot making

certain matching contributions. (*See* 2016 Plan Document (Doc. 98-4)). Participants choose from a menu of investment options in which to invest their Plan contributions. (*See id.* ¶ 7.2).

To assist participants with managing their Plan investment options, Home Depot offers optional investment advisory services from Financial Engines, a third-party vendor. (*See* AC ¶ 34; Answer to Am. Compl. (Doc. 75) ("Answer") ¶ 34). Financial Engines takes information provided by participants who enroll in its service and uses proprietary algorithms to construct a retirement portfolio from the available Plan investment options based on the participants' individual circumstances and preferences. (*See* AC ¶ 35; Answer ¶ 35; Tetrick Decl. (Doc. 118-1), Ex. 5 (Financial Engines, Part 2A of Form ADV: Firm Brochure (Mar. 31, 2018))).

Plan participants also can use an "Online Advice" program, through which Financial Engines provides its investment recommendations at no additional cost to the participant. (*See* Tetrick Decl. (Doc. 118-1), Ex. 5 (Financial Engines, Part 2A of Form ADV: Firm Brochure (Mar. 31, 2018)) at 4–5). For a fee, a participant can voluntarily enroll in a "Professional Management" program, in which Financial Engines monitors the participant's account and makes investment decisions. (*See* AC ¶¶ 34–35; Answer ¶¶ 34–35). For both Online Advice and the

3

Professional Management program, Financial Engines bases its investment advice on a variety of individualized factors, including a participant's age, risk tolerance, preference for company stock, outside investments, and any expected pensions. (Tetrick Decl. (Doc. 118-1), Ex. 5 (Financial Engines, Part 2A of Form ADV: Firm Brochure (Mar. 31, 2018)) at 6).

From the start of the putative class period on April 12, 2012 through June 30, 2017, Financial Engines provided these services directly to participants.  (*See* AC ¶ 35; Answer ¶ 35).  Starting July 1, 2017, Financial Engines provided these services to participants through a sub-advisory agreement with Alight Financial Advisors ("AFA").  (*See* AC ¶ 35; Answer ¶ 35).

### B.    Plaintiffs' Claims and Motion for Class Certification.

Plaintiffs' Amended Complaint contains two primary claims against The Home Depot Defendants.  First, Plaintiffs allege that The Home Depot Defendants breached their fiduciary duties to the Plan under 29 U.S.C. § 1104 by failing to prudently monitor and remove certain Plan investment options that performed poorly relative to other available investment options.   (AC ¶¶ 160–75).   The investment options that Plaintiffs allege were imprudent are: (1) the TS&W Small Cap Value Fund; (2) the Stephens Small Cap Growth Fund; (3) the JP Morgan

Stable Value Fund; and (4) a suite of eight BlackRock target date funds (collectively, the "Challenged Funds").  (AC ¶¶ 168–71).

Second, Plaintiffs allege that The Home Depot Defendants breached their fiduciary duties to the Plan under 29 U.S.C. § 1104 by failing to prudently monitor the investment advisory services offered by Financial Engines and AFA through the Professional Management program.[1]  (AC ¶¶ 176–86).  Plaintiffs argue that The Home Depot Defendants failed to meet their duties because the fees charged by Financial Engines and AFA were "excessive in light of the nature and quality of the services provided."  (Pls.' Mem. in Supp. of Class Cert. (Doc. 98-1) ("Pls.' Br.") at 11).[2]

In their motion for class certification (Doc. 98), Plaintiffs ask the Court to certify three classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1):

1. A "Challenged Funds Class" of all Plan participants and beneficiaries, excluding Defendants, who invested in any of the investment options challenged by Plaintiffs at any time from April 12, 2012 through the date of judgment.

---

[1] Plaintiffs also alleged that The Home Depot Defendants' retention of Financial Engines and AFA breached their duty of loyalty, but they abandoned this claim at the motion to dismiss hearing.  (*See* Doc. 74 (Sept. 20, 2019 Order) at 11 n.2).

[2] Plaintiffs also allege a speculative claim that The Home Depot Defendants breached their duty to monitor other individuals to whom they may have delegated fiduciary duties.  (AC ¶¶ 210–16).

2. A "FE Class" of all Plan participants and beneficiaries, excluding Defendants, for whom Financial Engines performed investment advisory services through the Professional Management program at any time from April 12, 2012 through the date of judgment.

3. An "AFA Class" of all Plan participants and beneficiaries, excluding Defendants, for whom AFA performed investment advisory services through the Professional Management program at any time from April 12, 2012 through the date of judgment.

(Pls.' Br. at 1; Pls.' Reply in Supp. of Class Cert. (Doc. 119) ("Pls.' Reply") at 7 n.6).

Plaintiffs also requested that the Court appoint named Plaintiffs Craig Smith, Randall Ideishi, Rachelle North, and Garth Taylor as class representatives of the Challenged Funds Class; named Plaintiffs Jaime Pizarro, Glenda Stone, Marie Silver, and Garth Taylor as class representatives of the FE Class; and named Plaintiffs Jerald Murphy, Glenda Stone, and Marie Silver as class representatives of the AFA Class. (Pls.' Br. at 12). Finally, Plaintiffs request that the Court appoint Sanford Heisler Sharp, LLP and Blumenthal Nordrehaug Bhowmik De Blow LLP as Class Counsel for all three classes. (*Id.* at 2).[3]

---

[3] Since Plaintiffs filed their motion, Plaintiff Garth Taylor moved for voluntary dismissal of all his claims, which the Court granted. (Doc. 134). Plaintiff Marie Silver withdrew as a class representative during her deposition. (*See* Defs.' Opp. to Class Cert. (Doc. 118) ("Defs.' Br.") at 11; Tetrick Decl. (Doc. 118-1), Ex. 4 (Silver Dep. Tr.) at 98:3–113:8); *see also* Praecipe to Modify Motion for Class Certification (Doc. 123). Thus, neither Plaintiff Taylor nor Plaintiff Silver will be considered as potential class representatives.

### C.     The Home Depot Defendants' Opposition to Class Certification.

The Home Depot Defendants oppose certification of all three of Plaintiffs' proposed classes.   (Doc. 118).   With respect to the FE and AFA Classes, Defendants contend that Plaintiffs' claims—that the fees charged by Financial Engines and AFA were "excessive in light of the nature and quality of the services provided"—present an inherently individualized and subjective analysis. Accordingly, Defendants argue, neither class meets the requirements of Rule 23(a) or any subsection of Rule 23(b).   Defendants contend that Plaintiffs' claims concerning the Challenged Funds Class, which span eleven different funds offered in the Plan over a proposed class period starting eight years ago, likewise present individualized questions of liability that fail to meet any subsection of Rule 23(b), and even if broken into subclasses could not be certified.

Defendants deposed all of Plaintiffs' proposed class representatives (except Garth Taylor, who has since been dismissed), including those for the FE and AFA Classes:  Jaime Pizarro, Glenda Stone, Jerald Murphy, and Marie Silver.  All four (initially) proposed representatives offered starkly different testimony about whether the fees they paid to Financial Engines were justified by "the nature and quality of the services provided."   As to the first aspect of this claim, each proposed representative gave different testimony regarding what they thought was

deficient about Financial Engines' services.   Plaintiff Pizarro claimed that Financial Engines was not "doing the things that [he] had contracted or hired them to do," in particular regarding his risk preference for his account (but admitted at his deposition that Financial Engines had, in fact, decreased his risk tolerance upon his request).   (Tetrick Decl. (Doc. 118-1), Ex. 1 (Pizarro Dep. Tr.) at 186:13–187:19).   Plaintiff Silver expressed frustration with Financial Engines for advising her against a more aggressive profile as she neared normal retirement age.   (*Id.*, Ex. 4 (Silver Dep. Tr.) at 175:24–176:13).   Plaintiff Murphy testified that the substantially higher fees he now pays to his investment advisor are "fair" because that advisor, unlike Financial Engines, calls him on a regular basis.   (*Id.*, Ex. 3 (Murphy Dep. Tr.) at 100:18–101:11, 230:20–235:10).   Plaintiff Stone, meanwhile, could not identify any basis for her claim that the fees were too high—aside from the information she learned from counsel—and in fact testified that she continues to use Financial Engines because "it's important that somebody who knows what they're doing makes the decisions versus" herself.   (*Id.*, Ex. 2 (Stone Dep. Tr.) at 113:20–116:19; 218:24–220:22).[4]

Regarding the second aspect of the claim, the proposed representatives also gave conflicting assessments of the value of the services they received.   Despite

[4] Defendants have filed motions for summary judgment, which remain pending, on the claims brought by these four Plaintiffs.   (*See* Docs. 130, 131, 132, 133).

the fact that he enjoyed a return of 17.4% on his Plan investments (as compared to a 10.9% return on his current plan), Plaintiff Pizarro testified that the grand total of $3.87 he paid in fees was excessive because the investment advice he received was worth "zero dollars," (*see* Tetrick Decl. (Doc. 118-1), Ex. 1 (Pizarro Dep. Tr.) at 171:19–174:21; 186:13–15; 217:1–15). Plaintiff Silver testified that the services she received were worth "somewhere between zero and $13 a month." (*Id.*, Ex. 4 (Silver Dep. Tr.) at 357:6–360:13).  Plaintiff Murphy, for his part, maintained that the fees he paid to Financial Engines were too high, but testified that the 300% higher fees he now pays to an investment advisor are "fair." (*Id.*, Ex. 3 (Murphy Dep. Tr.) at 95:13–101:20; 230:20–235:10). Plaintiff Stone conceded that the services she received from Financial Engines—which she continues to use to the present date—were "probably" worth the fees she paid (*id.*, Ex. 2 (Stone Dep. Tr.) at 217:2–220:22).

## II.   CONCLUSIONS OF LAW

### A.   Standard for Class Certification

"For a class to be certified, the named plaintiff must have standing and the putative class must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) and the requirements found in one of the subsections of Rule 23(b)."  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019).

Federal Rule of Civil Procedure 23(a) provides that members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Under Federal Rule of Civil Procedure 23(b), a class action may be maintained only if Rule 23(a) is satisfied *and* the class can be appropriately certified under one of the subsections of Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(1) or Rule 23(b)(3), which allow for certification where:

> 1.    prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests (Fed. R. Civ. P. 23(b)(1)); or

> 2.    the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (Fed. R. Civ. P. 23(b)(3)).

Additionally, every class must also be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted).

Rule 23 is not "a mere pleading standard." Rather, the "party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted). Indeed, the Supreme Court requires a "rigorous analysis" in assessing motions for class certification, which "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. The party seeking certification must show that the requirements of the Rule "are in fact" met. *Id.* at 350. If "a question of fact or law is relevant" to class certification, "then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's a favor." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).

"All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.* at 1233. If "[a] district court . . . has doubts about whether" the movant has met the requirements of Rule 23, it "should refuse certification until they have been met." *Id.* at 1233–34 (citation omitted).

**B.** **Plaintiffs Have Failed to Prove that the FE and AFA Classes Can Be Certified Under Rule 23.**

First, the Court concludes that Plaintiffs have failed to meet their burden of offering evidentiary proof that the FE and AFA Classes meet the requirements of Rule 23(a), or that they satisfy any subsection of Rule 23(b).

        1.    <u>Plaintiffs Have Not Established that the FE or AFA Classes Satisfy Rule 23(a).</u>

Plaintiffs have not met their burden of demonstrating, through evidentiary proof, that the FE or AFA Classes meet Rule 23(a)'s well-settled commonality, typicality, and adequacy requirements.

        i)    *Commonality*

Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." The commonality requirement "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350 (citation omitted). Plaintiffs do not meet Rule 23(a)(2) through "the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

Plaintiffs argue that questions common to each class include: (1) whether each Defendant is a fiduciary; (2) whether Defendants' conduct breached their

fiduciary duties to the Plan; (3) whether the Plan suffered resulting injury; (4) how to calculate the Plan's losses; and (5) what equitable relief should be imposed to remedy the breaches and prevent future ERISA violations. (Pls.' Br. at 11). Plaintiffs further argue that additional questions common to the FE and AFA Classes include whether: (1) the fiduciaries properly monitored the quality of the services provided; and (2) "the investment advisory fees charged by FE and AFA [were] excessive in light of the nature and quality of the services provided." (*Id.*)

Defendants contend that this last "common" question—whether the fees charged by Financial Engines and AFA were "excessive in light of the nature and quality of the services provided"—is a necessary element of Plaintiffs' ERISA claims because, in addition to proving a breach of fiduciary duty, Plaintiffs must also prove loss and causation. (Defs.' Br. at 1–2 & n.3). And with respect to this necessary element, Defendants argue, Plaintiffs have failed to meet their burden of providing a clear, objective standard for determining whether and how each class member overpaid for the Professional Management program. (*See* Defs.' Br. at 9–14). As support, Defendants point out that the proposed class representatives for the FE and AFA Classes offer very different assessments of the services and value they obtained from using the Professional Management program. (*See id.* at 11–13). In short, Defendants contend that if the proposed representatives of the FE

and AFA Classes cannot agree on the underlying basis of the purported class claim—or even whether they overpaid for Professional Management and incurred a loss at all—the Court must assume that the same questions will find no common answers when examined on a classwide basis.

Plaintiffs respond that the question of whether Financial Engines and AFA charged excessive fees "in light of the nature and quality of the services provided" can be resolved on a classwide basis by simply comparing the Professional Management program to what Plaintiffs contend are "services of a similar nature offered by other investment advisors" or through comparison to the fees Financial Engines and AFA charged to other comparable defined contribution plans.  (*See* Pls.' Reply at 2–5).  Although Plaintiffs fail to identify any particular services or how they would be, in fact, comparable.

Having considered the Parties' arguments, the Court concludes that Plaintiffs have not shown that the members of the proposed FE and AFA Classes "have suffered the same injury" to support commonality.  *Dukes*, 564 U.S. at 350 (citation omitted).  In particular, the Court agrees that Plaintiffs have failed to offer a clear, objective standard for determining, on a classwide basis, whether and how the proposed FE and AFA class members overpaid for Financial Engines "in light of the nature and quality of the services provided."

14

To start, the Court does not view Plaintiffs' claims as analogous to those in other ERISA class actions alleging poor investment performance or excessive recordkeeping fees. As Defendants note, plan participants in those contexts share an identical harm: they are uniformly impacted by the performance of the same investments or pay the same fees for the same uniform services. The dissimilarity among class members in those cases relates to the extent of the harm they allege to have suffered (*i.e.*, the amount of damages), not whether the nature of the harm they allege to have suffered is the same. By contrast here, while all members of the FE and AFA Classes received investment advice, the "nature and quality" of that advice depended on their personal circumstances and the information they provided Financial Engines. (*See* Defs.' Br. at 13–14).

In other words, each Plan participant received different investment advisory services from Financial Engines. Plaintiffs consequently cannot point to the mere fact that all members of the FE and AFA Classes used Financial Engines as a basis for commonality. Rather, Plaintiffs must offer a clear and objective means for the Court to determine, on a classwide basis, whether all proposed class members paid fees that were excessive in light of the nature and quality of the services they received.

15

Plaintiffs have not done so.   Indeed, the only evidence Plaintiffs have offered to support certification of the FE and AFA Classes is the proposed class representatives' unique experiences with and subjective impressions of the Professional Management program.   (*See supra* at 7–9).   As Defendants note, their experiences varied significantly:   the proposed class representatives appear to disagree on what exactly was deficient with the services provided by Financial Engines, and even on whether they overpaid for those services at all.   (*See id.*) And on the question of quality, some of the proposed class representatives, like Pizarro, were forced to acknowledge that the facts forming the basis of their claims were, in fact, not true.   As other courts have observed, such subjective, self-professed valuations of a product or service are not valid bases for making classwide adjudications because they give rise to inherently individualized inquiries.   *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015); *Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930, at *8 (C.D. Cal. Dec. 18, 2014).

Plaintiffs go so far as to claim that the experiences of the proposed class representatives are essentially irrelevant; that is, they contend that the answers to the common questions identified in their motion are "not dependent on the particular circumstances of any one participant." (Pls.' Br. at 11).   But this cannot

16

be squared with Plaintiffs' acknowledgement elsewhere that they seek to represent "Plan participants and beneficiaries *harmed* by the fiduciary breaches" or seek relief for the "benefit of *affected* participants."   (*Id.* at 4, 6 (emphasis added)). Whether a participant is harmed by fiduciary breaches like those alleged by Plaintiffs certainly is dependent on that participant's particular circumstances.   For example, a participant who is satisfied with the fees paid to and services received from Financial Engines can in no way be said to be harmed by that relationship.

Therefore, the Court finds Plaintiffs' proposed methods for assessing injury to the FE and AFA Classes on a classwide basis to be unpersuasive.   First, Plaintiffs argue that Financial Engines' and AFA's fees can be determined as "excessive" through "an objective comparison of the services provided by FE and AFA to services of a similar nature offered by other investment advisors."  (Pls.' Reply at 2).   But Plaintiffs do not offer any evidence of which services are purportedly comparable and why, or what this comparison would show. Regardless, this does not address that the FE and AFA Class members received different investment services from Financial Engines.   Nor does it address the question that Plaintiffs must prove on a classwide basis to establish the necessary elements of loss and causation: whether the fees charged by Financial Engines were excessive "in light of the nature and quality of the services they provided" to

members of the putative FE and AFA Classes.  Put differently, at least one side of the comparison—what the class members actually received from Financial Engines—would still be individualized.  And the disparate testimony of the proposed representatives of the FE and AFA Classes demonstrates this.

Second, Plaintiffs assert that the excessiveness of Financial Engines' and AFA's fees could be determined through "an objective comparison of the services FE and AFA provided to Plan members to those FE and AFA provided to participants in other comparable plans."  (Pls.' Reply at 2).  But as noted above, Financial Engines' services are tailored to each participant's individual circumstances.  It is thus difficult to see—and Plaintiffs have failed to explain— how Plaintiffs could offer an "objective" comparison of these personalized services on a plan-by-plan basis, where every plan is comprised of varied participants receiving different investment services and advice from Financial Engines.  In any event, it is Plaintiffs' burden to show such an objective comparison is possible, and Plaintiffs have offered no proof that this is the case, pointing instead to bare allegations in their Amended Complaint.  That is not enough to satisfy Rule 23. *See Dukes*, 564 U.S. at 350–51 (party must show certification requirements are *in fact* met).  Indeed, the only evidence before the Court at this time—the disparate

testimony of the proposed FE and AFA Class representatives—tends to show the opposite.

Rule 23 does not contain an ERISA exception.  Again, the party seeking class certification must offer *evidentiary proof* that it complies with the Rule 23 elements.  *Dukes*, 564 U.S. at 350–51.  That means that the evidence offered by the proposed class representatives of their varied experiences with Financial Engines must be evaluated under Rule 23.  As things stand, Plaintiffs have not met their burden of offering evidentiary proof establishing on an objective, classwide basis that the FE and AFA Classes are unified by the same injury.  As a consequence, Plaintiffs have failed to establish commonality for the FE and AFA Classes under Rule 23(a)(2).

ii)    *Typicality*

To satisfy Rule 23(a)'s typicality requirement, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).  Unique defenses to a class representative's claim may defeat typicality.

*Ross v. Bank South, N.A.*, 837 F.2d 980, 990 (11th Cir. 1988), *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988).  Likewise, where the class is defined so broadly that not all members have been injured by the at-issue conduct, that nexus does not exist, and the representatives' claims are not, therefore, typical of (or adequate for) the class.  *See Spano v. The Boeing Co.*, 633 F.3d 574, 586–87 (7th Cir. 2011).

Here, the same issues that preclude a finding of commonality for the FE and AFA Classes also preclude typicality.  To begin, the Court notes that certain of the class representatives' deposition testimony gives rise to unique defenses that would need to be resolved by individual fact finding.  For example, the FE and AFA Classes allege that the Professional Management services are not worth the fees charged, but Plaintiff Stone agreed that the fees she paid for advisory services were "probably" worth the services she continues to receive to this day.  (Tetrick Decl. (Doc. 118-1), Ex. 2 (Stone Dep. Tr.) at 217:2–220:22).  Similarly, Plaintiff Pizarro testified that his claim was based, in part, on his belief that Financial Engines had not carried out his directions, but when confronted with documents at his deposition he admitted it had.  (*Id.*, Ex. 1 (Pizarro Dep. Tr.) at 186:13–187:19).

Further, as noted above, Plaintiffs have not demonstrated that their alleged injuries from using Financial Engines can be assessed on an objective, classwide

basis.  And the remaining proposed FE and AFA class representatives (Murphy, Pizarro, and Stone) likewise each ascribed different values to and complained of different problems with the services they received from Financial Engines.  (*See supra* 7–9).  Based on the evidence before the Court, Plaintiffs have failed to establish that there is a "sufficient nexus" between the proposed representatives' claims and those of the class.  *Prado-Steiman*, 221 F.3d at 1278.

iii)  <em>Adequacy</em>

Finally, to meet Rule 23(a)'s adequacy requirement, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy requires that "the class representative has common interests with unnamed class members."  *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

For reasons explained above, Plaintiffs have failed to offer evidentiary proof establishing that the proposed class representatives share the "common interests with the unnamed class members" needed to support a finding of adequacy.  At bottom, there is an intra-class conflict even among the class representatives as to the value and worth of the Professional Management services.  For example, Plaintiff Stone testified that she continues to use the Professional Management program today, making her an ill-suited candidate for representing a class

challenging that optional program as unreasonably overpriced.  (*See* Tetrick Decl. (Doc. 118-1), Ex. 2 (Stone Dep. Tr.) at 217:2–219:8).  Plaintiffs have failed to establish adequacy for the FE and AFA Classes under Rule 23(a)(3).

2.      <u>Plaintiffs Have Not Established that the FE or AFA Classes<br>Satisfy Any Subsection of Rule 23(b).</u>

Plaintiffs' failure to satisfy the requirements of Rule 23(a) is a sufficient basis to deny class certification of the FE and AFA Classes.  But Plaintiffs' proposed FE and AFA Classes fail for the additional reason that they have failed to satisfy any subsection of Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(1) or, alternatively, Rule 23(b)(3).  The Court concludes Plaintiffs have not established that the FE or AFA Classes meet either subsection.

i)      *Rule 23(b)(1)*

Rule 23(b)(1) applies only where "prosecuting separate actions by or against individual class members would create a risk of" either (1) inconsistent adjudications "that would establish incompatible standards of conduct for the party opposing the class," or (2) individual adjudications that "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(A), (B).

22

Because members cannot opt out of a class certified under Rule 23(b)(1), the Supreme Court and the Eleventh Circuit have cautioned that claims seeking individualized monetary relief are better analyzed under Rule 23(b)(3), which provides additional safeguards for class members. *See Dukes*, 564 U.S. at 362 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3)."); *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 (11th Cir. 2019) (noting "damages classes must satisfy Rule 23(b)(3)").

(a)     Rule 23(b)(1)(A)

Because Plaintiffs' proposed classes seek primarily monetary relief, they cannot be certified under Rule 23(b)(1)(A). The Eleventh Circuit has previously held that "only actions seeking declaratory or injunctive relief can be certified under Rule 23(b)(1)(A)." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009). As the Eleventh Circuit explained, that a defendant may owe money to some class members but not others is not the type of "incompatible standard[] of conduct" that warrants Rule 23(b)(1)(A) certification. *Id.*

The Court concludes that the FE and AFA Classes seek primarily monetary relief. While Plaintiffs do not seek individual compensatory damages, they do seek restitution for the alleged financial harm they suffered by paying for services

offered by Financial Engines or AFA.  That restitution would have to be paid to participants' accounts on an individualized basis.  Although nominally equitable, this requested relief poses the same problem identified in *Babineau*: payment of restitution to one participant will not create an "incompatible standard of conduct" with respect to other participants.  The Court agrees with other district courts that have concluded such restitution is akin to individual monetary relief for purposes of Rule 23(b)(1)(A).  *See Russell v. Kohl's Dep't Stores, Inc.*, No. ED CV 15-01143, 2015 WL 12748629, at *3 (C.D. Cal. Dec. 4, 2015); *Heffelfinger v. Elec. Data Sys. Corp.*, No. CV 07-00101, 2008 WL 8128621, at *18 (C.D. Cal. Jan. 7, 2008).

While Plaintiffs cite to a number of cases that have certified ERISA class actions under 23(b)(1)(A) (*see* Pls.' Reply at 9), the Court notes that most of these decisions are from outside the Eleventh Circuit and thus do not have to square their holdings with *Babineau*.  The Court finds the other cases distinguishable.  While Plaintiffs cite *Henderson v. Emory University* from this District, the claims in that case included allegations about administrative expenses that every member of the plan had to pay.  *See* No. 1:16-CV-2920, 2018 WL 6332343, at *1 (N.D. Ga. Sept. 13, 2018).  As the *Henderson* court noted, individual challenges to these uniform plan-wide services raised the possibility of conflicting obligations for the plan

fiduciaries.  *See id.* at *9 (noting possibility of "one action to result in mandating X procedure for obtaining recordkeepers while another mandates Y").   Here, by contrast, the services offered by Financial Engines and AFA were optional and individualized.   Unlike with a uniform administrative service that applied identically to all participants, the adjudication of individual claims regarding the optional, individualized investment advisory services that Financial Engines provided to one participant poses no risk of establishing "an incompatible standard of conduct" for judging the claims of other participants.

Further, there is no reason on this record to believe that in the absence of (b)(1) certification, there could be "thousands of separate individual actions" challenging Defendants' conduct, as plaintiffs speculate.  (Pls.' Br. at 20).  Rather, it seems unlikely that in the absence of class counsel's involvement a claim such as Pizarro's (*e.g.*, alleging a total fee of $3.87 is unreasonable for services that while initially alleged to have not been were in fact performed) or Stone's (*e.g.*, agreeing that fees paid were "probably" worthwhile for optional services she continues to use even after suing about them) would ever see a courtroom.

The Court likewise concludes that the two other decisions from this District cited by Plaintiffs—which Plaintiffs characterize as having "unequivocally rejected" Defendants' Rule 23(b)(1) argument (Pls.' Reply at 8)—do not actually

discuss *Babineau* or whether Rule 23(b)(1) is appropriate for monetary relief.  In the first case, which involved claims concerning alleged imprudent investment options, the defendants conceded Rule 23(b)(1) certification.  *See Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784, 2018 WL 3949698, at *7–8 (N.D. Ga. June 27, 2018).  The second case concerned a single company stock fund, and even then, the Court certified the class under subsection 23(b)(1)(B)—not 23(b)(1)(A).  *See In re Suntrust Banks, Inc. ERISA Litig.*, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016).

(b)    Rule 23(b)(1)(B)

The Court also concludes that Plaintiffs have not demonstrated that certification under Rule 23(b)(1)(B) is appropriate, as Plaintiffs have not shown that all members of the FE and AFA Classes suffered injury from the alleged fiduciary breach.

"[T]he Supreme Court has counseled against 'adventurous application of Rule 23(b)(1)(B).'"  *Pantoja v. Edward Zengel & Son Express, Inc.*, No. 10-20663-CV, 2011 WL 7657382, at *7 (S.D. Fla. Aug. 5, 2011) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999)).  Courts have refused to certify ERISA classes under rule 23(b)(1)(B), particularly where the proposed class includes members who suffered no injury from the alleged fiduciary breach.  *See*

*Spano*, 633 F.3d at 588; *Pantoja*, 2011 WL 7657382, at *8 (noting "[a]n alleged injury to one person's individual account that only affects that person suggests that certification is inappropriate").[5]

Here, as discussed above, the evidence before the Court demonstrates that different class members received different services from Financial Engines, and that class members (including the proposed class representatives) valued those services in starkly different ways. Plaintiffs have offered no evidence that there is an objective basis for adjudicating a classwide injury in this case. This distinguishes cases from this District that Plaintiffs cite, which involved claims concerning fungible, mandatory administrative services that all class members received (and paid the same fees for), *see Henderson*, 2018 WL 6332343, at *1, or a single equity fund in which all class members invested, *see In re SunTrust*, 2016 WL 4377131, at *8.

The Court declines to adopt Plaintiffs' reasoning that certification under Rule 23(b)(1)(B) is appropriate because ERISA defined contribution plans are

---

[5] Plaintiffs note that the Seventh Circuit in *Spano* "did not rule out (b)(1)(A) certification of ERISA cases seeking the recovery of funds owed to the Plan." (Pls.' Reply at 11 (citing *Spano*, 633 F.3d at 588)). But this does not answer whether certification under Rule 23(b)(1)(A) is appropriate in this Court, which is bound by the Eleventh Circuit's decision in *Babineau*. And the fact that *Spano* left open the possibility that an ERISA class action *could* be certified under Rule 23(b)(1) in the Seventh Circuit does not change its holding that such certification is inappropriate when the proposed class is overly broad—as the classes are here.

"trust-like" in nature.  (*See* Pls.' Br. at 21–22).  The Supreme Court has held that participants in ERISA defined contribution plans are entitled to relief specific to their individual retirement accounts.  *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).  This case is thus not a situation where participants are drawing from the same common fund, as they might with a defined benefit plan.  While Plaintiffs note that other courts have granted Rule 23(b)(1)(B) certification in ERISA class actions after *LaRue* (*see* Pls.' Reply at 13), that does not relieve Plaintiffs of their burden to offer proof in accordance with *Dukes* that certification under Rule 23(b)(1)(B) is appropriate here.

The Court further notes that the fact the Plan is a defined contribution plan with individual participant accounts distinguishes this case from *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341 (11th Cir. 2001), which did not involve claims relating to individual plan accounts.  *Accord Pantoja*, 2011 WL 7657382, at *8 ("Unlike *Piazza*, this case does not involve damage to the entire Plan caused by the undervaluation of plan assets.").

3.     Rule 23(b)(3)

The Court likewise concludes that Plaintiffs have not demonstrated that the FE or AFA Classes can be certified under Rule 23(b)(3).  Rule 23(b)(3) requires Plaintiffs to prove "that the questions of law or fact common to the class

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance requires that "resolution of the common questions affect all or a substantial number of the class members." *In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1336 (N.D. Ga. 2007) (citation omitted). Thus, if, like here, plaintiffs must introduce "a great deal of individualized proof or argue a number of individualized legal points" to prove the absent class members' claims, then predominance is lacking. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Because Plaintiffs have not demonstrated that the FE and AFA Classes satisfy Rule 23(a), it necessarily follows that Plaintiffs have not demonstrated that either class may be certified under Rule 23(b)(3). *See id.* Moreover, to prevail on their claims for breach of fiduciary duty under ERISA, Plaintiffs must prove not only that a breach occurred, but also that the alleged breach caused a loss to each class member's plan account. *See* 29 U.S.C. § 1109(a) (fiduciary who breaches duty is liable for "any losses to the plan resulting from each such breach"); *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343–44 (11th Cir. 1992);

*Perez v. DSI Contracting, Inc.*, No. 1:14-CV-282-LMM, 2015 WL 12618779, at *5 (N.D. Ga. July 14, 2015).

As explained above, Plaintiffs have not articulated how they would establish loss for any member of the FE or AFA Classes, much less how they would do so on a classwide basis.  Indeed, determining whether a loss has occurred under the basis for certification that Plaintiffs advanced would necessarily depend upon each participant's individualized assessment of "the nature and quality of the services provided" by Financial Engines.  Accordingly, Plaintiffs have failed to demonstrate how this essential element of their claim presents a predominating common question appropriate for classwide adjudication.

In sum, the Court agrees with The Home Depot Defendants that certification of the FE and AFA Classes is not a "routine" matter that requires little scrutiny, as Plaintiffs suggest, but rather would be a novel expansion of Rule 23.  While Plaintiffs have pointed to numerous certified ERISA classes, none involved claims similar to those presented by the proposed FE and AFA Classes.  The Court is unwilling to break new ground in certifying these classes absent the required evidentiary proof that certification is appropriate.

30

**C.    Plaintiffs Have Not Proven that the Challenged Funds Class Can Be Certified Under Rule 23(b).**

Plaintiffs have also failed to demonstrate that the Challenged Funds Class can be certified under Rule 23(b)(1) or 23(b)(3).

1.    Rule 23(b)(1)

The Challenged Funds Class fails to satisfy Rule 23(b)(1) for the same reasons as the FE and AFA Classes.  First, like the FE and AFA Classes, the Challenged Funds Class seeks individualized monetary relief, making certification under Rule 23(b)(1)(A) inappropriate.  *See Babineau*, 576 F.3d at 1195.

Second, the Challenged Funds Class fails under Rule 23(b)(1)(B) because Plaintiffs have not shown that all or even a substantial portion of the members of the putative class suffered an injury during the eight-year (and counting) class period.  *See Spano*, 633 F.3d at 588.  To begin, Plaintiffs have alleged a clearly overbroad class period, which due to its length and generalized nature will encompass many thousands of participants with differing investment goals, strategies and, most importantly, results.  Indeed, Plaintiffs' own allegations demonstrate members of the Challenged Funds Class would have experienced different returns from investing in the Challenged Funds during different time periods—including sometimes returns better than Plaintiffs' selected comparator funds—depending on when and for how long they were invested in those funds.

(*See* Defs.' Br. at 23–24).  In fact, it is likely that there are members of the proposed class that have not suffered any injury from the inclusion of the Challenged Funds in the Plan's investment lineup.  These uninjured absent class members would lack standing.  *Cordoba*, 942 F.3d at 1276–77.  Plaintiffs have the burden of proof on this issue and have not offered any evidence of a common injury justifying certification of this overbroad class.

### 2.    Rule 23(b)(3)

The Challenged Funds Class also fails to meet the requirements of Rule 23(b)(3), as Plaintiffs have not demonstrated that common questions in the proposed class would predominate over individual questions.  As noted above, the Challenged Funds Class would cover participants who invested in eleven different funds over an eight-year period.

Further, even according to Plaintiffs' own allegations, there were timeframes within the putative class period during which some Challenged Funds outperformed Plaintiffs' own comparator funds.  (*See* Defs.' Br. at 23).  This suggests that, even under Plaintiffs' damages model, members of the proposed Challenged Funds Class may not have suffered any loss depending on when they invested in a particular fund.  Again, class members who did not suffer a loss would not have standing; this lack of standing suffices to defeat certification.

*Cordoba*, 942 F.3d at 1276–77. That means the Court would need to conduct an individualized analysis of each class member to determine if they suffered a loss, which would predominate over classwide questions of loss. *See Brown*, 817 F.3d at 1239–40. Plaintiffs have offered no evidence demonstrating that such individualized analyses would not be necessary to establish that each class member suffered a loss and thus have failed to carry their burden under Rule 23.

Plaintiffs did not oppose in their papers The Home Depot Defendants' argument that, if certified, the Challenged Funds Class would require splitting the class into subclasses, one for each fund (Defs.' Br. at 24).[6] Having considered that approach here, the Court determines that subclasses would not save Plaintiffs' request for certification on this record because the same individual issues as to standing and loss causation—namely, the timing of participants' investment in each fund and resulting actual losses, if any—would still predominate over common issues. The resulting need, even with subclasses, for individualized proof on the various participants' investment histories would likewise destroy the manageability of a class trial required under (b)(3).

---

[6] As Defendants pointed out, subclasses were necessary in *Fuller*, where the defendant had even conceded Rule 23(b)(1) certification (and which is not appropriate here for the reasons already stated) because of the varying circumstances involved in the participants' investments. 2018 WL 3949698, at *3.

## III.   CONCLUSION

Upon the Court's consideration of the pleadings and all appropriate matters of record, it is hereby ORDERED that Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel [Doc. 98] is **DENIED**.


**IT IS SO ORDERED**, this ___ day of _____, 2020.


_____

WILLIAM M. RAY, II
United States District Judge
Northern District of Georgia

\* \* \*


Prepared by:

Dated: April 27, 2020


_/s/ David Tetrick, Jr._
David Tetrick, Jr.
Georgia Bar No. 713653
dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
Danielle Chattin
Georgia Bar No. 486940
dchattin@kslaw.com

Benjamin B. Watson
Georgia Bar No. 632663
bwatson@kslaw.com
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 572-4600
Fax:  (404) 572-5139

**Attorneys for The Home Depot
Defendants**

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1D, the undersigned certifies that the foregoing complies with the font and point selections permitted by L.R. 5.1B.  This Memorandum was prepared on a computer using the Times New Roman font (14 point).

Respectfully submitted, this 27th day of April, 2020.


*/s/  David Tetrick, Jr.*
David Tetrick, Jr.
Georgia Bar No. 713653